# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COUNCIL OF THE DISTRICT OF COLUMBIA,

        Plaintiff/Counterclaim Defendant,

        v.

VINCENT C. GRAY, Mayor of the District of Columbia,

and

JEFFREY S. DEWITT, Chief Financial Officer for the District of Columbia,

        Defendants/Counterclaimants.

Civil Action No. 1:14-cv-00655-EGS

## DEFENDANTS' ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Vincent C. Gray, Mayor of the District of Columbia, and Jeffrey S. DeWitt, Chief Financial Officer for the District of Columbia (collectively "Defendants"), respond to the allegations in the Complaint as follows:

Any allegation not expressly admitted is denied.

## ANSWER

### NATURE OF THIS ACTION

1.     *The residents of the District of Columbia will contribute more than $7 billion this year in taxes and fees to fund their local government.*

**Response**:  Admitted that in Fiscal Year 2013, District residents contributed over $7 billion in taxes and fees to the District government.

2.      *In every other home-rule jurisdiction in the country, the locally elected officials who set the tax rates also authorize the expenditures of those locally raised funds.*

**Response**:  Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of these allegations.  Defendants aver that, generally, cities in the United States are not subject to plenary control of the U.S. Congress, which the District of Columbia *is* under Article I, Section 8, Clause 17 of the United States Constitution.

3.      *But prior to this budget cycle, the budget process for local funds in the District of Columbia worked differently. The District lacked budget autonomy, which meant that local officials did not have the power to spend locally raised dollars; those funds could be spent only through an express authorization by Congress.*

**Response**:  Regretfully admitted that the District lacks budget autonomy for its locally raised revenues and that the Home Rule Charter, passed by Congress and signed by the President, requires the Mayor to submit a proposed budget to the D.C. Council, the Council to adopt a budget, and the Mayor to submit the adopted budget to the President for legislative appropriations by an Act of Congress.  Admitted that the District of Columbia Local Budget Autonomy Act of 2012 ("Act" or "BAA") purports to change this congressionally-mandated budget process to allow the Council to enact and submit the "local" and supplemental portions of the District's budget directly to Congress for passive rather than active review, thereby unilaterally altering—by local legislation—Congress' and the President's federally-mandated review authority.  Defendants deny the remaining allegations.  Defendants refer the Court to Section 446 of the Home Rule Act, entitled "Enactment of Appropriations By Congress," for a statement of the budgetary process for the District as mandated by Congress in 1973 and followed consistently for the past 40 years.

4.     *The Local Budget Autonomy Act of 2012 ("Budget Autonomy Act" or "the Act,"*
*D.C. Law 19-321, 60 DCR 1724 (Exhibit A)), changed that. Now, the Council is entitled to pass*
*a budget designating local expenditures of local funds, and only passive review—as opposed to*
*an affirmative act—by Congress is required for that budget to become law.*

**Response**:  Admitted to the extent stated in the previous response, otherwise denied.

5.     *The Budget Autonomy Act was an amendment to the District of Columbia*
*Charter, and pursuant to the process for amending the Charter, became binding law on July 25,*
*2013, after it was (a) approved by a unanimous Council, (b) signed by the Mayor, (c) ratified by*
*a substantial majority (83%) of District voters, and (d) passively approved by Congress, which*
*did not pass a joint resolution of disapproval.*

**Response**:  Denied that the BAA is binding law, or in any respect legally valid, but
admitted that it was (i) enacted by the Council, (ii) signed by the Mayor, (iii) ratified by a
majority of those District voters who went to the polls on that occasion (according to the D.C.
Board of Elections website, approximately 46,788 out of 505,698 registered voters, i.e., less than
ten percent of the District's registered voters, voted in favor of the BAA), and (iv) submitted by
the Council to Congress, which did not pass a joint resolution of disapproval.  Defendants deny
the remaining allegations.

6.     *As discussed in greater detail below, the District's Mayor and Chief Financial*
*Officer ("CFO") play essential roles in preparing and implementing the District's budget.*

**Response**:  Admitted.

7.     *On April 11, 2014, however, both the Mayor and the CFO advised the Council*
*that they will not honor their obligations under the Budget Autonomy Act.*

**Response**:  Admitted that, on April 11, 2014, the Mayor and the CFO separately informed the Council that the BAA was legally invalid and that they would not authorize expenditures under any budget not enacted lawfully under the Home Rule Charter as passed by Congress and signed by the President.  Defendants deny the remaining allegations.

8.      *Defendants' position is based on a wrongful belief that the Budget Autonomy Act is invalid. There is no constitutional or statutory basis for their decision to disregard the Act.*

**Response**:  Denied.

9.      *Prompt judicial resolution of this controversy is essential to forestall injury to the Council and to the people of the District of Columbia.*

**Response**:  Admitted that a prompt judicial decision is essential to avoid harm to the Mayor, the CFO, other District residents, District employees, and the government itself. Defendants deny the remaining allegation.

10.      *The Council respectfully seeks a declaration that Budget Autonomy Act is valid and an injunction compelling the CFO to comply with the law.*

**Response**:  Defendants deny that Plaintiff is entitled to any of the relief requested.

## JURISDICTION

11.      *This Court has subject matter jurisdiction over this civil action under D.C. Code § 11-921(a).*

**Response**:  The allegation that the District of Columbia Superior Court has subject matter jurisdiction is a legal conclusion not subject to admission or denial.  To the extent a response is required, Defendants deny that the Superior Court has jurisdiction now that Defendants have timely removed this action to this Court.  Defendants assert this federal court has subject matter

jurisdiction of this action, which raises a substantial question of federal law, under 28 U.S.C. §1331.

**PARTIES**

**A.     Plaintiff Council of the District of Columbia**

12.     *Plaintiff Council of the District of Columbia is the legislative and policymaking body for the District of Columbia.*

**Response**:  Defendants admit that the Council is the legislative branch of the District of Columbia government.  Defendants deny the remaining allegation.

13.     *The Council consists of thirteen members, each elected to a four-year term. One member represents each of the District's eight wards, and five at-large members (including the Chairman) represent the entire District.*

**Response**:  Admitted.

14.     *The Council has a statutory obligation to enact a balanced budget for each fiscal year. Under the Council's leadership, "the District has transformed itself from a city on the verge of bankruptcy to a thriving city reaching reassuring levels of financial security," producing "17 consecutive balanced budgets and 16 consecutive clean year-end financial audits," and finishing Fiscal Year 2012 with a $417 million budget surplus. Financial markets have recognized the District's laudable fiscal stewardship in the form of higher bond ratings and lower interest rates on borrowing.*

**Response**:  Admitted that the Mayor, with assistance from the CFO, must submit a balanced budget to the Council, which the Council must adopt as modified in accordance with the Home Rule Act.  Admitted that the District, under the leadership of Mayor Gray and the Office of the Chief Financial Officer, and in cooperation with the Council, has reached a level of

great financial security, and that financial markets and rating agencies have recognized the District's financial stability.

15.      *The Council can discharge its statutory obligations only if its duly enacted legislation is treated as binding law.*

**Response**:  Denied to the extent the allegation is that invalid legislation enacted by the Council—such as the BAA—should be treated as "binding law."

16.      *The Council voted unanimously to approve the Budget Autonomy Act, and succeeded in effecting an amendment to the Charter. The Council's legislative act, which would otherwise have taken effect, will be nullified and overridden by the promised acts and omissions of the CFO. The Council has no further legislative recourse to compel the CFO to comply with the duly enacted amendment to the Charter.*

**Response**:  Admitted that the Council enacted the BAA and that the Act purported to amend the District's Charter.  Admitted that Defendants will neither comply with provisions of the BAA that violate the Home Rule Act nor authorize expenditures under any budget not enacted in accordance with the Home Rule Charter as passed by Congress and signed by the President.  Defendants deny the remaining allegations.

17.      *Accordingly, judicial intervention is required to resolve whether the CFO is required to implement the budget that the Council is required to enact.*

**Response**:  Admitted that judicial review is necessary to resolve the illegality of the BAA, and the propriety of the Mayor and CFO in following the governing federal law. Defendants deny the remaining allegations.

18.     *To achieve clarity and to effectuate the will of the people, the Council authorized this litigation in its official capacity through the unanimous adoption of the Budget Autonomy Litigation Authorization Resolution of 2014 on March 4, 2014.*

**Response**:  Admitted that the Council adopted the Budget Autonomy Litigation Authorization Resolution of 2014 on March 4, 2014.  Defendants refer the Court to the Resolution itself for a complete and accurate description of its contents.  Defendants deny the remaining allegations.

**B.      Defendant Vincent C. Gray, in his Official Capacity as Mayor of the District of Columbia**

19.     *Defendant Vincent C. Gray is the Mayor of the District of Columbia.*

**Response**:  Admitted.

20.     *As Mayor, Mr. Gray is the "the chief executive officer of the District government," and is "responsible for the proper execution of all laws relating to the District." D.C. Code § 1–204.22.*

**Response**:  Admitted.

21.     *In particular, the Mayor is in "charge of the administration of the financial affairs of the District" except to the extent responsibilities have been assigned to the CFO. Id. § 1–204.48(a). Thus, he is "responsible for all financial transactions," has "custody of all public funds belonging to or under the control of the District," and is required to apportion "all appropriations and funds made available during the fiscal year for obligation." Id. § 1– 204.48(a)(1), (7), (9). He is also required to transmit the federal portion of the budget to the President for submission to Congress. Id. § 1–204.46(a).*

**Response**:  Admitted that the Mayor has charge over the financial administration of the District's affairs, except to the extent responsibilities have been assigned to the CFO, and that the

quoted language appears in the cited sections of law.  Admitted that the BAA purports to allow the Council to submit a portion of the District's budget directly to Congress for passive review, thereby infringing on the Mayor's power, under the Charter, to submit the total District budget to the President for submission to Congress for an enactment of appropriations.  Defendants deny the remaining allegations.

22.     *On April 11, 2014, the Mayor sent a letter to Council Chairman Phil Mendelson advising that he would not enforce the Budget Autonomy Act. In particular, he informed the Council that he would:*

> *(a) "direct all subordinate agency District officials not to implement or take actions pursuant to the [Budget Autonomy Act]";*
>
> *(b) "veto any [fiscal year 2015] budget transmitted by the Council that is not inclusive of both the local and federal portions of the budget"; and*
>
> *(c) "transmit to the Congress and President the full District budget as it stands after the 56th day following transmission to [the Council] of the budget, whether or not the Council has taken a second vote."*

**Response**:  Admitted that, on April 11, 2014, the Mayor sent a letter to Council Chairman Mendelson (with a copy to each of the other councilmembers) that contains the quoted language.  Defendants refer the Court to the letter itself for a complete and accurate description of its contents.

**C.     Defendant Jeffrey S. DeWitt, in his Official Capacity as Chief Financial Officer for the District of Columbia**

23.     *Defendant Jeffrey S. DeWitt is the CFO for the District of Columbia.*

**Response**:  Admitted.

24.     *As CFO, Mr. DeWitt has primary responsibility for enhancing the fiscal and financial stability, accountability and integrity of the Government of the District of Columbia. As*

*part of his statutory job duties, the CFO provides fiscal impact statements for Council legislation and provides the financial analyses that the Council requires to ensure that its budgets are balanced.*

**Response**:  Admitted.

25.    *The CFO is specifically required by statute to prepare "under the direction of the Mayor . . . the budget for submission by the Mayor to the Council and to the public and upon final adoption to Congress and to the public." D.C. Code § 1–204.24d(26); see also id. § 1–204.24d(2) (charging the CFO with "preparing the 5-year financial plan based upon the adopted budget for submission with the District of Columbia budget . . . to Congress"); § 1–204.24d(25) (requiring the CFO to "[p]repar[e] fiscal impact statements . . . on legislation").*

**Response**:  Admitted.

26.    *Moreover, the CFO is required by statute to "[c]ertify[] and approv[e] prior to payment of all bills, invoices, payrolls, and other evidences of claims, demands, or charges against the District government, and determining the regularity, legality, and correctness of such bills, invoices, payrolls, claims, demands, or charges." Id. § 1–204.24d(16); see also id. § 1–204.24d(21) (requiring the CFO to "[a]dminister[] the centralized District government payroll and retirement systems").*

**Response**:  Admitted.

27.    *On April 11, 2014, the CFO sent a letter to Council Chairman Phil Mendelson advising that he would not enforce the Budget Autonomy Act. In particular, he informed the Council that he would "not make or authorize any payment pursuant to a budget that was approved in conformance with the [Budget Autonomy Act]" and would "direct [Office of the CFO] employees not to certify contracts or make payments under this budget."*

**Response**: Admitted that, on April 11, 2014, the CFO sent a letter to Council Chairman Mendelson (with a copy to each of the other councilmembers) that contains the quoted language. Defendants refer the Court to the letter itself for a complete and accurate description of its contents.

## FACTUAL ALLEGATIONS

### A.      The Early History of the Budget Process for the District of Columbia

28.      *The District Clause of the U.S. Constitution, Art. I, § 8, cl. 17, authorizes Congress to exercise legislative authority over a federal district serving as the seat of government.*

**Response**:  Admitted.

29.      *In exercise of that authority, Congress established the District of Columbia in 1801. See District of Columbia Organic Act, ch. 15, 2 Stat. 103 (1801).*

**Response**:  Admitted.

30.      *Budget autonomy for the District of Columbia dates back to 1802, the year in which the City of Washington was incorporated. At that time, the elected City Council had authority to lay and collect taxes and to spend tax revenues on matters of local concern.*

**Response**:  Admitted that the City Council had authority in 1802 to lay and collect taxes and to spend tax revenues on matters of local concern, but deny the remaining allegations and aver that this did not constitute budget autonomy as the presidentially-appointed Mayor had authority to veto the Council's actions, as did Congress. Further, the Council was elected by only white, male voters of the District and was thus not fully representative of the city.

31.      *The authority of the city government was gradually expanded until 1871, when Congress created a unified municipal government for the District of Columbia to replace*

*previously separate governments for the City of Washington, the County of Washington, and Georgetown.*

**Response**:  Admitted.

32.   *The unified municipal government, which consisted of appointed and elected officials, had authority to lay and collect taxes and to spend local tax revenues.*

**Response**:  Admitted but aver that only federally-appointed officials had control of expenditures, all of which was subject to a veto by Congress.

33.   *In 1874, that system of government was abolished by Congress, and local authority to legislate with respect to local matters ceased. The responsibility to lay taxes and to spend those tax revenues reverted to Congress.*

**Response**:  Admitted except that at all times from 1802 forward, Congress had expressly reserved its constitutional authority over "local" District matters.

**B.       The Budget Process Under the Home Rule Act, As Initially Enacted**

34.   *Congress maintained legislative authority over the District until the 1973 enactment of the District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 777 (1973), now known as the "Home Rule Act."*

**Response**:  Admitted that in 1973 Congress enacted the District of Columbia Self-Government and Governmental Reorganization Act, commonly known as the Home Rule Act. Defendants deny the remaining allegations.

35.   *Congress, in the Home Rule Act, created a new system of local government for the District of Columbia in which it delegated legislative authority regarding local matters to local elected officials "to the greatest extent possible." Home Rule Act § 102(a), D.C. Code § 1–201.02(a).*

**Response**:  Admitted that Congress, in the Home Rule Act, established a tripartite system of government for the District of Columbia and created a system of partial home rule in the District.  Defendants refer the Court to the Home Rule Act itself for a complete and accurate description of its contents, including the express reservations of authority to itself that Congress included in the Home Rule Act (particularly over matters concerning the District's budget).

36.     *Congress also created, as part of the Home Rule Act, the District of Columbia Charter and a process for amending that Charter.*

**Response:**  Admitted, but the Charter also provided that Congress enacted specific limitations on the Council's ability to amend the Charter, and specifically reserved certain authority to Congress, including appropriation authority over the District's budget.

37.     *Prior to the Home Rule Act, revenue collected from local sources was maintained in the U.S. Treasury. But the Home Rule Act moved locally raised revenues out of the U.S. Treasury, declaring that those funds "belong to the District government," and exempting revenue from local sources from the requirement that "an official or agent of the Government receiving money for the Government from any source shall deposit the money in the Treasury as soon as practicable." 31 U.S.C. § 3302(b). Thus, following the Home Rule Act, those funds have been maintained in the General Fund of the District of Columbia and various Special Funds, outside the custody of the Treasury. These funds were originally under the custody of the Mayor and are now under the custody of the CFO. See District of Columbia Financial Responsibility and Management Assistance Act of 1995, Pub. L. No. 104-8, 109 Stat. 142 (1995).*

**Response**:  Admitted that locally raised revenues are kept in the General Fund of the District of Columbia, and aver that this has been at the direction of Congress since the enactment

of the Home Rule Act.  Defendants refer the Court to the Home Rule Act itself for a complete

and accurate description of its contents.

38.     *Pursuant to the Home Rule Act, most legislation would become law after it was*

*(a) approved by a majority of the Council after two readings separated by at least thirteen days;*

*(b) approved by the Mayor, or disapproved by the Mayor but approved by two-thirds of the*

*Council within a 30-day period; and (c) passively approved by Congress, which had a 30-day*

*period in which to pass a joint resolution disapproving of the legislation.*

**Response**:  Admitted with the clarification that "most legislation" excludes not only

permanent criminal-law legislation, which generally requires a 60-day period of passive

congressional review, and also—and of particular relevance here—budget legislation, which

requires an appropriation by an affirmative Act of Congress to be valid.  Defendants refer the

Court to the provisions of the Home Rule Act which govern the adoption of the District's budget.

39.     *As originally enacted, the Charter authorized the Council to lay and collect taxes*

*within the District pursuant to the usual process for local legislation, i.e., after two readings and*

*submission to Congress for passive review, but specified a different procedure for the District's*

*budget. Specifically, the Charter permitted the Council only to recommend a budget that was (a)*

*approved by a majority of the Council at a single reading no more than 56 days after receipt of*

*the Mayor's proposal; (b) approved by the Mayor, or disapproved by the Mayor but approved by*

*two-thirds of the Council within a 30-day period; and (c) transmitted to the President for*

*submission to Congress. Congress was free to amend, adopt or ignore the proposed budget, on*

*an open-ended timeframe, with or without consulting with the District. No local funds could be*

*expended absent affirmative action by Congress.*

**Response**:  Admitted.

40.     *Under this process, the budget was treated unlike every other piece of District legislation and the District was treated unlike every other state and home-rule city in the country.*

**Response**:  Defendants lack knowledge or information sufficient to form a belief about the truth or falsity of the allegation that the District budget process is unlike that of "every state and home-rule city in the country."  Defendants deny the remaining allegation.

41.     *This system imposed substantial costs on the District.*

**Response**:  Admitted that the lack of budget autonomy thus far provided by Congress to the District has imposed and continues to impose costs on the District.  Both Defendants are on record as publicly supporting the prompt passage by Congress of budget autonomy for the District.

42.     *Congress rarely finishes its appropriations process before the start of the fiscal year. Indeed, for the 25 fiscal years between 1990 and 2014, Congress has met the deadline on only three occasions. On the other 22 occasions, Congress has either enacted a continuing resolution (which means that the District must begin the fiscal year without knowing its total annual budget) or no budget at all (which triggers burdensome and costly government shutdown procedures).*

**Response**:  Admitted.

43.     *Congress's affirmative role in the budgeting process introduced substantial uncertainty into the District's finances. According to testimony from the previous CFO for the District, "Bond rating agencies take the uncertainties of the Federal process into account in assessing the District's finances, and discount to a degree whatever ratings the District might otherwise receive. In the case of new or expanded programs approved and financed locally, no*

*implementing action can be taken until the Federal appropriation bill is enacted. This delays program initiation and guarantees programs will not be executed as planned."*

**Response**:  Admitted that Congress' affirmative role in the District's budget process introduces substantial uncertainty into the District's finances.  Defendants refer the Court to the full statement of former CFO Natwar Gandhi for a complete and accurate description of its contents.

44.     *According to testimony from the former Mayor of the District of Columbia, delays in federal appropriations have led to lower service-delivery levels for "school nurses, prescription drug benefits, police equipment and staffing."*

**Response**:  Admitted that delays in the federal appropriations process have deleterious effects on the District of Columbia and its residents.  Defendants refer the Court to the full testimony of former D.C. Mayor Anthony Williams for a complete and accurate description of its contents.

**C.      The Budget Autonomy Act Amends the District Charter to Establish Local Control over Expenditures of Locally-Raised Revenue and to Enhance the Efficiency of the Budget Process**

45.     *For budgets enacted on or after January 1, 2014, the Budget Autonomy Act repealed and replaced the budget process provided in the original 1973 Charter.*

**Response**:  Admitted that the BAA purported to repeal and replace the budget process set forth by Congress in the Home Rule Act.  Defendants deny the remaining allegations.

46.     *Following the process to amend the Charter specified by Congress in the Home Rule Act, the Council unanimously adopted the Budget Autonomy Act, the Mayor signed it, the voters of the District of Columbia overwhelmingly ratified it, and Congress passively approved it by failing to pass a joint resolution within 35 legislative days.*

**Response**:  Admitted that the Council enacted the BAA, the Mayor signed it, and the majority of District voters who appeared at the polls and voted on the issue when the matter was on the ballot ratified it.  Defendants deny the remaining allegations.

47. *The Budget Autonomy Act left in place the 1973 Home Rule Act's permanent appropriation of funds from the U.S. Treasury to the D.C. General Fund but modified the process by which money in the D.C. General Fund can be spent.*

**Response**:  Admitted that the BAA purported to modify the District's budget process for "local" and supplemental funds.  Defendants deny the remaining allegations.

48. *As amended, the process for expending local tax revenues has been revised to match the process for raising local tax revenues (or enacting any other non-emergency legislative bill).*

**Response**:  Admitted that the BAA purported to allow the "local" and supplemental portions of the budget to be submitted by the Council directly to Congress for passive review. Defendants deny the remaining allegations.

49. *Pursuant to the terms of the Budget Autonomy Act, the Mayor submits a proposed budget to the Council, with the assistance of the CFO. For the local portion, the Council then adopts a budget after two readings within 70 days of receipt of the Mayor's proposal. After the Mayor approves the Council's version (or the Mayor's veto is overridden), that budget is transmitted by the Council Chairman to Congress, with a certification from the CFO that the District has adequate revenues to satisfy its budgetary expenditures.  If Congress does not act within 30 days, the budget is enacted.*

**Response**:  Admitted that the BAA purports to allow the Council to submit the "local"
and supplemental portions of the District's budget directly to Congress for Congress' passive
review.  Defendants deny the remaining allegations.

50.     *The Budget Autonomy Act did not alter the process by which federal dollars are
expended in the District of Columbia.*

**Response**:  Denied because the BAA purports to disaggregate the federal-dollar portion
of the District's budget from the local-dollar portion, and further purports to subject these
portions to different budget processes, including different transmissions to the federal
government.  Under governing federal law, the total District budget is comprised of both the
local- and federal-dollar portions of the budget, and both are required to be transmitted, together,
by the Mayor to the President.  The BAA further purports to allow the Council to transmit any
supplemental budget directly to Congress, regardless of whether the supplemental budget is
funded by local or federal dollars.

51.     *The Act also authorized the Council to change the fiscal year of the District.
Budget Autonomy Act § 2(d). In most cities and states, the fiscal year runs from July to June, so
each school year can be planned for and addressed in a single budget cycle. The District's fiscal
year, conversely, runs from October to September to correspond with the federal government's
fiscal year. To date, the Council has not exercised its authority to change the District's fiscal
year.*

**Response**:  Admitted that Section § 2(d) of the BAA purported to authorize the Council
to unilaterally change the District's fiscal year, and that the District's fiscal year runs from
October to September to correspond with the federal government's fiscal year.  Defendants lack

knowledge or information sufficient to form a belief about the truth or falsity of the allegation

that most cities and states have a fiscal year that runs from July to June.

### D. Defendants Will Not Comply With or Enforce the Act

52. *On April 11, 2014, both Defendants sent letters to Council Chairman Phil*

*Mendelson advising that they would refuse to enforce the Budget Autonomy Act.*

**Response**:  Admitted to the extent stated in the responses to paragraphs 7, 22, and 27.

53. *Following the advice of the Attorney General for the District of Columbia, the*

*Mayor announced that he would treat the Act as a "legal nullity" and that he would:*

> *(a) "direct all subordinate agency District officials not to implement or take actions pursuant to the [Budget Autonomy Act]";*
>
> *(b) "veto any [fiscal year 2015] budget transmitted by the Council that is not inclusive of both the local and federal portions of the budget"; and*
>
> *(c) "transmit to the Congress and President the full District budget as it stands after the 56th day following transmission to [the Council] of the budget, whether or not the Council has taken a second vote."*

**Response**:  Admitted that the Mayor's letter to the Council included the quoted language

(except as altered).  Defendants refer the Court to the letter itself for a complete and accurate

description of its contents.

54. *Following the advice of his legal staff, the CFO announced that he would treat*

*the Act as having "no legal validity" and that he would:*

> *(a) "not make or authorize any payment pursuant to a budget that was approved in conformance with the [Budget Autonomy Act]"; and*
>
> *(b) "direct [Office of the CFO] employees not to certify contracts or make payments under this budget."*

**Response**: Admitted that the CFO's letter to the Council included the quoted language (except as altered). Defendants refer the Court to the letter itself for a complete and accurate description of its contents.

55.    *The CFO indicated that he would enforce the Budget Autonomy Act if a "court of competent jurisdiction sustains the Act's legal validity."*

**Response**: Admitted that the CFO's letter to the Council included the quoted language (except as altered). Defendants refer the Court to the letter itself for a complete and accurate description of its contents.

56.    *As explained in the contemporaneously filed Motion for Preliminary Injunction, the legal reasoning underlying Defendants' refusal to enforce the Budget Autonomy Act is based on an unsound interpretation of binding law.*

**Response**: This allegation states legal conclusions not subject to admission or denial. To the extent a response is required, Defendants deny the allegation. Defendants deny that Plaintiff is entitled to a preliminary injunction.

57.    *The Council's injury will be felt immediately, as the budget cycle for Fiscal Year 2015 is already underway. Moreover, the injury will be felt for each ensuing regular and supplemental budget cycle until the CFO is directed to comply with the Autonomy Act.*

**Response**: Denied.

58.    *There is an urgent need to resolve the validity of the Budget Autonomy Act and to ensure that the CFO will perform his job duties consistent with the Act.*

**Response**: Admitted that a prompt resolution of this lawsuit is important. Otherwise denied.

E.  **The Council Faces Imminent Injury From Defendants' Conduct**

59.  *The announced actions of the Mayor and the CFO will individually and jointly cause injury to the Council and its interests. In particular:*

> *(a) The Mayor's promise to submit the Council's draft budget to the President on May 29 contravenes the Council's exclusive right to legislate for the District.*

> *(b) Defendants' actions nullify the Council's legislative act in enacting the Budget Autonomy Act. The Council voted unanimously for the Act, there were sufficient votes to enact the Act. And the Council lacks a legislative remedy to guarantee enforcement of its legislation. Likewise, Defendants' actions will nullify the Council's legislative act in enacting the fiscal year 2015 budget pursuant to the Budget Autonomy Act. The Council is required by statute to enact such a budget but Defendants have already announced that they will treat it as a nullity once enacted. The Council lacks a legislative remedy to guarantee enforcement of its legislation.*

> *(c) Defendants' announced refusal to recognize the Budget Autonomy Act will needlessly deprive the Council of information to which it is entitled in the formulation of its budget.*

> *(d) Defendants' actions will impede the orderly administration of the District government. The uncertainty created by Defendants' announced refusal to comply with the Budget Autonomy Act will undermine the Council's ability to satisfy its statutory obligations. And the Council will incur unnecessary costs in preparing for the contingencies risked by Defendants' conduct.*

> *(f) Defendants' refusal to enforce the District's fiscal year 2015 budget will deprive the Council of funding for its necessary governmental operations.*

**Response**:  Denied.

## CLAIM I

## DECLARATORY JUDGMENT

60.  *The Council incorporates by reference and re-alleges each and every allegation contained in paragraphs 1-59, as though fully set forth herein.*

61.     *Defendants' refusal to comply with their duties under the Budget Autonomy Act is in violation of their responsibilities under the District Charter, as amended by the Autonomy Act.*

62.     *Defendants' refusal to comply will cause the Council to sustain injury that is redressable by this Court.*

63.     *The Council is entitled to a declaratory judgment, pursuant to D.C. Superior Court Rule 57 and 28 U.S.C. § 2201, that the Budget Autonomy Act is legally valid as the law of the land and that Defendants are required to treat the Act as binding law.*

64.     *The Council is further entitled to an injunction compelling Defendants to comply with the Budget Autonomy Act.*

**Response to Paragraphs 60 – 64**:  Denied.  Defendants deny that Plaintiff is entitled to any of the relief requested in these paragraphs.

## PRAYER FOR RELIEF

*WHEREFORE, the Council prays for judgment and relief as follows:*

65.     *A declaration that the Budget Autonomy Act is valid and enforceable law, and that no District officer or employee may refuse to treat it as such.*

66.     *A preliminary and permanent injunction, enjoining Defendants to fulfill their duties under the law in a timely fashion, such that the Council will be able to enact a budget for the District pursuant to the Budget Autonomy Act.*

67.     *Such other and further relief as the Court deems just and proper.*

**Response to Paragraphs 65 – 67**:  Denied.  Defendants deny that Plaintiff is entitled to any of the relief requested in these paragraphs.

## AFFIRMATIVE DEFENSES

Defendants assert the following defenses, without assuming the burden of proof on such defenses that would otherwise rest with Plaintiff:

68.     The Complaint fails to state a claim on which relief can be granted.

69.     Granting relief as requested by Plaintiff is contrary to the public interest.

70.     The BAA was enacted in violation of the Home Rule Act and other federal laws, and thus is legally null and void.

71.     The BAA is preempted by federal law, including the Anti-Deficiency Act, 31 U.S.C. § 1341.

72.     The BAA conflicts with the Anti-Deficiency Act and is thus null and void under the Supremacy Clause of the United States Constitution.

73.     Defendants reserve the right to assert other defenses as they become known to Defendants.

## COUNTERCLAIMS

Vincent C. Gray, Mayor of the District of Columbia, and Jeffrey S. DeWitt, Chief Financial Officer for the District (collectively "Counterclaimants"), counterclaim against the Council of the District of Columbia for declaratory and injunctive relief, challenging the legality of the District of Columbia Local Budget Autonomy Act of 2012 ("BAA" or "Act"), D.C. Law 19-321, 60 D.C. Reg. 1724 (Feb. 15, 2013).

## OVERVIEW

74.     The actions of the Council, in enacting the BAA, violate the Home Rule Act, other federal statutes, the U.S. Constitution, and the principle of separation of powers incorporated in the District's Charter.  The Home Rule Act does not permit either the Council or

the citizens of the District to unilaterally seize budget autonomy for the District and thereby deprive the President, Congress, and other federal agencies of their long-established roles in the enactment of the District's budget.  The only lawful way the Charter can be amended as proposed by the BAA is through an Act of Congress, as President Obama and members of both the House and the Senate have proposed.

75.     The Charter outlines the specific steps that must be taken in order for the District to develop and propose, and for Congress to enact, the District's yearly budget and any supplements thereto.  The Charter requires that the Mayor, in consultation with the CFO, draft and submit a proposed budget to the Council for adoption.  The Council must adopt a final budget within 56 days of receiving the Mayor's proposal, and then the Mayor must submit the adopted budget to the President for ultimate enactment by Congress of an appropriations Act signed by the President.  The Home Rule Act does not grant the District authority to alter this process through local legislation; such authority rests solely with Congress and the President to do so through the prescribed Article 1, Section 7 process by which federal laws are enacted or amended.

76.     Nonetheless, the Council enacted the BAA, which purported to alter the District's budget process under the Charter.  Specifically, the BAA maintained the congressionally-mandated budget process for the "federal portion" of the District's budget but purported to make an act of the Council, without more, sufficient to permit the spending of (i) the "local portion" of the District's budget and (ii) any supplement to the budget, regardless of whether the supplement obligated federal or local funds.  In addition, the BAA purported to permit the Council to change the District's fiscal year.

77.     The BAA amendments to the Charter violate the Home Rule Act in several ways. Title VI of the Charter is entitled "Reservation of Congressional Authority" and Section 602 under that Title is entitled "Limitations on the Council."  Section 602(a) provides that the "Council shall have no authority. . . to . . . (3) enact any act, or . . . amend or repeal any Act of Congress, which concerns the functions or property of the United States or which is not restricted in its application exclusively in or to the District."  In violation of this provision, and hence of the Supremacy Clause, the BAA purports to affect the functions of the federal government under the Home Rule Act (and under the Anti-Deficiency Act and Budget and Accounting Act).

78.     Section 603 of the Home Rule Act, which is entitled "Budget Process: Limitations on Borrowing and Spending," provides that "Nothing in this act shall be construed as making any change in existing law. . . or basic procedure and practice relating to the respective roles of Congress, the President, the federal office of Management and Budget and the Comptroller General of the United States in the preparation, review, submission, examination, authorization and appropriation of the total budget of the District of Columbia government."  The BAA violates this provision as well, because the BAA purports to change "existing law, regulation, or basic procedure and practice" regarding every one of these federal institutions in the District's budget process.

79.     The BAA violates Section 603(e) of the Home Rule Act by purporting to remove the "local portion" of the District's budget and any subsequent supplements to the budget from the purview of the Anti-Deficiency Act.  Section 603(e) states: "Nothing in this Act shall be construed as affecting the applicability to the District government" of the Anti-Deficiency Act, Title 31, Ch. 15 of the U.S. Code.  So insistent was Congress in the Home Rule Act that the District comply with the Anti-Deficiency Act that it repeated this injunction in Section 446

(entitled "Enactment of Appropriations By Congress"):  "no amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and only according to such Act."

80.     The language of the Home Rule Act, reserving the power of appropriations to Congress and precluding any amendment of the Charter by the Council on that issue, is clear because without that assurance Congress would never have granted limited home rule to the District.  Opponents of home rule for the District predicated their position on congressional loss of control over the District's budget.  To garner their support, Congressman Walter Fauntroy of the District and others, including Congressmen Charles Diggs of Michigan and Brock Adams of Washington, brokered a compromise that in return for limited home rule, the legislation would insure that Congress kept control over the District's budget, including expenditures.  That bargain carried the legislative day, and for 40 years every local Administration and Council adhered to that bargain—until enactment of the BAA.

81.     The Attorney General for the District of Columbia has issued a formal legal Opinion that the Act is legally invalid and null and void.  So, too, has the General Counsel of the General Accountability Office ("GAO").  In reliance on those opinions, confirmed independently by the CFO's legal staff, Counterclaimants have concluded that any budget approved pursuant to the BAA would not be legally valid.  Accordingly, Counterclaimants will neither comply with the provisions of the BAA that violate the Home Rule Act and the Anti-Deficiency Act, nor approve expenditures under an illegally-enacted budget at the risk of criminal, civil, or administrative penalties.  Counterclaimants' refusal to abide by the BAA, a legal nullity, supports a request for necessary and expedited judicial review of the Act, to confirm that

Counterclaimants are justified in following the binding federal law and not implementing the patently illegal BAA.

82.     The BAA's amendments to the Charter would, if implemented, impermissibly intrude on congressionally-mandated functions of the Mayor and CFO, and would expose Counterclaimants and thousands of other Executive employees to potential criminal, civil, and administrative liability under the Anti-Deficiency Act.  Further, the Council's actions expose Counterclaimants to a substantial and imminent risk of the loss of funding for their respective offices, as well as a loss of funding for District government operations as a whole.  Indeed, if the District does not have appropriated funds for the CFO to authorize payment of salaries and pensions of current and former employees of the District, the District could be faced with the return of the federal control board as a matter of law.

## PARTIES

83.     Counterclaimant Vincent C. Gray is the Mayor of the District of Columbia.  The District, a municipal corporation empowered to sue and be sued, is the local government for the territory constituting the permanent seat of the government of the United States.

84.     Counterclaimant Jeffrey S. DeWitt is the Chief Financial Officer for the District.

85.     Mayor Gray and CFO DeWitt bring this counterclaim through the District's Attorney General, pursuant to the Attorney General's authority to uphold the public interest and to institute suit on behalf of the District in court under D.C. Official Code § 1-301.81(a)(1) (2013 Supp.).

86.     Counterclaim Defendant Council of the District of Columbia is the legislative branch of the District of Columbia government.

**JURISDICTION AND VENUE**

87.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 2201.  The challenged Council legislation interferes with the execution of federal

law under Title 31 of the United States Code.

88.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**STATEMENT**

**I.     District of Columbia Home Rule Act**

89.     Article 1, Section 8, Clause 17 of the U.S. Constitution vests Congress with the

power "to exercise exclusive legislation in all Cases whatsoever" over the District of Columbia.

90.     In 1973, pursuant to this authority, Congress enacted the District of Columbia

Self-Government and Governmental Reorganization Act, later codified as D.C. Official Code

§§ 1-201.01, *et seq.* (2013) ("Home Rule Act").  The Home Rule Act provides residents of the

District substantial, but not unlimited, powers of local self-government.  However, it also

explicitly reserves to Congress (in Section 1-201.02) "the ultimate legislative authority over the

nation's capital granted by article I, § 8, of the Constitution[.]"  Further, Congress expressly

identified a number of what Title VI of the Charter identifies as "Limitations on the Council."

These limitations include the following, now codified at D.C. Section 602(a)(3):  "The Council

shall have no authority to pass any act contrary to the provisions of this Act except as

specifically provided in this Act, or to. . . (3) enact any act, or enact any act to amend or repeal

any Act of Congress, which concerns the functions or property of the United States or which is

not restricted in its application exclusively in or to the District . . . ."

91.     Sections 1-204.01 through 1-204.115 of the Home Rule Act constitute the District

of Columbia Charter, which sets forth the organizational structure of the District government.

The Charter created a tripartite form of government, vesting legislative power in the Council and executive power in the Mayor.  D.C. Official Code §§ 1-204.04, 1-204.22.

92.     The Charter mandates that each year the Mayor submit an annual budget for the District to the Council.  § 1-204.42.  After receipt of the Mayor's budget proposal, the Council must adopt a budget for the District, which the Mayor must then submit to the President for transmission to Congress.  The Charter requires a similar process for any supplements to the budget.  The Charter also provides that "no amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act." *Id.*,§ 1- 1-204.46 (2012).

93.     Section 103(15) of the Home Rule Act (D.C. Official Code § 1-201.03(15)) defines "budget" as "the entire request for appropriations and loan or spending authority for all activities of all agencies of the District financed from all existing or proposed resources and shall include both operating and capital expenditures."

94.     In the Home Rule Act, Congress provided that the Charter could be amended in some respects by an act passed by the Council and ratified by a majority of District voters.  *Id.*, § 1-203.03.  Section 303(d), however, explicitly prohibits the use of this process to enact any law contrary to the limitations set forth in Sections 601, 602, and 603 of the Home Rule Act, which, among other things, specifically reserves to Congress control of the District's budget.

## II.     Budget Autonomy Act of 2013

95.     The BAA was passed by the Council on December 4, 2012, and subsequently signed by the Mayor.  On or about December 19, 2012, the Mayor sent a letter to the Chairman of the Council (with copies to every other councilmember), expressing his belief that while he "fully and passionately support[s] the goal of securing budget autonomy for the District of Columbia as soon as possible[,]" the proposed legislation likely violated the Home Rule Act and

other provisions of federal law.  In a special election held on April 23, 2013, a majority of those voting approved the Budget Autonomy Act.  The number of voters who voted for the BAA in the special election constituted less than ten percent of the total number of registered voters in the District.  As required by the Home Rule Act, the District's Board of Elections certified the ratification of the Act, on May 8, 2013, and the Chairman of the Council submitted the Act's purported Charter amendments to Congress that same day, per D.C. Official Code § 1-203.03(b).

96.     Congress took no formal action with respect to the Act, and the BAA, by its terms, purported to become effective as of January 1, 2014.

97.     The BAA purports to amend several provisions of the Charter relating to the District's budget process by (i) exempting the District's budget process for "local" funds and subsequent supplements to the budget from the congressional appropriations requirements established by Congress in the Home Rule Act, and (ii) permitting the Council to change the District's fiscal year.

98.     The Act purported to change the title of Charter Section 446 (D.C. Official Code § 1-204.46) from "Enactment of Appropriations by Congress" to "Enactment of local budget by Council."  The Act would separately treat the "federal portion" and the "local portion" of the District's budget.  Although neither of those terms is defined in either the BAA or the Home Rule Act, it appears that the "local portion" is that segment of the District's budget derived from local sources, including District of Columbia income, sales, and property tax revenues. Approximately two-thirds of the District's budget stems from such local revenues.  The Act purports to change the review by Congress and the President of the District's local budget appropriations from active—as mandated by the Home Rule Act, and followed by the District and federal governments for the past forty years—to passive.

99.     Additionally, the Act purports to require that the Council Chairman submit the local portion directly to the Speaker of the House of Representatives for passive review "pursuant to the procedure set forth in section 602(c) of the Home Rule Act."  D.C. Law 19-321, § 2(e).  Under this provision, the Mayor would no longer submit the local portion to the President, and the President would no longer submit it to Congress for enactment.  The federal portion of the District's budget would continue to be submitted by the Mayor to the President for transmission to Congress for enactment.

100.     Furthermore, the Act purports to allow the Council to enact any supplements to the annual budget, and submit the supplements directly to Congress for passive review.  D.C. Law 19-321, § 2(e).  The Act does not distinguish between supplements using *federal* funds and supplements using *local* funds.

101.     Because Section 446 of the Charter prohibits District employees from obligating or expending funds except in accordance with an act of Congress, the Act attempts to amend that section of the Charter to allow District employees to obligate or expend local funds if the amount "has been approved by an act of the Council."  *Id*., *amending* D.C. Code 1-204.46.  Thus, under the Act, no congressional action would be necessary before District employees could obligate and expend local and supplemental funds.

**III.     The Illegality and Invalidity of the Budget Autonomy Act**

102.     The BAA's purported amendments to the Charter violate the Home Rule Act because they contravene Sections 602 and 603, and thus are prohibited amendments under Section 303(d).  These violations of federal law render the BAA null and void.

**A.     Section 602(a)(3)**

103.     Section 602(a) of the Charter (D.C. Official Code § 1-206.02(a)(3)) provides that the Council "shall have no authority . . . to . . . (3) enact any act, or . . . amend or repeal any Act of

Congress, which concerns the functions or property of the United States or which is not restricted in its application exclusively in or to the District."

104.    The BAA amendments remove the budgeting of local and supplemental funds from the federal appropriations process and allow the Council to change the District's fiscal year.  These changes would affect the functions of the United States by (i) preventing Congress, with Presidential approval, from appropriating local District funds and supplemental District funds; (ii) eliminating the President, the federal Office of Management and Budget ("OMB") and the U.S. Comptroller General from their respective roles in the local portion of the District's budget process and the entire District supplemental budget process; and (iii) making it difficult, if not impossible, for Congress to review the District's finances during Congress' regular budget cycle.  Further, because the Home Rule Act, including the Charter, allocates functions between the District and the federal government, it is an Act of Congress not limited in its application "exclusively in or to the District."  The BAA amendments to the Charter thus violate Section 602(a)(3) of the Home Rule Act.

105.    In addition, the Anti-Deficiency Act, 31 U.S.C. §§ 1341, 1342, 1349 to 1351 and subchapter II of Chapter 15, expressly prohibits federal and District government employees, under pain of federal criminal and administrative penalties, from obligating or expending funds in excess or advance of a congressional appropriation.  The Anti-Deficiency Act is the principal mechanism the federal government uses to ensure District and federal agency compliance with federal appropriations law.

106.    The BAA amendments purport to exempt the District's local-funds budget and supplemental budgets from the federal appropriations process, unilaterally removing District transactions involving local and supplemental funds from the scope of the Anti-Deficiency Act – an

Act of Congress that applies to all federal agencies, not just the District.  As a result, the BAA amendments attempt to amend the requirements of the Anti-Deficiency Act, and thus violate Section 602(a)(3) of the Home Rule Act.  That violation renders them a nullity under the Supremacy Clause.  *See* Article 6, Section 2 of the Constitution ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land[.]").

107.    Finally, the Budget and Accounting Act, 31 U.S.C. § 1108, requires the Mayor and federal agencies to submit annual budget proposals to the President.  The BAA amendments purport to exclude the District's local-funds budget from the coverage of the Budget and Accounting Act – again, an Act of Congress that applies to all federal agencies, not just to the District.  Accordingly, the BAA amendments attempt to amend the requirements of the Budget and Accounting Act, and thus violate Section 602(a)(3) of the Home Rule Act, rendering it invalid under the Supremacy Clause.

**B.    Section 603(a)**

108.    Section 603(a) of the Home Rule Act (D.C. Official Code § 1-206.03(a)) provides:

> Nothing in this act shall be construed as making any change in existing law, regulation, or basic procedure and practice relating to the respective roles of the Congress, the President, the federal Office of Management and Budget, and the Comptroller General of the United States in the preparation, review, submission, examination, authorization, and appropriation of the total budget of the District of Columbia government.

109.    The BAA mandates that the District establish its own budget for local and supplemental funds, to be authorized according to a potentially different fiscal year, subject only to passive congressional review.  The BAA also eliminates the President, OMB, and the U.S. Comptroller General from the District's budget process for local and supplemental funds.  The BAA

amendments therefore contradict the express prohibition in Section 603(a), and thus are not legal amendments to the Charter under Section 303(d).

> **C.     Section 603(e)**

110.     Section 603(e) of the Home Rule Act (D.C. Official Code § 1-206.03(e)) states that nothing in the Home Rule Act shall be construed as affecting the applicability of the Anti-Deficiency Act to the District government.

111.     The BAA amendments purport to authorize District officials and employees to spend local and supplemental funds, without a congressional appropriation, based only on the Council's approval of budget legislation.

112.     The Act unilaterally exempts local and supplemental District funds from the requirements of the Anti-Deficiency Act, thereby violating both Section 603(e) of the Home Rule Act, and the Anti-Deficiency Act's own statement that its requirements apply to the District.

> **D.     Counterclaimants, the District's Attorney General, the GAO, and Congress all view the Act as invalid.**

113.     On April 8, 2014, the Attorney General for the District of Columbia issued a formal legal Opinion concluding that the Act is a nullity because it violates Sections 602 and 603 of the Home Rule Act, the Anti-Deficiency Act, and the Budget and Accounting Act.  In addition, the Attorney General noted that under Reorganization Order 50, Part II, effective July 26, 1953, his Opinion operates as the "guiding statement of the law" for the District's Executive branch, and that it "must be followed by all District officers and employees in the performance of their official duties unless and 'until overruled by a controlling court decision.'"

114.     On April 11, 2014, in a letter to the Council, Mayor Gray stated that the Opinion was "binding on the Executive branch officials in the District government absent a controlling court opinion to the contrary," and thus the BAA could have "no effect on the formation of the District's

budget."  The CFO, aided by his own legal staff, also analyzed the legality of the BAA, and, on

April 11, 2014, informed the Council of the CFO's conclusion that there was "no legal validity to

the Act" and that any budget approved pursuant to the BAA, absent congressional or judicial

approval, would not be legal.

115.    Counterclaimants and the Attorney General are not alone in their view that the Act is

invalid.  In a January 30, 2014 decision, the GAO, through its Office of General Counsel, also

concluded that the Act is invalid, noting, following an extensive review of the Council's and

Attorney General's legal views, that the "portions of the [Act] that purport to the change the federal

government's role in the District's budget process are without legal force or effect." GAO Decision

B-324987 (Jan. 30, 2014) (*available online at* http://www.gao.gov/assets/670/660543.pdf).  The

GAO also pointed to the legislative history of the Home Rule Act, noting that while that legislation

was under consideration, Congress *rejected* a Senate proposal to grant the District budget

autonomy, which—just like the BAA—would have granted the Council authority to make funds

available for obligation and expenditure on its action alone.  The GAO decision is especially

noteworthy since the GAO not only is empowered to audit the District's finances, 31 U.S.C. § 715,

and make "investigation[s] and report[s] [to Congress]" relating to federal "revenue, appropriations,

and expenditures," *Id.* § 712, but is also the federal agency responsible for compiling all violations

of the Anti-Deficiency Act, *id.* § 1351.

116.    Congressional action following the enactment of the BAA makes clear that

Congress itself views its fiscal relationship with the District as unchanged.  On January 15, 2014,

Congress enacted the Consolidated Appropriations Act of 2014.  Section 816 of that law

authorizes the District to use local funds in the event of a federal government shutdown during

fiscal year 2015.  In doing so, Congress expressed its will that *both* Section 446 of the Home

Rule Act (D.C. Official Code § 1-204.46) *and* the Anti-Deficiency Act would continue to apply to local funds and require congressional appropriations.  This legislation leaves no doubt that Congress views the BAA as having no legal force.  Additionally, in reference to the BAA, the Financial Services and General Government Subcommittee of the U.S. House of Representatives' Committee on Appropriations has specifically noted that the BAA represented the "opinion" of District residents, but stated that the vote did not effectuate any *legal* change to the District's appropriations process.  Fiscal Year 2014 Financial Services and General Government Committee Report, p. 38. (*available online at* http://appropriations.house.gov/uploadedfiles/hrpt-113-hr-fy2014-fservices.pdf).

117.    Counterclaimants have concluded that any budget enacted pursuant to the BAA would be illegal and inoperative.  Counterclaimants cannot legally comply with the amended budget process enacted by the Council through the BAA.

118.    Counterclaimants' inability and unwillingness to comply with the BAA or authorize expenditures under any budget approved pursuant to the BAA—and face exposure to federal sanctions—calls for necessary and expedited judicial review of the Act.

## IV.    Injurious Effects of the BAA

### A.    Infringement on Executive Powers

119.    The BAA amendments violate the separation of powers inherent in the District's Charter; they annex powers and functions Congress specifically delegated to the Mayor and CFO, and prevent the Mayor and CFO from fulfilling their legal obligations under the Home Rule Act.

120.    Section 446 of the Charter empowers the Mayor to submit the District's total budget to the President.  In addition, Section 448 of the Charter (D.C. Official code § 1-204.48) provides that the Mayor "shall have charge of the administration of the financial affairs of the District," and

shall "supervise and be responsible for all financial transactions to insure adequate control of revenues and resources to insure that appropriations are not exceeded."

121.    The CFO's duties pursuant to Section 424d of the Charter (D.C. Official Code § 1-204.24d) include "preparing under the direction of the Mayor … the budget for submission by the Mayor to the Council and to the public and upon final adoption to Congress and to the public." *Id.* The CFO's duties also include: (i) "apportioning the total of all appropriations and funds made available during the year for obligation so as to prevent deficiency," (ii) "certifying all contracts and leases . . . prior to execution as to the availability of funds to meet the obligations expected," and (iii) "certifying and approving prior to payment of all bills, invoices, payrolls, and other evidences of claims, demands, or charges against the District government . . . ." *Id.*

122.    The BAA amendments, by allowing the Council to submit the local portion of the District's budget, and any subsequent supplements, directly to Congress for passive review, impermissibly intrude on the Mayor's duty under Section 446 to submit the District's total budget to the President for enactment by Congress.

123.    Furthermore, under Section 446 of the Home Rule Act (D.C. Official Code § 1-204.46), the Council must adopt a budget, after a public hearing, "within 56 calendar days after receipt of the budget proposal from the Mayor."  The BAA purports to amend this provision to allow the Council to enact the budget, as any ordinary Council legislation upon two readings, within 70 days.

124.    Pursuant to the schedule issued by the Council, the Mayor submitted the District's FY 2015 budget to the Council on April 3, 2014.  Under the Home Rule Act, the Council must therefore adopt the budget by May 29, 2014.  However, the Council schedule authorized final

Council action on the Fiscal Year 2015 Budget Request Act and the Fiscal Year 2015 Budget Support Act with two readings by June 11, or 69 days after the Mayor's submission of the budget.

125.     Because of the Council's actions, the Mayo will be unable to submit a budget to the President within the timeframe required by Section 446 of the Home Rule Act, as has been the District's practice over the past 40 years.

126.     The Home Rule Act makes clear that the District's Executive branch, through the Mayor and the CFO, is empowered and required to administer the District's finances.  The Charter further describes the Mayor's required role in the District's budget process – to develop and submit a proposed budget to the Council, and to submit the total, adopted budget to the President for enactment by Congress.  By vesting these executive functions in the Council, the BAA drastically reduces the Mayor's role in the District's budget process and severely impairs his ability to effectively comply with his congressionally-mandated duty to manage the District's finances.

### B.      Imminent Risk of Loss of Funding for District Operations

127.     The District's finances are threatened because the Council has made clear that it will no longer comply with the budget procedures laid out in the Home Rule Act.  Thus, under the BAA, Counterclaimants will be unable to lawfully fund the operations of their respective offices.

128.     Further, the Council's refusal to follow federal law regarding District budgeting could have disastrous effects on District operations as a whole.  As noted, Section 816 of the Consolidated Appropriations Act of 2014 grants the District the right to expend local funds under the federal Budget Request Act for FY 2015 in the event of a federal government shutdown.  However, this right is contingent on the District having a validly-enacted budget for FY 2015.  Since any budget approved pursuant to the BAA would be invalid, the District risks losing the right to continue operating in the event of a federal government shutdown during FY 2015.

129.     Additionally, under D.C. Official Code § 47-392.09, control of District financial operations *automatically* reverts to a federal control board should the District (i) default on any loans, bonds, notes, or other obligations, (ii) fail to meet payroll for any pay period, (iii) fail to meet pension or benefits payments for current or former employees, or (iv) fail to make any required payments "to any entity established under an interstate compact to which the District of Columbia is a signatory." The federal control board would supersede the Mayor, the CFO, and the Council in matters relating to the District's financial operations. The Council's adherence to the BAA, should it continue past May of this year, thus creates a substantial and imminent risk that the Mayor and the CFO will lose authority over District financial operations as set forth in the Home Rule Act, and that the District as a whole will lose a substantial portion of its right to self-governance.

### C.     Counterclaimants' Liability under the Anti-Deficiency Act

130.     Under Section 603(e) of the Charter (D.C. Official Code § 1-603(e)), the Anti-Deficiency Act applies to all District spending and appropriations. Therefore, even if Counterclaimants were inclined to approve expenditures under an illegally-enacted budget, they could not do so without exposing themselves to criminal liability and administrative discipline by the federal government.

131.     Executive branch officials, including the Counterclaimants, who undertook to spend money or enter into contractual commitments as a result of the appropriations "approved" solely by the Council would be risking federal criminal and/or administrative charges for violations of the Anti-Deficiency Act. Under 31 U.S.C. § 1350, an "officer or employee . . . of the District of Columbia government knowingly and willfully violating [the Anti-Deficiency Act] . . . shall be fined not more than $5,000, imprisoned for not more than 2 years, or both."

132.     Further, under 31 U.S.C. § 1351, the Mayor is required to report all violations of the Anti-Deficiency Act to the President and Congress. The Mayor's report must include all the

relevant facts as well as a statement outlining the administrative discipline taken. 31 U.S.C. § 1349 states that such discipline can include "suspension from duty without pay or removal from office."

133.    Thus, Counterclaimants and their personnel (including thousands of District officials and employees) risk criminal prosecution and administrative discipline should they authorize expenditures under any budget enacted in accordance with the BAA.

## FIRST COUNTERCLAIM

## DECLARATORY JUDGMENT OF ILLEGALITY OF BUDGET AUTONOMY ACT

134.    Counterclaimants reallege Paragraphs l through 133 as if set forth fully in this paragraph.

135.    The BAA amendments, to the extent they purport to amend the District's budget process under the Home Rule Act, violate the Home Rule Act, the Anti-Deficiency Act, and the Budget and Accounting Act. They are thus invalid under the Supremacy Clause.

136.    The BAA, by removing local and supplemental funds from the District's required budget process under the Home Rule Act, purport to (i) amend the requirements of the Home Rule Act, Anti-Deficiency Act, and Budget and Accounting Act in violation of Section 602(a)(3), (ii) eliminate the President, Congress, OMB, and the Comptroller General from their respective roles in the District's budget process for local and supplemental funds in violation of Section 603(a), and (iii) remove a portion of the District's budget from the purview of the Anti-Deficiency Act in violation of Section 603(e).

137.    The BAA violates the Anti-Deficiency Act and is thus null and void under the Supremacy Clause of the United States Constitution.

138.    Absent a declaratory judgment, Counterclaimants' refusal to authorize expenditures under any budget enacted pursuant to these invalid amendments creates a substantial and imminent

risk that Counterclaimants will lose funding for their respective offices and for the operations of the District of Columbia government.

## SECOND COUNTERCLAIM

## VIOLATION OF SEPARATION OF POWERS

139.    Counterclaimants reallege Paragraphs 1 through 138 as if set forth fully in this paragraph.

140.    The BAA amendments violate the principle of separation of powers inherent in the D.C. Charter by purporting to empower the Council to perform functions expressly reserved by the Charter to the Mayor.

141.    As a result of these amendments, the Mayor is unable to submit the District's total budget to the President, and thus the Mayor cannot comply with the requirements of the Home Rule Act.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaimants request that this Court:

a.  Declare that the Budget Autonomy Act, D.C. Law 19-321, 60 D.C. Reg. 1724 (Feb. 15, 2013), is null and void because it violates the Home Rule Act, the Anti-Deficiency Act, and the Budget and Accounting Act;

b.  Permanently enjoin the Council of the District of Columbia from enacting, approving, or submitting any portion of the District's budget in accordance with the Budget Autonomy Act; and

c.  Order such other relief as the Court determines to be just and proper.

Date: April 30, 2014                    Respectfully submitted,

                                        IRVIN B. NATHAN (D.C. Bar No. 90449)
                                        Attorney General for the District of Columbia

/s/ Ellen A. Efros\
ELLEN A. EFROS (D.C. Bar No. 250746)\
Deputy Attorney General\
Public Interest Division


/s/ Andrew J. Saindon\
ANDREW J. SAINDON (D.C. Bar No. 456987)\
Senior Assistant Attorney General\
Equity Section\
441 Fourth Street, N.W., 6th Floor South\
Washington, D.C. 20001\
Telephone: (202) 724-6643\
Facsimile: (202) 730-1470\
E-mail: andy.saindon@dc.gov


/s/ Nicholas A. Bush\
NICHOLAS A. BUSH (D.C. Bar No. 1011001)\
Assistant Attorney General\
Public Advocacy Section\
441 Fourth Street, N.W., 6th Floor South\
Washington, D.C. 20001\
Telephone: (202) 442-9841\
Facsimile: (202) 715-7720\
E-mail: nicholas.bush@dc.gov

Lawrence S. Robbins, D.C. Bar No. 420260\
Eric A. White, D.C. Bar No. 1011080\
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP\
1801 K Street NW, Suite 411 L\
Washington DC 20006\
202-775-4501\
lrobbins@robbinsrussell.com\
ewhite@robbinsrussell.com\
*Of Counsel to Jeffrey S. DeWitt, Chief Financial Officer of the District of Columbia*

Seth P. Waxman, D.C. Bar No. 257337\
Daniel S. Volchok, D.C. Bar No. 497341\
Wilmer Cutler Pickering Hale and Dorr LLP\
1875 Pennsylvania Avenue, NW\
Washington, DC 20006\
202 663 6000\
*Of Counsel to Vincent C. Gray, Mayor of the District of Columbia*