UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
COUNCIL OF THE DISTRICT             )
     OF COLUMBIA,                   )
                                    )
     Plaintiff                      )
                                    )
v.                                  )     Civil Action No. 14-00655 (EGS)
                                    )
VINCENT C. GRAY                     )
                                    )
and                                 )
                                    )
JEFFREY S. DEWITT,                  )
                                    )
     Defendants.                    )
_____)

### DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(b), and LCvR 7(h), the Honorable Vincent C. Gray and Jeffrey S. DeWitt, respectively the Mayor and Chief Financial Officer of the District of Columbia, respectfully move this Court for summary judgment, and oppose Plaintiff's motion for summary judgment.[1]

Defendants seek a determination as to the invalidity of the District of Columbia Local Budget Autonomy Act of 2013 ("BAA" or "the Act"), purportedly effective July 25, 2013, D.C. Law 19-321, 60 D.C. REG. 1724 (Feb. 15, 2013).

The Mayor and CFO wholeheartedly agree (as they have said numerous times) that, as a matter of policy, Congress should give the District budget autonomy as soon as possible. That decision, however, is beyond the power that Congress granted to the Council or, respectfully, the

---

[1] Per the Minute Order of April 22, 2014, this brief also includes Defendants' discussion of jurisdictional issues and Opposition to Plaintiffs' Motion to Remand.

citizens of the District to effect. The BAA, no matter the salutary intent behind it, violates the restrictions Congress has placed on the District and any actions taken pursuant thereto put the District's fiscal operations in grave jeopardy.

As the Mayor and CFO amply demonstrate in the legal memorandum filed herewith, the BAA exceeds the powers Congress granted to the Council in the Home Rule Act, violates numerous provisions of federal law, and violates the doctrine of separation of powers as determined by Congress to be applied in the District government. The Act purports to exempt the budgeting of the "local" portion of District revenues from Congress's appropriation and enactment, needing only Council approval prior to expenditure. But the Home Rule Act clearly provides the roles that Congress and the President play in the District's budget process, and the Council cannot simply arrogate that power to itself, or usurp functions assigned to the Mayor. The Home Rule Act is clear, and so is its legislative history—Congress's retention of budget-appropriation authority over the District was *central* to the legislative deal that resulted in the Home Rule Act.

Accordingly, the Defendants are entitled to summary judgment, a declaration that the Act is invalid, and an injunction against its enforcement.

As required by LCvR 7(h)(1), a Statement of Material Facts As to Which There is No Genuine Dispute ("SMF") has been provided, along with a proposed order, and the Defendants' Response to Plaintiff's Statement of Material Facts As to Which There is No Genuine Issue ("PSMF").

Date: April 30, 2014                      Respectfully submitted,

                                          IRVIN B. NATHAN
                                          Attorney General for the District of Columbia

_____/s/_____

ELLEN A. EFROS
Deputy Attorney General
Public Interest Division

_____/s/ Andrew J. Saindon_____

ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
andy.saindon@dc.gov

_____/s/ Nicholas A. Bush_____

NICHOLAS A. BUSH (D.C. Bar No. 1011001)
Assistant Attorney General
Public Advocacy Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643/(202) 442-9841
E-mail: nicholas.bush@dc.gov

Seth P. Waxman, D.C. Bar No. 257337
Daniel S. Volchok, D.C. Bar No. 497341
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
202 663 6800
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com

*Of Counsel to the Honorable Vincent C. Gray, Mayor of the District of Columbia*

Lawrence S. Robbins, D.C. Bar No. 420260
Eric A. White, D.C. Bar No. 1011080
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP
1801 K Street NW
Suite 411 L
Washington DC 20006
202-775-4501
lrobbins@robbinsrussell.com
ewhite@robbinsrussell.com

*Of Counsel to Jeffrey S. DeWitt, Chief Financial Officer of the District of Columbia*

# TABLE OF CONTENTS

I.      Introduction And Summary Of Argument ................................................................. 1

II.     Factual And Procedural Background ........................................................................ 5

III.    Federal Question Jurisdiction ................................................................................. 7

IV.     The Text Of The Home Rule Act Precludes The District Of Columbia From Assuming Budget Autonomy Except By Further Act Of Congress ........................................................ 9

        A.   The Constitution gives Congress plenary authority over the District, and the Home Rule Act establishes the extent to which it has delegated its legislative power to the District Government ........................................................................................................... 9

        B.   Sections 302 and 303 of the Home Rule Act Establish that the District may Amend Its Charter Only Subject to the Limitations in Sections 601,602, and 603 ...................... 12

        C.   The Budget Autonomy Act Exceeds the District's Delegated Legislative Power as Limited by Section 603 ........................................................................................... 14

             1.   Section 603(a) and 603(e) create "limitations" within the meaning of the Home Rule Act that preserve the pre-existing roles of the federal government in the District's budgetary processes—as enshrined in the HRA—and continue the application to the District of the Anti-Deficiency Act. ......................................................................... 13

                  a. Because Section 603(a) and 603(e) direct that the amendments to the HRA envisioned by the BAA cannot be construed to do what they are intended to do, there is an irreconcilable conflict, and Sections 603(a) and 603(e) prevail due to the Supremacy Clause ............................................................................................ 13

                  b. Sections 302 and 303 are properly read to take the entire subject matter addressed in Section 601 through Section 603 out of the District's legislative power, whether or not any particular provision is technically phrased as an affirmative limitation. ....................................................................................... 15

             2.   The Budget Autonomy Act purports to change the pre-existing budgetary processes and to alter the application of the Anti-Deficiency Act to the District ...................... 17

             3.   The Council's contrary arguments, and in particular the argument that Section 450 of the Home Rule Act constituted a permanent appropriation, are meritless ............. 19

        D.   The Budget Autonomy Act exceeds the District's delegated legislative power as limited by Section 602(a)(3) both because it would affect functions of the federal government and because it would amend statutes passed by Congress that are not applicable exclusively to the District ........................................................................ 28

V.      Congress Considered, But Deliberately Withheld Budget Autonomy From The District In the Home Rule Act, As Legislative History Makes Plain And Everyone Understood At The Time ................................................................................ 29

A. The legislative history of the Home Rule Act and predecessor bills shows that Congress considered budget autonomy for the District, yet Congress deliberately withheld it ..................................................................................................... 29

B. The Council notably provides no legislative history supporting its view that Congress understood that it had allowed the District through Home Rule Act mechanisms to assume budget autonomy, and indeed no one understood as much for four decades after the act's passage .......................................................... 32

VI. The Court Should Give Special Weight To The View Of The General Accounting Office ...... 34

VII. The Budget Autonomy Act Violates Separation Of Powers ..................................................... 37

VIII. Congress's Lack Of Action Is Of No Significance.................................................................... 41

IX. Conclusion ................................................................................................................................. 43

## TABLE OF AUTHORITIES

**Cases**

*AFGE v. Pierce*, 697 F.2d 303 (D.C. Cir. 1982).............................................................................. 39

*Am. Fed'n of Gov't Emps. v. FLRA*, 388 F.3d 405 (3d Cir. 2004) .......................................... 25, 27

*AstraZeneca Pharm., L.P. v. FDA*, 872 F.Supp.2d 60 (D.D.C. 2012)............................................ 5

*Banner v. United States*, 428 F.3d 303 (D.C. Cir. 2005) ................................................................ 9

*\*Bliley v. Kelly*, 23 F.3d 507 (D.C. Cir. 1994) ............................................................................... 8

*Brizill v. D.C. Board of Elections and Ethics*, 911 A.2d 1212 (D.C. 2006) ................................ 29

*Building & Constr. Trades Dep't, AFL-CIO v. Martin*, 961 F.2d 269 (D.C. Cir. 1992) .............. 24

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987)........................................................................ 8

*Chenoweth v. Clinton*, 997 F.Supp. 36 (D.D.C. 1998) ................................................................. 39

*Chisom v. Roemer*, 501 U.S. 380 (1991) ...................................................................................... 36

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005) .................................................... 36

*Cosme Nieves v. Deshler*, 786 F.2d 445 (1st Cir. 1986)............................................................... 25

*Cropp v. Williams*, 841 A.2d 328 (D.C. 2004)..............................................................................40

*Delta Data Sys. Corp. v. Webster*, 744 F.2d 197 (D.C. Cir. 1984)........................................ 34, 37

*District of Columbia v. Greater Washington Central Labor Council*, 442 A.2d 110 (D.C. 1982)........................................................................................................ 28

*District of Columbia v. Group Ins. Admin.*, 633 A.2d 2 (D.C. 1993).......................................... 40

*Eldred v. Ashcroft*, 537 U.S. 186 (2003)....................................................................................... 33

*Freedom Watch, Inc. v. Obama*, 807 F.Supp.2d 28 (D.D.C. 2011)............................................. 38

*Gray v. District of Columbia*, 477 F.Supp.2d 76 (D.D.C. 2007).................................................... 3

*Harrison v. PPG Industries, Inc.*, 446 U.S. 578 (1980) ............................................................... 36

*Hessey v. Burden*, 601 A.2d 3 (D.C. 1991).....................................................................................3

*J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928) ............................................... 37

*\*Jackson v. District of Columbia*, 999 A.2d 89 (D.C. 2010) (*en banc*) ................................... 9, 14

*\*L'Enfant Plaza Props., Inc. v. United States*, 229 Ct. Cl. 278, 668 F.2d 1211 (1982) .............. 26

*Marijuana Policy Project v. D.C. Bd. of Elections & Ethics,*
  191 F.Supp.2d 196 (D.D.C. 2002), *reversed on other grounds,*
  304 F.3d 82 (D.C. Cir. 2002) ................................................................... 3
*\*McConnell v. United States*, 537 A.2d 211 (D.C. 1988) ................ 29, 41, 42
*McInnish v. Riley*, 925 So.2d 174 (Ala. 2005) .................................. 40
*Metropolitan Washington Airports Auth. v. Citizens for*
  *the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252 (1991)................... 37
*Myers v. United States*, 272 U.S. 52 (1926)................................... 33
*\*Nevada v. Dep't of Energy*, 400 F.3d 9 (D.C. Cir. 2005)........... 24, 37
*Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425 (1977) .................... 38
*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982)............. 38
*Riley v. Kennedy*, 553 U.S. 406 (2008)................................. 41, 42
*\*Scheduled Airlines Traffic Offices, Inc. v. Dep't of Defense,*
  87 F.3d 1356 (D.C. Cir. 1996)............................................... 34, 37
*Spivey v. Barry*, 665 F.2d 1222 (D.C. Cir. 1981) ............................. 9
*Standard Oil Co. v. Johnson*, 316 U.S. 481 (1942) ...................... 25
*\*Thomas v. Barry*, 729 F.2d 1469 (D.C. Cir. 1984) .......................... 8
*United Auto., Aerospace & Agric. Implement Workers v. Donovan,*
  746 F.2d 855 (D.C. Cir. 1984)............................................... 37
*United Biscuit Co. v. Wirtz*, 359 F.2d 206 (D.C. Cir. 1965)............ 20
*United States Parole Comm'n v. Noble,* 1084 (D.C. 1997) .............6
*Wilson v. Kelly*, 615 A.2d 229 (D.C. 1992) .......................... 38, 40

\*Cases marked with an asterisk are those cases upon which the Defendants chiefly rely, per
  LCvR 7(a).

**Statutes, Rules, and Regulations**

28 U.S.C. § 1331................................................................... 7
28 U.S.C. § 1441................................................................... 7
31 U.S.C. § 1101(1) .............................................................. 18
31 U.S.C. § 1108(b)(1) ........................................................ 18
31 U.S.C. § 1301(d) ......................................................... 21, 36
31 U.S.C. § 1341.......................................................... 18, 22, 29
31 U.S.C. § 1350.............................................................. 12, 18
31 U.S.C. § 1351.............................................................. 18, 34
31 U.S.C. § 3302................................................................. 25
31 U.S.C. § 712(1), (4) ........................................................ 34
31 U.S.C. § 715.................................................................. 34
31 U.S.C. §§ 1341, 1342, 1349 to 1351 and subchapter II of Ch. 15 .......... 17
D.C. Official Code §§ 1-201.01–1-204.115 ....................................9
D.C. Official Code §§ 1-201.01–1-207.71 .....................................9
D.C. Official Code § 1-201.03(14)………………………………………27
D.C. Official Code § 1-201.03(15) .......................................... 11, 26

D.C. Official Code § 1-203.03 ................................................................................... 13
D.C. Official Code § 1-204.04 ..................................................................................... 9
D.C. Official Code § 1-204.04(a) ............................................................................... 38
D.C. Official Code § 1-204.22 ............................................................................... 9, 38
D.C. Official Code § 1-204.24d ................................................................................. 39
D.C. Official Code § 1-204.24d(26) ........................................................................... 39
D.C. Official Code § 1-204.46 ................................... 3, 9, 10, 11, 12, 17, 36, 39
D.C. Official Code § 1-204.48 ................................................................................... 38
D.C. Official Code § 1-204.50 ................................................................................... 36
D.C. Official Code § 1-206.01 to 1-206.03 ............................................................... 15
D.C. Official Code § 1-206.02(a)(3) .................................................................... 28, 42
D.C. Official Code § 1-206.03(e) ............................................................................... 17
D.C. Official Code § 1-301.44(b) ............................................................................... 38
D.C. Official Code § 47-392.09 ................................................................................. 40
D.C. Official Code § 1-201.02(a) ................................................................................. 9
D.C. Official Code §§ 1-204.01–1-204.115 ............................................................... 9
D.C. Official Code §§ 1-204.04, 1-204.22 ................................................................. 9


U.S. Const. art. I, § 8, cl. 17 ......................................................................................... 9
U.S. Const. art. VI, § 2 ............................................................................................... 17


Fed. R. Civ. P. 56(b) ..................................................................................................... 1
Fed. R. Civ. P. 56(c) ..................................................................................................... 5

## Other Authorities

Jason I. Newman & Jacques B. DePuy, *Bringing Democracy to the Nation's Last Colony: The District of Columbia Self-Government Act*, 24 Am. U. L. Rev. 537 (1975) .......... 14, 31, 32

Mike DeBonis & Aaron C. Davis, *D.C. wins year-long spending authority in deal ending federal shutdown*, Wash. Post, Oct. 17, 2013 (*available online at* http://www.washingtonpost.com/local/dc-politics/dc-is-poised-to-win-yearlong-spending-authority-in-capitol-hill-shutdown-deal/2013/10/16/5ddbde2e-369e-11e3-80c6-7e6dd8d22d8f_story.html) (as of Apr. 10, 2014). ................................................................ 40

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
COUNCIL OF THE DISTRICT                )
    OF COLUMBIA,                          )
)
    Plaintiff,                           )
)
    v.                                   )    Civil Action No. 14-00655 (EGS)
)
VINCENT C. GRAY                        )
)
and                                    )
)
JEFFREY S. DEWITT,                     )
)
    Defendants.                          )
_____)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.    Introduction And Summary Of Argument

Mayor Gray and CFO DeWitt are ardent advocates, as a matter of policy and fairness, for

Congress to provide budget autonomy for the District of Columbia, as President Obama has

proposed in pending legislation. However, they recognize—and urge the Court to declare—that

Congress, in granting the District limited Home Rule in 1973, expressly prohibited the D.C.

Council from usurping from Congress and the President (and even the Mayor) their respective

roles in appropriating the total budget for the District.

The plain language of the Home Rule Charter, its indisputable legislative history, the

uniform precedents of the District's courts including its highest court, the D.C. Court of Appeals,

and the unvarying practice of Congress and all District officials over the last 40 years—all

demonstrate overwhelmingly that Congress reserved for itself and the President the full authority

to appropriate by Acts of Congress the budget of the District, including its local revenues. By disregarding these express limitations on its ability to amend the Charter, the Council has violated the Home Rule Act; other federal statutes, including the Anti-Deficiency Act; the U.S. Constitution, which makes federal law supreme; and the principle of separation of powers incorporated in the District's Charter. By its actions, the Council has put at criminal and administrative risk numerous D.C. government employees who will be in violation of the Anti-Deficiency Act if they spend or contract to spend any monies that have not been appropriated by Congress. Its actions even threaten the return by operation of law of the federal control board for the District.

In Title VI of the Home Rule Act, entitled "Reservation of Congressional Authority" and subtitled "Limitations on the Council," Congress explicitly provided three separate mechanisms to insure that the Council did not pass any legislation or seek to amend the Charter to arrogate to itself the authority to appropriate the District's budget. First, it provided that the Council has no authority to amend or repeal any Act of Congress which concerns the functions of the United States government. Clearly, the functions of Congress and the President which have appropriated the District's budget for 140 consecutive years is one of those functions that the Council cannot repeal or amend. Second, Congress provided that nothing in the Charter—including specifically the amendment process—could be construed to make any change in the existing law, procedures or practice relating to the roles of Congress, the President, and other enumerated federal agencies in the preparation, authorization, or appropriation of the "total budget of the District of Columbia government." Finally, in two separate sections, Congress provided in the Charter that no funds may be obligated or spent by any officer or employee of the District of Columbia government "unless such amount has been approved by Act of Congress, and only according to such Act."

The legislative history of the Home Rule Act reveals that without this reservation of the full authority of appropriations by Congress over the District's budget, the District would not have achieved even limited home rule. To overcome vigorous opposition to home rule, based on a threatened congressional loss of control over the District's budget, a coalition of House supporters—led by Congressman Charles Diggs of Michigan, and including D.C. delegate Walter Fauntroy and New York Congressman Charles Rangel—issued a Dear Colleagues letter and a substituted bill that made clear that in return for support for limited home rule, the legislation would insure that Congress kept control over the District's budget, including all of its expenditures. That bargain carried the legislative day, and for the last 40 years, without exception, every local Administration and Council adhered to that bargain—until this Council's action in 2012, with the invalid enactment of the so-called Budget Autonomy Act ("BAA" or "the Act").

Not only has every District budget for the last 40 years been appropriated by Congress out of the Section 450 separate fund that Congress created in the Home Rule Act in 1973, but every time that a related matter has come to the courts in the District, the courts have held that under the Charter only Congress can appropriate the District's funds. In 1991, the unanimous D.C. Court of Appeals, sitting *en banc*, ruled that "[T]he Council cannot authorize the spending of local revenues; only Congress can." *Hessey v. Burden*, 601 A.2d 3, 8 (D.C. 1991) (citing D.C. Official Code § 1-204.46). *See also, e.g., Gray v. District of Columbia*, 477 F.Supp.2d 76, 80 (D.D.C. 2007) ("[A]ny spending done by the District of Columbia must be approved by Congressional appropriation.") and, per this Court, *Marijuana Policy Project v. District of Columbia Bd. of Elections & Ethics*, 191 F.Supp.2d 196, 202 (D.D.C. 2002) ("The Home Rule Act provides that the District of Columbia government may expend monies only to the extent

that such expenditures are provided for by an Act of Congress."), *reversed on other grounds*, 304 F.3d 82 (D.C. Cir. 2002). None of these cases suggested that the Council could change this division of authority with the federal government.

It is no wonder then that the D.C. Attorney General, also a proponent of budget autonomy granted by Congress, has issued a formal legal opinion that the BAA is null and void as a violation of the Home Rule Charter. And that opinion is shared by a definitive ruling of the General Accounting Office, the federal congressional agency with expertise in revenues, appropriations and expenditures. That opinion, issued earlier this year, declared that the BAA is a nullity because it not only violates the Home Rule Charter but also violates the federal Anti-Deficiency Act and the federal Budget and Accounting Act. That view was also shared by the congressional subcommittee responsible for the District's budget, which stated in a report that the BAA was simply advisory of the opinions of the Council and the District residents and had no binding legal force. *See* SMF ¶ 10.

If the Court enters a declaratory judgment that the BAA is invalid as a violation of the Home Rule Charter and other federal statutes, there is still time for the Council to adopt a budget as it is required to do for fiscal 2015 in accordance with practices that have been followed consistently since well before 1973. That would mean that the Mayor would be able to timely submit to the President the total budget for the District for ultimate transmission to Congress for enactment and signing by the President in time for the start of the District's October 1 fiscal year. But if the Court sustains the BAA, chaos will reign in the District. If the expenditure of local revenues is approved by the Council without a congressional appropriation, not only will District employees not know whether they can safely and without legal jeopardy spend the District's funds, but litigants in the Superior Court, not bound by this Court's decision, will contend that

contracts have been improperly let, litigation improperly pursued by District attorneys, and myriad other government actions and licenses are invalid because they were not based on funds appropriated by Congress. The District will be forced to litigate these matters until the issues are finally resolved definitively by the appellate courts.

There are no material facts in dispute here. *See* FED. R. CIV. P. 56(c). When "the dispute centers around a purely legal question of statutory interpretation, it is appropriate to resolve the case on summary judgment." *AstraZeneca Pharm.,L.P. v. FDA*, 872 F.Supp.2d 60, 78 (D.D.C. 2012).

Accordingly, we respectfully urge the Court to enter a declaratory judgment that the BAA is invalid as in violation of the Home Rule Act and federal law, award summary judgment to the Defendants, and enjoin the Council from complying with the terms of the BAA.

## II.    Factual And Procedural Background

The Budget Autonomy Act was passed by the Council on December 18, 2012, and signed by the Mayor a month later. *See* 60 D.C. REG. 1724 (Feb. 15, 2013); SMF ¶ 3; P.Mem. at 9.

Previously, on December 3, 2012, the Mayor had sent a letter to the Chairman of the Council (with copies to every other councilmember), stating that while he "fully and passionately support[s] the goal of securing budget autonomy for the District of Columbia as soon as possible[,]" he believed that the proposed legislation would violate the Home Rule Act and a number of provisions of Title 31 of the U.S. Code.[2] SMF ¶ 4.

In an election held on April 23, 2013, District voters approved the Budget Autonomy Act. SMF ¶ 7. Although Plaintiff asserts that the BAA passed by a margin of "83% to 12%," P.Mem. at 9, the special election had an extremely low turnout, so only 9.25% of the District's

---

[2]    A copy of the Mayor's signing statement of December 19, 2012, reiterating his concerns, is attached as Defendants' Exhibit No. ("DEx.") 1.

registered voters voted in favor of the BAA. *See* D.C. BD. OF ELECTIONS, SPECIAL ELECTION 2013, CITY-WIDE REGISTRATION AND TURNOUT (available online at *https://www.dcboee.org/ election_info/election_results/2013/April-23-Special-Election*) (as of April 24, 2014); SMF ¶ 8. On May 8, 2013, the Council Chairman submitted the BAA's purported amendments to the Charter to Congress. SMF ¶ 9; 60 D.C. REG. 12,135 (Aug. 23, 2013).

Shortly thereafter, the Financial Services and General Government Subcommittee of the U.S. House of Representatives' Appropriations Committee stated that it considered "the recent referendum in the District as an expression of the opinion of the residents, only, and without any authority to change or alter the existing relationship between Federal appropriations and the District." H.R. Rep. 113-172, at 39 (July 23, 2013); 2013 WL 3814685; SMF ¶ 10.

The BAA declared its effective date as January 1, 2014. D.C. Law 19-321, § 3; SMF ¶ 11.

The United States Government Accountability Office ("GAO") subsequently concluded that the BAA is invalid. *See* GAO Decision B-324987 (Jan. 30, 2014) (*available online at* http://www.gao.gov/assets/670/660543.pdf) ("GAO OPINION") (copy attached as DEx. 2); SMF ¶ 13.

On April 8, 2014, the AG issued a formal Opinion concluding that the Act is a nullity. That Opinion is binding on all Executive Branch officers and employees until and unless overturned by a court of competent jurisdiction. PEx. B (citing Reorganization Order 50, part II, eff. June 26, 1953, as amended); SMF ¶ 15. *See also United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1099 (D.C. 1997).

On April 11, 2014, the Mayor sent a letter to the Council Chairman, reiterating his belief that the Act is invalid, and alerting the Chairman that the Mayor would "direct all subordinate

agency District officials not to implement or take actions pursuant to the Act[.]" PEx. C, at 3; SMF ¶ 16. The CFO notified the Chairman on the same day that his own, independent legal review determined that the Act was invalid, and that the CFO "will not make or authorize any payment pursuant to a budget that was approved in conformance with the Act" and "will also direct OCFO employees not to certify contracts or make payments under this budget given the potential civil and criminal penalties to which they, as individuals, would be subject under the federal Anti-Deficiency Act." PEx. D, at 2; SMF ¶ 17.

Separately, the President's FY 2015 budget includes a proposal to grant the District budget autonomy. *See, e.g.*, "Pres. Obama's Budget Calls for D.C. Autonomy," WNEW, Mar. 4, 2014 (*available online at* http://washington.cbslocal.com/2014/03/04/pres-obamas-budget-calls-for-d-c-autonomy/) (as of Apr. 15, 2014); SMF ¶ 14. *See also* OFFICE OF MANAGEMENT AND BUDGET, Fiscal Year 2015 Appendix: Budget of the U.S. Government, Title VIII—General Provisions—District of Columbia, at 1292 (*available online at* http://www.whitehouse.gov/sites/default/files/omb/budget/fy2015/assets/appendix.pdf) (as of Apr. 15, 2014).

Plaintiff Council filed suit in D.C. Superior Court on April 17, 2014. P.Mem. at 11. The Mayor and CFO timely removed the matter to this Court. After a hearing on April 22, 2014, the Court established the instant briefing schedule for cross-motions for summary judgment.

## III.    Federal Question Jurisdiction

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. Federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In determining whether a federal question is present, courts apply the "'well-pleaded complaint rule,' which provides that

federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

The Complaint here raises a substantial federal question. It asks (¶ 65) for a "declaration that the [BAA] is valid and enforceable law." That request necessarily raises a federal question, because whether such a declaration is warranted requires the Court to determine if the Council was authorized by a federal statute, the Charter for the District of Columbia, to amend that Charter as the BAA purports to do, or whether instead the BAA violates federal law. There is no way to provide the relief the Council requests, without interpreting federal law. And that is not because of any defense interposed by the Defendants; it is inherent, rather, in the relief (a binding judicial declaration of the BAA's validity) that the Council itself sought in its complaint.

Controlling precedent strongly supports the conclusion that federal courts have original jurisdiction over Home Rule Act cases like this one. In *Thomas v. Barry*, plaintiffs alleged that a recently enacted District personnel system violated Section 204 of the Home Rule Act. 729 F.2d 1469 (D.C. Cir. 1984). The D.C. Circuit held that the case presented a federal question requiring federal court jurisdiction:

> Although the Home Rule Act does apply to the District of Columbia, it does not do so exclusively. Many of the Act's sections apply directly to the federal not the District government . . . Other sections of the Act similarly allocate functions between the federal and District governments. The Home Rule Act is thus a hybrid statute. Its impact extends beyond the narrow sphere of the District of Columbia to various federal employees . . . .

*Id.* at 1471. And the D.C. Circuit subsequently labeled it "self-evident" that "questions regarding Congress's reserved right to review District legislation before it becomes law concern[] an exclusive federal aspect of the Act." *Bliley v. Kelly*, 23 F.3d 507, 511 (D.C. Cir. 1994). Because the BAA implicates that reserved right, it raises a federal question that vests jurisdiction in this Court.

**IV.    The Text Of The Home Rule Act Precludes The District Of Columbia From Assuming Budget Autonomy Except By Further Act Of Congress.**

**A.    The Constitution gives Congress plenary authority over the District, and the Home Rule Act establishes the extent to which it has delegated its legislative power to the District Government.**

"The Constitution gives Congress exclusive legislative authority in all matters pertaining to the District of Columbia." *Banner v. United States*, 428 F.3d 303, 305 (D.C. Cir. 2005) (citing U.S. CONST. art. I, § 8, cl. 17). Pursuant to this authority, Congress enacted, in 1973, the District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 777, (Dec. 24, 1973), later formally renamed the "Home Rule Act," *codified as amended at* D.C. Official Code §§ 1-201.01–1-207.71 (2013) ("HRA"). SMF ¶ 1. The Home Rule Act provides residents of the District substantial, but not unlimited, powers of local self-government. Congress, in the Home Rule Act, explicitly retained "the ultimate legislative authority over the nation's capital granted by article I, § 8, of the Constitution[.]" D.C. Official Code § 1-201.02(a).

"Title IV of the Home Rule Act sets out the District of Columbia Charter, which establishes the organizational structure of the District government." *Jackson v. District of Columbia*, 999 A.2d 89, 94–95 (D.C. 2010) (*en banc*) (citing D.C. Official Code §§ 1-204.01–1-204.115). The D.C. Charter created a tripartite form of government, vesting legislative power in the Council and executive power in the Mayor. D.C. Official Code §§ 1-204.04, 1-204.22.

The Charter mandates that, each year, the Mayor submit to Council a budget for the District government. *Id*., § 1-204.42. Within 56 days after receipt of the Mayor's budget proposal, the Council must hold a public hearing and adopt a budget request, which the Mayor must then submit to the President for transmission to Congress for its affirmative enactment as law. *Id*., § 1-204.46; *Spivey v. Barry*, 665 F.2d 1222, 1225 n.4 (D.C. Cir. 1981). The Charter also provides that "[n]otwithstanding any other provision . . . , the Mayor shall not transmit any

annual budget or amendments or supplements thereto, to the President of the United States until the completion of the budget procedures contained in this chapter." D.C. Official Code §§ 1-204.46. And it provides that "no amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act." *Id.*[3]

The BAA purports to change the foregoing federally prescribed budget process. In particular, for the "local" portion of the District budget—evidently meaning the portion funded exclusively with non-federal revenues—the BAA would amend Section 446 of the Charter so as to replace the *active* congressional role provided for in the original Home Rule Act with a *passive* congressional role. *See* D.C. Law 19-321, § 2(e), *amending* D.C. Official Code 1-204.46 (purporting to allow District employees to obligate or expend local funds if the amount "has been approved by an act of the Council"). In other words, a budget passed by the Council would become law—and thus allow the expenditure of funds—without any affirmative act by Congress. Congress could still *dis*approve a budget adopted by the Council, but unless it did so affirmatively, the budget would take effect. The BAA also purports both to extend the time for the Council to pass a budget and to allow the Council to change the District's fiscal year.[4]

The Council issued a schedule in February requiring the Mayor to submit the FY 2015 budget to the Council on April 3, 2014, which he did. *See* Council of the District of Columbia, "Notice of Public Hearings: Fiscal Year 2015 Proposed Budget and Financial Plan, Fiscal Year 2015 Budget Support Act of 2014, Fiscal Year 2015 Budget Request Act of 2014, and

---

[3] The Charter provisions cited here do not reflect the purported amendments by the BAA.

[4] The new passive role for Congress would also apply to any budget supplements, regardless of whether they were funded by local or federal dollars. *See* D.C. Law 19-321, § 2(e) ("Any supplements to the annual budget shall also be adopted by act of the Council, after public hearing, by a vote of a majority of the members present and voting.").

Committee Mark-Up Schedule" (Feb. 10, 2014), 61 D.C. REG. 1243–52 (Feb. 14, 2013). That schedule, however, also authorized final Council action on the Fiscal Year 2015 Budget Request Act and the Fiscal Year 2015 Budget Support Act by June 11, 2014. This final deadline is 69 days *after* the Mayor's submission of the budget for enactment by the Council in two readings, like any other Council legislation, eliminating the congressional appropriations role. Thus the BAA purports to *amend* Section 446 to take away authority from Congress and the President, but cannot do so because the Council was specifically deprived of this authority under Sections 302 and 303(d).

Thus if the Mayor is required to follow the BAA, the HRA will be violated in two ways—(1) he would not submit a Council-approved budget to the President according to the HRA deadline, and (2) he would not submit a *complete* budget, only submitting the "federal" portion of the budget to the President (as the Council, after its enactment of the local budget would submit the local portion directly to the Speaker of the House for only passive review).

The Act purports to amend Charter Section 446 (D.C. Official Code § 1-204.46) to provide separate treatment for the "federal portion" and the "local portion" of the District's budget, although neither of those terms are defined in either the BAA or the Home Rule Act.[5] The HRA defines the budget to be the District's total budget, including the federal payment and all locally raised revenues. *See* D.C. Official Code § 1-201.03(15).

Section 446 of the Charter prohibits District employees from obligating or expending funds except in accordance with an act of Congress. The Act attempts to amend that section of the Charter to allow District employees to obligate or expend local funds if the amount "has been approved by an act of the Council." D.C. Law 19-321, § 2(e), *amending* D.C. Official Code 1-

---

[5]     By "local portion," the Council appears to mean that segment of the District's budget derived from District of Columbia tax revenues.

204.46.[6] Thus, under the Act, no congressional legislation would be necessary before District employees could obligate and expend local funds.

The CFO, Mayor, or any other District official who, on or after October 1, 2014, obligates or expends any funds (local or otherwise) without an appropriation by Congress would be in violation of federal law, subject to criminal penalties or administrative sanctions. *See* 31 U.S.C. § 1350.

Under the Home Rule Act and the original Charter, only the enactment of an appropriation by Congress—which requires passage by both Houses of Congress and approval by the President—makes District funds available for obligation or expenditure. In short, the BAA purports to make a mere act of the Council sufficient to make local amounts available for obligation and expenditure, even without any congressional action. This is contrary to the plain language of the Home Rule Act—under which only an affirmative appropriation by Congress makes District funds available—its legislative history, the instruction of the *en banc* D. C. Court of Appeals, numerous other courts, including this one, and the uniform practice in the District for more than 40 years. *See supra*, p. 3.

**B.      Sections 302 and 303 of the Home Rule Act Establish That The District May Amend Its Charter Only Subject To The Limitations In Sections 601, 602, And 603.**

Congress's basic grant of legislative power to the District under Section 302 of the Home Rule Act is subject to the express limitations of Sections 601, 602, and 603. *See* D.C. Official Code § 1-203.02 Section 302 provides, *inter alia*, "Except as provided in [Sections 601, 602, and

---

[6]      The sentence that follows the first three sentences of amended 446 that purports to provide separate routes for the federal and the local portions of the annual budget reads: "Any supplements to the annual budget shall also be adopted by act of the Council, after public hearing, by a vote of a majority of the members present and voting." D.C. Law 19-321, § 2(e). But this supplemental procedure does not distinguish between the federal portion and the local portion of the budget, hence this provision is inconsistent with the BAA's stated goals, notwithstanding its total legal invalidity.

603], the legislative power of the District shall extend to all rightful subjects of legislation within the District consistent with the constitution of the United States and the provisions of this Act[.]" Thus, the Council's enactment of the BAA is an exercise of "the legislative power of the District" under Section 302 and, hence, is subject to Sections 601, 602, and 603 at the outset. And Section 303(d) similarly states that "[t]he amending procedure provided in this section may not be used to enact any law or affect any law with respect to which the Council may not enact any act, resolution, or rule under the limitations specified in [Sections 601, 602, and 603]." This language, discussed *infra*, simply confirms this limitation in the Charter-amending context. Consequently, even without Section 303(d), the Charter-amending procedure cannot be used to enact legislation that is inconsistent with Sections 601, 602, and 603.

Congress did provide an amendment process in the HRA. D.C. Official Code § 1-203.03. And the Budget Autonomy Act was proposed as such an amendment, purporting to alter several provisions of the Charter relating to the District's budget process. But, as with everything else, Congress set clear limits on the District's amendment authority. Section 303(d) explicitly *prohibits* the use of the amendment process to enact any law contrary to the "limitations" set forth in Sections 601, 602, and 603 of the Home Rule Act. As explained more fully below, the BAA violates those sections in a number of ways, including by purporting to change the role of federal entities in the budget process and by extending its effects beyond the District.

**C.   The Budget Autonomy Act exceeds the District's delegated legislative power as limited by Section 603.**

1.   Section 603(a) and 603(e) create "limitations" within the meaning of the Home Rule Act that preserve the pre-existing roles of the federal government in the District's budgetary processes—as enshrined in the HRA—and continue the application to the District of the Anti-Deficiency Act.

   a.   Because Section 603(a) and 603(e) direct that the amendments to the HRA envisioned by the BAA cannot be construed to do what they are intended to do, there is an irreconcilable conflict, and Sections 603(a) and 603(e) prevail due to the Supremacy Clause.

Section 603(a) of the HRA states that:

Nothing in this act shall be construed as making any change in existing law, regulation, or basic procedure and practice relating to the respective roles of the Congress, the President, the federal Office of Management and Budget, and the Comptroller General of the United States in the preparation, review, submission, examination, authorization, and appropriation of the total budget of the District of Columbia government.

The phrase "[n]othing in this act" *includes* the Charter-amending provisions of Section 303, thus Section 603(a) prohibits amending the Charter to change the role in the District's budget process played by the four, specifically identified federal entities.[7] Thus, the Home Rule Act clearly excludes budget matters from the Charter-amendment process otherwise authorized in Section 303(a). *See Jackson*, 999 A.2d at 102 n.20 (listing the "subject areas" that the HRA expressly renders "off-limits to direct democracy" as "appropriations, emergency acts, tax levies, [and] *the District's budget*.") (emphasis added).

The BAA's purported amendment of Sections 441 (the fiscal-year provision) and 446 of the Home Rule Act changes the long-standing roles and procedures of the referenced federal

---

[7]   *See* Jason I. Newman & Jacques B. DePuy, *Bringing Democracy to the Nation's Last Colony: The District of Columbia Self-Government Act*, 24 AM. U. L. REV. 537, 593 (1975) (henceforth "Newman & DePuy") ("The roles of the Congress, the President, the Federal Office of Management and Budget and the Comptroller General in the budgetary process *remain as they were prior to home rule in the District*.") (emphasis added).

entities with respect to the District's total budget, which includes amounts derived from local taxes and fees and federal grants and payments. Under the BAA, the Council permits the District to establish its *own* budget for local funds, to be authorized according to a potentially different fiscal year, subject only to passive congressional review. This is a change in the District's budget process that directly contradicts the prohibition in Section 603(a), a provision that, through Section 303(d), expressly *precludes* the use of the Charter-amending process to accomplish this result.

> b.   Sections 302 and 303 are properly read to take the entire subject matter addressed in Section 601 through Section 603 out of the District's legislative power, whether or not any particular provision is technically phrased as an affirmative limitation.

The Council recognizes that § 303(d) of the Home Rule Act imposes substantive restrictions on the Charter amending procedure. P.Mem. at 14. The Council argues, however, that Sections 601, 602, and 603 are not "limitations" on the Council and, hence, are not incorporated by § 303(d). P.Mem. at 31–32. The primary counter to Plaintiff's argument is that Sections 601 to 603 are limitations because Congress *called* them that. *See* Section 303(d) ("the limitations specified in §§ 1-206.01 to 1-206.03.").

Not only that, the Council's argument is contrary to a common-sense reading of the provisions as a whole and is refuted by the legislative history. The Council asserts, for instance, that § 303(d) is not subject to § 603(a) (preserving the role of federal entities in the District's budget process) because that provision is not a "limitation," but only a "rule of construction." P.Mem. at 32–33. The Council argues that, if Congress intended it as a limitation, it would have simply said that the Council may not change these laws and procedures. *Id*. at 31.

However, the most logical reading of the phrase "the limitations specified in sections 601, 602, and 603" in § 303(d) is that it treats the sections *as a whole* as limitations on the

Council's authority, not just to the extent that they explicitly state that they are "limitations." Like the provision in Section 603 that says that nothing in the HRA shall be construed to alter the pre-existing budget process, Section 601 (entitled "Retention of constitutional authority") does not characterize itself as a "limitation," nor does it impose any *express* requirements or restrictions on the Council. It simply underscores the fact that Congress retains ultimate legislative authority over the District under the Constitution. Yet Congress treated § 601 as a "limitation" in § 303(d).

Section 603(a) (entitled "Budget Process; Limitations on Borrowing and Spending") says that nothing in the Home Rule Act shall be construed to alter pre-existing budget processes. Section 603(a) was not amended by the Budget Autonomy Act, nor could it have been. So if the BAA were effective, the Home Rule Act (as so amended) is internally inconsistent: the new provisions purport to change pre-existing budget processes even though, at the same time, Section 603(a) says *nothing* in the act can be construed to do so. Section 603(a) must prevail in the conflict because of the Supremacy Clause (it was enacted by Congress, unlike the BAA). In that sense, then, Section 603(a) is a "limitation"—it automatically nullifies *any* later Council or voter attempt to change the Home Rule Act that would change pre-existing budget processes.

Similarly without merit is the Council's argument that § 603(e) is not a "limitation" under § 303(d). Section 603(e) provides that "[n]othing in this Act shall be construed as affecting the applicability to the District government of the provisions of section 3679 of the Revised Statutes of the United States, the so-called Anti-Deficiency Act."

The legislative history confirms the meaning of this language, stating that "District of Columbia officers are also prohibited (section 603(e)) from violating the Federal Anti-Deficiency Act, prohibiting expenditures beyond available resources." STAFF OF THE HOUSE

COMM. ON THE DISTRICT OF COLUMBIA, 93d Cong., 1st Sess., LEGISLATIVE HISTORY OF THE DISTRICT OF COLUMBIA SELF-GOVERNMENT AND GOVERNMENTAL REORGANIZATION ACT at 3018 (Comm. Print 1974) ("HOME RULE HISTORY") (Joint Explanatory Statement of the Committee of Conference).

The BAA unilaterally purports to exempt local District funds from the requirements of the federal Anti-Deficiency Act, thereby violating the Home Rule Act itself, and the Anti-Deficiency Act's explicit statement that its requirements apply to the District. Moreover, the BAA directly violates the Anti-Deficiency Act and other federal laws.

> 2.   The Budget Autonomy Act purports to change the pre-existing budgetary processes and to alter the application of the Anti-Deficiency Act to the District.

The Act's changes to Section 446 of the Charter (D.C. Official Code § 1-204.46) attempt to amend at least two federal laws that are not restricted in their application exclusively in or to the District. Thus, even assuming the Charter-amending procedure could be used to change the relevant Home Rule Act provisions (which it cannot, as explained herein), because the BAA irreconcilably conflicts with federal law, it is a nullity. *See* U.S. CONST. art. VI, § 2.

The federal Anti-Deficiency Act, 31 U.S.C. §§ 1341, 1342, 1349 to 1351 and subchapter II of Chapter 15, prohibits federal and District government employees, under pain of federal criminal and administrative penalties, from, among other things, obligating or expending funds in excess or advance of an appropriation. That law applies to the District by its own terms and through section 603(e) of the Home Rule Act, which states "[n]othing in this act shall be construed as affecting the applicability to the District government of the provisions of §§ 1341, 1342, and 1349 to 1351 and subchapter II of Chapter 15 of Title 31, United States Code." D.C. Official Code § 1-206.03(e).

Under the BAA, any District officials who undertake to spend money as a result of the

appropriations "approved" solely by the Council would be risking federal civil and criminal fines. *See* 31 U.S.C. § 1350 ("An officer or employee of the United States Government or of the District of Columbia government knowingly and willfully violating section 1341(a) or 1342 of this title shall be fined not more than $5,000, imprisoned for not more than 2 years, or both."). In addition, the Mayor is required to report all violation of the Anti-Deficiency Act by District employees to the President and Congress, and ensure that appropriate disciplinary action is taken. *Id.*, §§ 1349, 1351.

Similarly, the BAA conflicts with Title 31 of the United States Code, which requires the Mayor and the federal agencies to submit their annual budget proposals to the President. "The head of each agency shall prepare and submit to the President each appropriation request for the agency." *Id.*, § 1108(b)(1).[8] The BAA impermissibly purports to amend the federal law by excluding the District's local-funds budget from its coverage.

Moreover, as discussed below, if the Mayor fails to submit to the President a timely, duly adopted budget for both local and federal funds, the President could become involved in formulating the District's budget. Under 31 U.S.C. § 1108(b)(1), "when the head of an agency does not submit a request by th[e required] date, the President *shall prepare* the request for the agency to be included in the budget . . . and the President *may change* agency appropriation requests." (emphasis added).[9]

---

[8]     The definition of "agency" under the Budget & Accounting Act includes the District of Columbia. 31 U.S.C. § 1101(1).

[9]     As noted earlier, the Act threatens recent action on Capitol Hill to give the District greater autonomy. *See* p. 7, *supra*. Of course, the relevant language in the President's budget must be passed by both Houses of Congress, but the Council's peremptory actions here, ironically, seriously jeopardize a valid method for it to achieve its stated goal. Also, in recent weeks Senator Mark Begich (chair of the Subcommittee on Emergency Management, Intergovernmental Relations, and the District of Columbia, within the Senate's Committee on Homeland Security and Government Affairs), with Senator Carper, introduced his own budget autonomy bill for the District, S. 2246. *See* http://beta.congress.gov/bill/113th-

3. The Council's contrary arguments, and in particular the argument that Section 450 of the Home Rule Act constituted a permanent appropriation, are meritless.

The Council also argues that Congress, when it enacted Section 450 of the Home Rule creating the District's General Fund, "permanently" diverted local funds from the U.S. Treasury, and thus local District funds "never pass through the custody of the federal government[,] P.Mem. at 5, 18–19, obviating the need for further appropriation action by Congress. Plaintiff's theory appears to be that creation of the District's General Fund (into which all District monies are deposited) was a "permanent appropriation" that satisfies the Constitution's Appropriations Clause (and the Anti-Deficiency Act), or, in the alternative, that that action constituted a determination that those monies were not part of the public fisc and need not be appropriated. P.Mem. at 20. As the District demonstrates herein, these arguments, while novel, are wrong as a matter of law and unsupported by *any* legislative history.

Plaintiff asserts a wholly novel theory, one that has been entirely missing in previous analyses of the Act and, so far as it appears to the Defendants, has never appeared in the legislative history of the Home Rule Act or the 40-plus years of case law since then. And this theory was never asserted by any prior Council or Mayor in any congressional hearing since the enactment of the Home Rule Act 40 years ago.

Plaintiff is incorrect, for a number of reasons; starting with the simplest: Section 450 does not say anything about appropriations or authorize expenditures; although it separates the District's General Fund from the U.S. Treasury, it does not authorize the Council to appropriate the District's budget. The mere fact that Congress established the District's General Fund separate from the U.S. Treasury did not by itself create a continuing appropriation, because in the

---

congress/senate-bill/2246/text. Surely, the President and Members of Congress would not be advancing these proposals if they believed the BAA was valid and the District already *had* budget autonomy.

same statute Congress specifically preserved existing appropriation procedures by enacting Sections 446 and 603.

In the instances when Congress *has* created funds that could be obligated without further action by Congress, it has used different language. *See, e.g.,* GAO, 1 PRINCIPLES OF APPROPRIATIONS LAW, pp. 2-17 to 2-20 (3d ed. 2004)[10] (discussing when statutes creating funds will be considered to authorize expenditures as well) (citing, *inter alia*, *United Biscuit Co. v. Wirtz*, 359 F.2d 206, 212 (D.C. Cir. 1965) (analyzing Armed Services Procurement Act applicable to military commissary purchases)); 67 Comp. Gen. 332 (1988)).

Section 446 is not only about appropriations but also was entitled "Enactment of Appropriations by Congress." That makes clear that Section 446, *not* Section 450, was where Congress addressed appropriations in the Home Rule Act.[11] Indeed, Section 446 makes no mention of either the D.C. General Fund or the U.S. Treasury, leading to the inevitable conclusion that any obligation or expenditure by the District—*regardless of its source*—must be appropriated by Congress annually. The intent of Congress could hardly be clearer: *Each* year, Congress appropriates money "out of the D.C. General Fund."[12] The language used by Congress in its annual appropriations laws for the last 40-plus years should settle the question of that body's intent. Congress's repeated use of the word "annual" in its appropriations directly refutes the Council's permanent-appropriation argument. If, after all, the original creation of the General

---

[10]    *Available online at* http://www.gao.gov/legal/redbook/redbook.html (as of April 21, 2014).

[11]    There is no redundancy between Section 446's requirement of federal approval for District expenditures and the Anti-Deficiency Act's applicability to the District. The Anti-Deficiency Act imposes sanctions on overspending, and Section 446 does not. They therefore work together.

[12]    *See, e.g.*, Omnibus Appropriations Act of 2009, Pub. L. No. 111-8, 123 Stat 524, at 654–55 (Mar. 11, 2009) ("The following amounts are appropriated for the District of Columbia for the current fiscal year out of the General Fund of the District of Columbia ("General Fund"), except as otherwise specifically provided[.]"); Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, 123 Stat. 3034, at 3183 (Dec. 16, 2009) (same); Consolidated Appropriations Act of 2012, Pub. L. No. 112-74, 125 Stat. 786, at 906 (Dec. 23, 2011) (same).

Fund in Section 450 was indeed "permanent," why would Congress have repeatedly insisted on its approval of all appropriations on an *annual* basis elsewhere in the Home Rule Act?

Moreover, 31 U.S.C. § 1301(d) says: "A law may be construed to make an appropriation out of the Treasury or to authorize making a contract for the payment of money in excess of an appropriation *only if the law specifically states that an appropriation is made* or that such a contract may be made." Plaintiffs cannot point to any language in the Home Rule Act's Section 450 (or anywhere else) mirroring such required language. Congress's creation of the General Fund in Section 450 was *not*, itself, an appropriation. *See* GAO, 1 PRINCIPLES OF APPROPRIATIONS LAW, at 2-16 (for an appropriation to be found, there must be "a specific direction to pay and a designation of funds to be used"). Section 450 reads:

> The General Fund of the District shall be composed of those District revenues which on January 2, 1975 are paid into the Treasury of the United States and credited either to the General Fund of the District or its miscellaneous receipts, but shall not include any revenues which are applied by law to any special fund existing on January 2, 1975.

Section 450 neither specifically appropriates money nor makes any direction on how the funds should be used. That, read in combination with Section 446, indicates that Section 450 did *not* create an appropriation. Section 450 did nothing to give the District spending authority, which is what an appropriation is all about. Yes, the funds referenced in Section 450 "belong" to the District, but spending authority must be specifically given to constitute an appropriation. In Section 446 it was specifically withheld.

The Council conflates the creation of the General Fund with a formal "appropriation." The Council argues that Congress's appropriations for the District since home rule were not appropriations "out of the Treasury" but appropriations out of the D.C. General Fund. P.Mem. at

22.[13] The Council argues that the language in 31 U.S.C. § 1341 prohibiting District or federal officers from making or authorizing expenditures or obligations "exceeding an amount available in an appropriation or fund for the expenditure or obligation" *exempts* the obligation of assets in the General Fund of the District that are based on locally raised revenues from the appropriations process, because such obligations or expenditure would be from a "fund" under that section. *Id.* at 20. However, the fact that Congress separated the D.C. General Fund from the United States Treasury, does not alter the fact that Congress expressly *preserved* the existing laws and procedures relating to Congress's appropriation of the District's total budget and made the District fully subject to the federal appropriations statutes codified in Title 31 of the United States Code. Under the logic of the Council's argument, Congress's enactment of appropriations acts authorizing the District to obligate and expend funds from the District's General Fund since 1975 has been a needless exercise. While Congress may create specialized funds, such as revolving funds, trust funds, and intergovernmental fund accounts, expenditures from these funds must *still* be authorized by an act of Congress.

Sections 603(a) and (e) of the Self-Government Act make it clear that Congress would continue to appropriate expenditures and obligations from the General Fund as it had done before the enactment of the Home Rule Act, despite the fact that the District's General Fund was separated from the United States Treasury by the original Home Rule Act and that the Anti-Deficiency Act would continue to apply as it did before home rule.

The Council's argument that the establishment of the General Fund and the transfer of District funds out of the Treasury eliminated the requirement of an appropriation is also belied

---

[13]     The Council cites no legal authority for concluding that the Anti-Deficiency Act only applies to funds appropriated out of the U.S. Treasury. The Anti-Deficiency Act applies *whenever* appropriations requirements apply. The Miscellaneous Receipts Act is a federal statute; Congress can surely assign certain kinds of receipts to a different fund and make it subject to appropriations.

by Section 603(a), which says that nothing in the HRA shall be construed as making any changes in the roles of Congress, the President, and other enumerated federal agencies in the budget process. This was enacted *at the same time* as Section 450, so there was clearly no permanent appropriation.[14]

Far from demonstrating that Congress intended to "exempt" the District from federal appropriations requirements by creating a General Fund, the legislative history shows that this approach was *affirmatively rejected*. As noted by the GAO in its opinion, the House version of the bill that became the Home Rule Act would have allowed the Council to establish the District's budget without the need for federal appropriations, and that version appeared to have been intended to model the treatment of District funds after how they are handled at the federal level, with miscellaneous receipts going back to the District. The House Subcommittee on Government Operations, Committee on the District of Columbia, discussed the purposes of the General Fund during its Markup of Subcommittee Draft No. 2, HOME RULE HISTORY, pp. 536–39. But the Senate version and the final HRA included the congressional appropriations process in the provisions relating to federal approval of the District's budget and Section 603(a). So, any inference of a congressional intent to eliminate these requirements through the creation of the General Fund is misplaced.[15]

---

[14]     Plaintiff can cite to generic examples in the legislative history mentioning the creation of the General Fund, P.Mem. at 19, but the legislative history would not read the way it does if the creation of that fund was meant to be a *permanent* appropriation.

[15]     Congress has not only granted spending authority to the District for local funds since the effective date of the Home Rule Act, but also specifically granted spending authority for local funds to the District in the FY 2014 continuing resolution, and the President has requested appropriation authority for the District's local funds in his FY 2015 budget. All of these *recent* actions (to say nothing of the historical actions referenced herein) manifest that Congress and the President *do not* interpret Section 450 to be a permanent appropriation. If Congress thought Section 450 were a permanent appropriation, it would not continue to act annually in approving the District's budget. *Cf.* 10 Comp. Gen. 120 (1930), at 122 ("[T]he fact that these provision have been repeated in the appropriation acts from year to year would indicate that they were not considered or intended by the Congress to be permanent legislation.").

Section 450 cannot be a "permanent" appropriation, as it is neither permanent nor an appropriation. *See Nevada v. Dep't of Energy*, 400 F.3d 9, 14 (D.C. Cir. 2005) (Circuit could not "identif[y] any authority suggesting that a continuing appropriation exists when Congress creates a special fund but makes spending from it 'subject to appropriations.'"). To determine, generally, whether an appropriation is "permanent," courts look for "words of futurity," such as "hereafter." *Building & Constr. Trades Dep't, AFL-CIO v. Martin*, 961 F.2d 269, 274 (D.C. Cir. 1992) (citing GAO, *Principles of Appropriations Law*, 2-34–2-37). Section 450 contains no such words regarding the General Fund, stating only that the Council "may from time to time establish such additional special funds as may be necessary for the efficient operation of the government of the District." If there had indeed been a "permanent appropriation" in 1973, the District's authority to spend money would not have to be included in the federal appropriations process—it could have been authorized by some sort of act that did not bind the District's spending up with the federal budget process. Approval under Section 446 could take place under *any* federal statute. There is no reason to think Congress would have continued to "appropriate" already appropriated funds each year if this were not necessary under the Home Rule Act. Congress would not use this language or this vehicle.

Further, when Congress wants to make a *permanent* appropriation for a portion of the District's funds, it knows how to do so. There are regular references in the District's annual Budget Request Acts, adopted by Congress, that make funds "available until expended" and *not* subject to expiration at the end of the fiscal year. *See, e.g.*, Consolidated Appropriations Act of 2012, Pub. L. No. 112-74, 125 Stat. 786, at 906 (Dec. 23, 2011); Consolidated Appropriations Act of 2010, Pub. L. No. 111-117, 123 Stat. 3034, at 3183 (Dec. 16, 2009). These appropriations make the funds *permanently* available for the assigned purpose.

Section 450 merely creates a fund, the General Fund, authorizes the Council to create special funds, and directs that money must be deposited into those funds, the same functions accomplished by the Miscellaneous Receipts Statute, 31 U.S.C. § 3302. Contrary to Plaintiff's argument, there is no indication in the legislative history of the HRA that Congress was "exempting" the District from the Miscellaneous Receipts Statute; Congress merely paralleled that statute's requirements in Section 450 for all District funds, a necessary step in the creation of the General Fund. *Cf.* 31 U.S.C. § 3302(b) ("[A]n official or agent of the Government receiving money for the Government from any source shall deposit the money in the Treasury as soon as practicable[.]") and D.C. Official Code § 1-204.50 ("All money received by any agency, officer, or employee of the District in its or his official capacity shall belong to the District government and shall be paid promptly to the Mayor for deposit into the appropriate fund[.]").

But just like the Miscellaneous Receipts Statute, Section 450 does not grant any appropriation authority. In sum, the Council's arguments regarding Section 450 of the Charter depend upon a strained reading of isolated provisions of the Home Rule Act and are contrary to a plain reading of the HRA as a whole and its extensive legislative history. The facts simply do not support the Council's claim that Congress decided, by creating the General Fund, to give up all control over the District's expenditures.

Plaintiff's discussion of "NAFIs" is a red herring, and quickly collapses under the weight of case law. NAFIs, or nonappropriated fund instrumentalities, are "arms of the [federal] government" which are not financed through the normal congressional-appropriations process, but via their own activities, services, or sales. *Am. Fed'n of Gov't Emps. v. FLRA*, 388 F.3d 405, 409 (3d Cir. 2004) ("*AFGE*") (quoting *Standard Oil Co. v. Johnson*, 316 U.S. 481, 485 (1942) and *Cosme Nieves v. Deshler*, 786 F.2d 445, 446 (1st Cir. 1986)).

Whether an entity is a NAFI turns not simply on whether it generates revenue from its activities, "but whether the organization is 'denied by the Government any use of appropriated monies.'" *Id.* (quoting *L'Enfant Plaza Props., Inc. v. United States*, 229 Ct. Cl. 278, 668 F.2d 1211, 1212 (1982)). "Since the power to appropriate belongs to Congress, Congress must make the decision whether to allow or deny a federal instrumentality appropriated funds. Congress may impose the restriction that the instrumentality be entirely self-supporting, without any appropriated funds, in which case it is a NAFI." *Id.* (citations omitted).

The Council's novel argument—that the District's General Fund is equivalent to a NAFI—founders. Even aside from the clear practice of more than four decades since its enactment, the plain text of the Home Rule Act refutes Plaintiff's suggestion that Section 450 was intended as a "permanent" appropriation, a perpetual money flow beyond the reach of Congress.

Courts should presume "that funds disbursed by an entity should be treated as appropriated unless there is 'a clear expression by Congress that the agency was to be separated from general federal revenues.'" *Id.* at 410 (quoting *L'Enfant Plaza*, 668 F.2d at 212).[16]

Here, of course, these "clear expressions" are all to the contrary. *See, e.g.*, Section 446 ("no amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act."); D.C. Official Code § 1-201.03(15) ("budget" means "the entire request for *appropriations* and loan or spending authority for *all activities* of all agencies of the District financed from *all existing or proposed resources* and shall include both operating and capital

---

[16]     *See also id.* ("[O]ne should not lightly presume that Congress meant to surrender its control over public expenditures by authorizing an entity to be entirely self-sufficient and outside the appropriations process.").

expenditures.") (emphasis added);[17] HOME RULE HISTORY at 3128 ("The bill also provided broad revenue raising authority for the city, enabling the people through their elected representatives to determine how to pay for the services they require. At the same time, final Congressional review of the District's appropriation process is retained under this measure.") (Statement of President Richard Nixon Upon Signing the Home Rule Act Into Law); *Id.* at 3051 ("[W]e have retained in the Congress the authority to review and appropriate the entire District budget") (Honorable Charles C. Diggs, Jr. on the Home Rule Conf. Rep.); *id.* at 3941 ("The following additional restrictions are placed on the legislative authority of the D.C. Council, limiting . . . [t]he actual appropriation of the total budget for the District of Columbia, Sec. 446") (Memorandum from Minority Counsel to Members of the House Committee on the District of Columbia).

Courts should treat an entity's money as appropriated even when the entity is fully self-sufficient, "so long as Congress has not clearly stated that it wishes to relinquish the control normally afforded through the appropriations process." *AFGE*, 388 F.3d at 410. Plaintiff has not provided the "clear statement" required—it does not exist in Section 450, anywhere else in the text of the Home Rule Act, or in the legislative history. The artificial distinction that Plaintiff attempts to make between "local" and "federal" funds is ultimately irrelevant—Congress retains control over the expenditure of both. "Where Congress has not "clearly expressed" its decision to create a NAFI, therefore, it has determined that the agency's spending should be subject to the usual appropriations authority *even if the Treasury is not the source of all or even any of the funds*." *Id.* at 413–14 (emphasis added).

---

[17]     *See also id.*, § 1-201.03(14) ("The term 'resources' means revenues, balances, enterprise or other revolving funds, and funds realized from borrowing.").

**D.** **The Budget Autonomy Act exceeds the District's delegated legislative power as limited by Section 602(a)(3) both because it would affect functions of the federal government and because it would amend statutes passed by Congress that are not applicable exclusively to the District.**

Section 602(a)(3) of the HRA (D.C. Official Code § 1-206.02(a)(3)) provides that the Council has no authority to "enact any act, or enact any act to amend or repeal any Act of Congress, which concerns the functions of property of the United States or which is not restricted in its application exclusively in or to the District." This is one of nine express "limitations" in the HRA on the Council's authority. The Budget Autonomy Act violates this provision in two respects.

First, the Budget Autonomy Act "concerns . . . functions . . . of the United States"— namely, the functions of "Congress, the President, the federal Office of Management and Budget, and the Comptroller General of the United States" referenced in § 603(a) (discussed in the following section). These functions are some of the most important substantive functions of government.[18] They are not, as Plaintiff argues, P.Mem. at 27–28, simply analogous to the functions of the Secretary of Labor discussed in *District of Columbia v. Greater Washington Central Labor Council*, 442 A.2d 110 (D.C. 1982), which were ministerial in nature.[19]

Second, the Budget Autonomy Act "is not restricted in its application exclusively in or to the District" because it would directly conflict with provisions of federal law pertaining to the

---

[18]     Plaintiff states that "Congress understood" the federal functions here a certain way. *See* P.Mem. at 27–28. But the block quote proffered is *not* from a member of Congress, but from the District's first Mayor, the Honorable Walter E. Washington, in a letter dated May 3, 1973, responding to a request from the House District Committee Subcommittee on Government Operations for ideas concerning the "major elements" of home rule legislation. HOME RULE HISTORY at 182.

[19]     Plaintiff also cites *Greater Washington* in arguing that the "functions . . . of the United States" limitation simply "withhold[s] from local officials the authority to affect or to control decisions made by federal officials in administering federal laws that are national in scope as opposed to laws that relate solely to the District of Columbia."   442 A.2d 116, *quoted in* P.Mem. at 27. That reading is wrong because the statute creates two separate limitations:  one relating to "functions or property of the United States" and a second one—separated from the first by "or"—regarding legislation that "is not restricted in its application exclusively in or to the District."  D.C. Official Code § 1-206.02(a)(3).

appropriation and execution of the budget by Congress and the President, which are codified in Title 31 of the United States Code, and which expressly apply (but are not limited) to the District of Columbia Government. Notably, 31 U.S.C. § 1341 (the Anti-Deficiency Act) provides that

> (a)(1) An officer or employee of the United States Government *or of the District of Columbia government* may not–
> (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation;
> (B) involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law . . . .

(Emphasis added).

The D.C. Court of Appeals has made clear that legislation that applies to the District and *also* to other jurisdictions of the United States is legislation that "is not restricted in its application exclusively in or to the District" under § 602(a)(3) and, hence, is not subject to amendment by the Council in any respect. *See Brizill v. D.C. Board of Elections and Ethics*, 911 A.2d 1212, 1215–16 (D.C. 2006); *McConnell v. United States*, 537 A.2d 211, 215 (D.C. 1988). The Anti-Deficiency Act, 31 U.S.C. § 1341, is such a statute.

**V.     Congress Considered, But Deliberately Withheld, Budget Autonomy From The District In The Home Rule Act, As The Legislative History Makes Plain And Everyone Understood At The Time.**

**A.     The legislative history of the Home Rule Act and predecessor bills shows that Congress considered budget autonomy for the District, yet Congress deliberately withheld it.**

The legislative history amply demonstrates that the retention of congressional appropriations control over the entire District budget was *central* to the negotiations that resulted in the Home Rule Act. *See, e.g.*, HOME RULE HISTORY at 3051 ("[W]e have reserved the right of the Congress to legislate for the District at any time on any subject; we have retained in the Congress the authority to review and appropriate the entire District budget") (Honorable Charles C. Diggs, Jr. on the Home Rule Conf. Rep.).

The legislative history of the Home Rule Act makes it plain that Congress carefully considered granting budget autonomy to the District Government but ultimately decided not to. The Senate bill provided for budget autonomy. The Senate Report stated that "[t]he adoption of the budget by act of the Council shall operate to appropriate and make available for expenditure for the purposes named in the budget the amounts stated therein." S. Rep. No. 93-219, 93d Cong., 1st Sess. 8 (1973), *reprinted in* HOME RULE HISTORY 2728; see S. 1435 § 504, Home Rule History 2668. The House bill, as reported by the House District of Columbia Committee, was similar. The House Report stated that "[s]ection 446 stipulates that appropriations from available revenues are made available for expenditure by act of the Council." H.R. Rep. No. 93-482, 93d Cong., 1st Sess. 28 (1973), *reprinted in* HOME RULE HISTORY 1408; see H.R. 9652 § 446, HOME RULE HISTORY 1281. Although the referenced provision of the Senate bill remained intact in after passage by the Senate, that in the House bill did not. The House Amendments, changed § 446 to provide for appropriation of the District's budget by Congress. HOME RULE HISTORY 3339. The House also added the limitation in § 603(a) in its present form. *Id*. at 3261. The Conference Report explains what happened:

> The Senate bill provided that the Mayor submit a budget to the Council in such form as he might determine, that the Council might adopt a line-item budget, and that the Mayor might transfer funds from one account to another with Council approval.
>
> The House Amendment required the Mayor to prepare a balanced budget for submission to the Council and to the Congress, to consist of 7 specified documents; and that the Council after public hearings, approve a balanced budget and submit same to the President for transmission to the Congress, *leaving Congressional appropriations and reprogramming procedures as presently existing.*
>
> The Conference substitute (sections 442-451, 603, 723, 743) adopts essentially the House provisions, *preserving the Congressional appropriations provisions of existing law*. Amendments are included to clarify procedural requirements as to the submission of the budget to the Council by the Mayor; the time for the

> Council to review the budget; the authority of the Mayor for line-item veto of budget proposals, with two-thirds of the Council required to override; and transmittal of the budget to the President for review and submission to the Congress.

H.R. REP. NO. 93-703, 93d Cong., 1st Sess. 78 (1973) (emphasis added), *reprinted in* HOME RULE HISTORY at 3016 (emphasis added).

The legislative history of the Home Rule Act shows that § 603(a) was intended as a substantive limitation on the Council's authority, to preserve the federal role.

This language makes it plain that § 603(a) was not merely a "rule of construction," but was intended to have the substantive effect of *preserving* existing laws and procedures relating to Congress's appropriation of the District's budget. The Council ignores the legislative history. There is not a word in the legislative history to suggest that Congress thought that the Council could sometime in the future change this critical arrangement.

Representative Diggs, the Chairman of the House District of Columbia Committee at the time, was the author of the so-called "Diggs Compromise," the substitute bill he submitted to the House on October 10, 1973. *See* Newman & DePuy at nn.112, 514. As this lengthy and definitive article notes, the original bills in both houses would have essentially delegated full fiscal authority to the District, "relatively free from congressional oversight." *Id*. at 591. However, due to strong opposition in the House, those budget provisions were "abandoned," Rep. Diggs offered his substitute, and the bill that eventually became the Home Rule Act "retained the provisions making the District dependent on Congress in budgetary matters. The District is prohibited from obligating and expending revenues unless such action has been approved by a prior act of Congress, and all revenues are to be spent in the manner specified by

these congressional acts." *Id.* at 592–93 (citing HRA, § 446).[20]

The legislative history unequivocally indicates that without retained congressional control over the District's budget, home rule would *not* have passed:

> [T]he relationship, if this legislation is passed, will be the same relationship that Congress now has with the District of Columbia budget, that no money can be spent by the District of Columbia.
>
> [T]his was the major compromise over the weekend, so that we have no change at all on budgetary control when we are discussing who will run the budget of the District of Columbia. I cannot say I am overjoyed by this compromise . . . . But it was the wisdom of various sessions we had over the weekend that it would be best that we not change this and that the appropriations process be exactly the same appropriations process that we have now.

HOME RULE HISTORY at 2187 (Cong. Rec. Oct. 9, 1973) (Remarks of Rep. Rees).[21]

**B.    The Council notably provides no legislative history supporting its view that Congress understood that it had allowed the District through Home Rule Act mechanisms to assume budget autonomy, and indeed no one understood as much for four decades after the Act's passage.**

The bill that became the Home Rule Act was the result of a compromise in which full budget autonomy was considered but not awarded. And yet the Council argues that Congress actually meant to allow the District to assume full budget autonomy unilaterally, *without any*

---

[20]    Newman & DePuy remains available online (*http://aulawreview.org/pdfs/24/24-3/newman.pdf*) (as of April 25, 2014). This mammoth article, written just after the HRA by persons intimately involved in its negotiation and passage, contains no hint of the arguments and theories now espoused by the Council as to the workings of the Home Rule Act or the intentions of Congress.

[21]    The members of the House Committee, including D.C. Delegate Walter E. Fauntroy, also submitted a "Dear Colleagues" letter to mollify the legislation's opponents, to explain the substituted bill's "important changes" and "clarify the intent of H.R. 9682 and accommodate major reservations since the bill was reported out." HOME RULE HISTORY at 2084. The *first* item listed is "Budgetary process. Return to the Existing Line Item Congressional Appropriation Role." *Id.* A copy of this letter is attached as DEx. 3. These facts confirm that allowing the District full budget autonomy was a major obstacle to home rule, and that only the retention, by Congress, of full appropriations control over the District's expenditures would allow home rule to become a reality. *See also* HOME RULE HISTORY at 3577 ("Vice presidential designate Gerald R. Ford says congressional control of the D.C. budget should stay in a House-passed home rule bill and not be subject to negotiation in a House-Senate conference. 'In my view, their particular provision of the bill is non-negotiable in the House-Senate conference,' said Ford in a statement issued yesterday.") (*reprint of* Jack Kneece, *Ford Insists D.C. Budget Remain Under Hill Control*, [Wilmington, N.C.] STAR-NEWS (Oct. 16, 1973)).

*mention of that in the legislative history* (setting aside for the moment the contrary legislative history). That result is, at best, extremely implausible.

Congress surely would have drafted the Home Rule Act differently had it intended to allow the District to assume full budget autonomy unilaterally. Indeed, if that were the goal, Congress would have granted that autonomy forthrightly, rather than through the intricate and opaque manner that the Council suggests. It would make little sense to draft Section 603 as it currently reads, or make the District go through the demanding Charter-amending process, knowing that the District fervently wanted full budget autonomy and would take it at the first instance if it thought it could.[22]

At the time of the consideration and passage of the Home Rule Act, no one seemed to think Congress had granted the authority the Council now perceives. This fact, too, is telling and, along with the more than 40 years of annual appropriations by Congress for the District's budget, is dispositive here.

> Indeed, "[t]his Court has repeatedly laid down the principle that a contemporaneous legislative exposition of the Constitution when the founders of our Government and framers of our Constitution were actively participating in public affairs, acquiesced in for a long term of years, fixes the construction to be given [the Constitution's] provisions." Congress' unbroken practice since the founding generation thus overwhelms petitioners' argument . . . .

*Eldred v. Ashcroft*, 537 U.S. 186, 213–14 (2003) (alteration in original) (quoting *Myers v. United States*, 272 U.S. 52, 175 (1926)).

Nor did anyone think Congress had granted that authority for decades; indeed, Congress in instituting the Control Board would surely have been surprised to learn that the District at that

---

[22]     Alternatively, if Congress *had* wanted existing budget processes to stay in place only for some period of time, it could have put in a moratorium—as it did in Section 602(a)(9) of the Home Rule Act, which *temporarily but for a definite period* prevented the Council from amending parts of the D.C. Code related to criminal law.

time could remove itself from the Home Rule Act budgetary process by legislative fiat.

## VI.    The Court Should Give Special Weight To The View Of The General Accounting Office.

The GAO, the federal agency led by the Comptroller General, has concluded that the Act is invalid. *See supra*, p. 6. Because the GAO has expertise in the area of government appropriations, the Court should view the GAO's decision as an "expert opinion" to be "prudently considered." *Scheduled Airlines Traffic Offices, Inc. v. Dep't of Defense*, 87 F.3d 1356, 1361 (D.C. Cir. 1996) (quoting *Delta Data Sys. Corp. v. Webster*, 744 F.2d 197, 201 (D.C. Cir. 1984)).

The GAO, an independent government agency, is tasked with "investigat[ing] all matters related to the receipt, disbursement, and use of public money" and "mak[ing] an investigation and report ordered by either House of Congress or a committee of Congress having jurisdiction over revenue, appropriations, or expenditures." 31 U.S.C. § 712(1), (4). Furthermore, the GAO is specifically required each year to "audit the accounts and operations of the District of Columbia government," and to "submit each audit report to Congress and (other than the audit reports of the District of Columbia Courts) the Mayor and the Council of the District of Columbia." 31 U.S.C. § 715(a)–(b). The GAO's audit report must contain "the scope of an audit, information the Comptroller General considers necessary to keep Congress, the Mayor and the Council informed of operations audited, and recommendations the Comptroller General considers advisable." *Id.* at § 715(b). In addition, the GAO is tasked with compiling all violations of the federal Anti-Deficiency Act. *See* 31 U.S.C. § 1351.

On January 30, 2014, pursuant to its statutory responsibilities, and in response to a request from the House of Representatives Subcommittee on Financial Serves and General Government, the GAO issued an opinion that the BAA is invalid because the "portions of the

[Act] that purport to the change the federal government's role in the District's budget process are without legal force or effect" since they violate the Home Rule Act by attempting to amend the federal Anti-Deficiency Act and the Budget and Accounting Act. *See* GAO OPINION at 8–9. ("[P]ortions of the [Act] stand in direct conflict with the Antideficiency Act and with the Budget and Accounting Act and, therefore, are not permissible under the Home Rule Act[.]").

In its extensive opinion, the GAO discussed the legislative history of the Home Rule Act, and noted that while that legislation was under consideration, Congress *rejected* a Senate proposal to grant the District budget autonomy, which—just like the instant Act—would have granted the Council authority to make funds available for obligation and expenditure on its action alone. *See id.* at 7 (quoting S. 1435, 93rd Cong., § 504 (1973); S. Rep. No. 93-219, at 8 (1973) (the "adoption of any budget by act of the Council shall operate to appropriate and to make available for expenditure, for the purposes therein named, the several amounts stated therein as proposed expenditures."). "The conferees adopted the House provisions, 'preserving the Congressional appropriations provisions of existing law' and using language that Congress ultimately enacted in the Home Rule Act." *Id.* (quoting H.R. Rep. No. 93-703, at 78 (1973)).

The GAO opinion further noted that, under the Home Rule Act, Congress withheld from the District the unilateral authority to make funds available for obligation and expenditure, instead continuing to reserve this authority exclusively for Congress. *Id.*[23] This conclusion directly conflicts with the Council's novel argument regarding the "permanent" appropriation made by Congress to the District in creating the General Fund in 1973 in § 450 of the HRA. If Congress had intended the creation of the General Fund to imply all that the Council *now* argues,

---

[23]     As the District demonstrates *supra*, this fact accords with the extensive legislative history that retention of congressional control was critical to the negotiations that allowed the passage of the Home Rule Act.

it would not have rejected the Senate proposal then advanced, or would have made *some* mention

of the extraordinary scheme the Council now professes to have been dormant in the HRA all

along.

> "In a case where the construction of legislative language such as this makes so
> sweeping and so relatively unorthodox a change as that made here, I think judges
> as well as detectives may take into consideration the fact that a watchdog did not
> bark in the night." *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 602 [(1980)
> (Rehnquist, C.J., dissenting)]. The Court has endorsed the view that Congress'
> silence on questions such as this one "can be likened to the dog that did not bark."
> *Chisom v. Roemer*, 501 U.S. 380, 396, n. 23 (1991) (citing A. Doyle, Silver Blaze,
> in *The Complete Sherlock Holmes* 335 (1927)).

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 132 (2005) (Stevens, J., concurring)

(parallel citations omitted). The Court should not ignore Congress's complete silence on this

issue.[24]

Regarding Section 603(a) of the Home Rule Act, the GAO concluded it could "think of

---

[24]    The GAO opinion references Section 450 expressly, and conclusively refutes the idea that
Congress (in that provision or more recently) has *ever* granted the District a permanent appropriation:

> By law, the making of an appropriation must be expressly stated. 31 U.S.C. §1301(d). An
> appropriation cannot be inferred or made by implication. 50 Comp. Gen. 863 (1971). The
> Chairman asserts that the District Charter established a permanent appropriation because
> it provided that District monies "belong to the District government." Council Letter,
> Attachment A, at 9; D.C. Code §1–204.50. However, this language is not the express
> statement of appropriation that is necessary under 31 U.S.C. §1301(d).

> [W]e have concluded that only statutes that authorize both the deposit and the
> expenditure of a class of receipts make those funds available for the specified purpose
> without further congressional action. *See, e.g.*, B–228777, B–197118. In this case, though
> the Home Rule Act requires the deposit of funds, it does not authorize their expenditure
> and, therefore, manifests no congressional intent to make these amounts available for
> obligation or expenditure without further congressional action. Indeed, section 446 of the
> Home Rule Act expressly provided that "no amount may be obligated or expended by
> any officer or employee of the District of Columbia Government unless such amount has
> been approved by Act of Congress, and then only according to such Act." D.C. Code §1–
> 204.46. *Congress could not have intended to provide a permanent appropriation to the
> District in the Home Rule Act where, in the very same act, it provided that funds would
> be available only with the approval of an act of Congress.*

GAO OPINION at 7 (emphasis added).

no more specific manner for Congress to specify in the Home Rule Act that Congress would retain a firm hand in the District's budget process." GAO OPINION at 8 ("The [Act] arrogates to the Council of the District of Columbia authority over portions of the District's budget process that Congress, in the Home Rule Act, clearly specified would remain firmly within congressional control.").

The Council argues that the Court "has 'no obligation to defer' to the views of the GAO[.]" P.Mem. at 9. Plaintiff is incorrect. "Although GAO decisions are not binding, [courts] 'give special weight to [GAO's] opinions' due to its 'accumulated experience and expertise in the field of government appropriations.'" *Nevada v. Dep't of Energy*, 400 F.3d at 16 (quoting *United Auto., Aerospace & Agric. Implement Workers v. Donovan*, 746 F.2d 855, 861 (D.C. Cir. 1984)). In giving such "special weight" to a GAO opinion, a court should "regard the assessment of the GAO as an expert opinion, which [the court] should prudently consider[.]" *Scheduled Airlines Traffic Offices,* 87 F.3d at 1361 (quoting *Delta Data*, 744 F.2d at 201).

The GAO, pursuant to its statutory mandate and based on its experience and expertise in the area of government appropriations, issued a formal opinion that the BAA is void because it contravenes the Home Rule Act and federal law. The Court should treat the GAO opinion as an "expert opinion," and accord it "special weight" in the Court's analysis of the legality of the BAA. And as discussed below, the GAO confirmed that it is irrelevant, in determining the legality of the BAA, that Congress did not enact a joint resolution disapproving it.

## VII.    The Budget Autonomy Act Violates Separation of Powers.

Finally, the Act is invalid because it violates the doctrine of separation of powers. The Supreme Court has made clear that a legislative body "may not 'invest itself or its members with either executive power or judicial power.'" *Metropolitan Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 274 (1991) (quoting *J.W. Hampton, Jr.,*

& Co. v. United States, 276 U.S. 394, 406 (1928)). Under the Home Rule Act, the Mayor and

CFO are tasked with the financial administration of the District, including the submission of the

District's budget to the President each year. By purporting to "invest" the Council with the

power to submit a portion of the District's budget directly to the federal government, an

indisputably executive function per the HRA, the BAA impermissibly infringes on Executive

Branch powers. "In determining whether [a statute] 'disrupts the proper balance between the

coordinate branches, the proper inquiry focuses on the extent to which [a statute] prevents the

Executive Branch from accomplishing its constitutionally assigned functions." *Freedom Watch,*

*Inc. v. Obama*, 807 F.Supp.2d 28, 36 (D.D.C. 2011) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433

U.S. 425, 443 (1977)).

Here, the Act impermissibly intrudes on the role of the Executive by arrogating to the

Council a role assigned by Congress (in the Charter, the District's "Constitution") to the Mayor.

"[I]n the District Charter, Congress chose to create, as a general proposition, the familiar

tripartite structure of government for the District." *Wilson v. Kelly*, 615 A.2d 229, 231 (D.C.

1992). To that end, Congress structured the Charter so that legislative power was vested in the

Council, *see* D.C. Official Code § 1-204.04(a), and executive power was vested in the Mayor.

*See* D.C. Official Code § 1-204.22.[25] Specifically, the Charter vested in the Mayor broad powers

relating to the District's financial administration, stating that the Mayor "shall have charge of the

administration of the financial affairs of the District." D.C. Official Code § 1-204.48. The

---

[25]     Since "Congress' power over the District of Columbia encompasses the *full* authority of
government, and thus, necessarily, the Executive and Judicial powers as well as the Legislative,"
*Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 75–76 (1982) (emphasis in
original), Congress is not bound by the separation of powers doctrine when it legislates for the District.
However, because Congress chose to create the "familiar tripartite structure" for the District government,
*Wilson*, 615 A.2d at 231, Congress intended that the separation of powers doctrine apply to *intra*-District
governmental powers – as the Council itself agrees. *See* D.C. Official Code § 1-301.44(b) ("The Council
recognizes the principle of separation of powers in the structure of the District of Columbia
government").

Charter also empowers the CFO with the responsibility for all of the financial and budgetary functions of the District of Columbia government. *See* D.C. Official Code § 1-204.24d ("Duties of the Chief Financial Officer."). The CFO's duties include the preparation of "the budget for submission by the Mayor to the Council and to the public and upon final adoption to Congress and to the public." *Id.*, 1-204.24d(26).

In furtherance of those executive powers, Section 446 of the Home Rule Act sets forth the Mayor's duties in drafting and submitting the District's yearly budget to the federal government for approval. D.C. Official Code § 1-204.46. Under Section 446, the Mayor is required to submit a budget proposal to the Council, the Council is required to adopt a final budget within 56 days, and the Mayor is tasked with submitting the *total* budget to the President (for ultimate enactment by Congress). *Id.* The BAA, however, would subvert that role, allowing the Council (via its Chairman) to submit the "local" and supplemental portions of the District budget directly to the Speaker of the House of Representatives for passive review, bypassing the Mayor, the CFO, and the President. *See* D.C. Law No. 19-321, § 2(e).

The Act plainly violates the doctrine of separation of powers because it prohibits the Mayor, with the assistance of the CFO, from timely fulfilling his congressionally-mandated executive duties under the Home Rule Act. Under the BAA, the Mayor would be unable to submit the District's *total* budget to the President, because the Council has attempted to seize the authority to submit the local and supplemental portions of the District's budget directly to Congress. Thus, the BAA also deprives the Mayor "of [a] specific statutory right to participate in the [budgetary] process." *Chenoweth v. Clinton*, 997 F.Supp. 36, 40 (D.D.C. 1998) (quoting *AFGE v. Pierce*, 697 F.2d 303, 305 (D.C. Cir. 1982)).

The Council, through the Act, has overstepped its authority. *See, e.g., District of Columbia v. Group Ins. Admin.*, 633 A.2d 2, 15 (D.C. 1993) (Council does not have authority to withdraw power given by Congress to local courts); *Wilson*, 615 A.2d at 232 (Council may not expand its resolution power to review individual contracts approved by the Mayor).[26] *See also McInnish v. Riley*, 925 So.2d 174, 188 (Ala. 2005) (*en banc*) (legislation purporting to authorize legislative committee authority to disburse appropriations was invalid pursuant to separation of powers, for usurping executive function). Its attempt to hijack executive powers for itself not only violates the doctrine of separation of powers, but could result in serious consequences for the District as a whole. Should the District fail to enact a valid budget and submit it to Congress, it is likely that the District will not be able to avail itself of the protection afforded by Section 816 of the Consolidated Appropriations Act, effective Jan. 17, 2014, Pub. L. 113-76, *see infra* at 42.[27] This significant concession to the District's unique position would be in serious jeopardy if the Act is allowed to stand and, indeed, the District would have no legal basis or authority to keep the District functioning if the federal government shuts down again.[28]

---

[26]     In *Cropp v. Williams*, the Council sued the Mayor after he refused to enforce legislation purporting to change the qualifications for the Inspector General (making the incumbent ineligible). 841 A.2d 328, 329 (D.C. 2004) (*per curiam*). The trial court granted summary judgment to the Mayor, agreeing with him that the legislation violated separation-of-powers, but on appeal the D.C. Court of Appeals determined that the incumbent's resignation had rendered the matter moot, and vacated the trial court's decision. *Id.* at 330–31.

[27]     That provision was enacted after the last federal budget standoff and shutdown, and allows the District to spend funds through September 2014 in the event of another shutdown, *i.e.*, during a period in which no federal continuing resolution or appropriations act for the District is in effect. *See* Mike DeBonis & Aaron C. Davis, *D.C. wins year-long spending authority in deal ending federal shutdown*, WASH. POST, Oct. 17, 2013 (available online at *http://www.washingtonpost.com/local/dc-politics/dc-is-poised-to-win-yearlong-spending-authority-in-capitol-hill-shutdown-deal/2013/10/16/5ddbde2e-369e-11e3-80c6-7e6dd8d22d8f_story.html*) (as of Apr. 10, 2014).

[28]     Because the BAA prevents the Mayor from submitting the District's total budget to the President, it is not inconceivable that the District could be forced back under the authority of a federal control board. Under D.C. Official Code § 47-392.09, control of District financial operations *automatically* reverts to the control board should the District (i) default on any loans, bonds, notes, or other obligations, (ii) fail to meet payroll for any pay period, (iii) fail to meet pension or benefits payments for current or former

The Court should find that the BAA violates the doctrine of separation of powers.

## VIII.   Congress's Lack of Action Is of No Significance.

An illegally-enacted law that is void *ab initio* cannot change the legal status quo. *See, e.g., Riley v. Kennedy*, 553 U.S. 406, 425–26 (2008). Since the Council enacted the BAA in clear violation of the District's Charter, Congress's action (or inaction) is of no significance.

As the Supreme Court has stated, a law that is "properly regarded as null and void *ab initio* [is] incapable of effecting any change in [existing law]." *Id.* This conclusion applies with full force to laws passed by the Council in violation of the Home Rule Act. In *McConnell*, the District of Columbia Court of Appeals was faced with a challenge to the District's Uniform Controlled Substances Act ("UCSA"). 537 A.2d 211 (D.C. 1988). The UCSA allowed a convicted drug user to be committed for treatment in lieu of incarceration, but only if the addict had no previous drug-related convictions. *Id.* at 213. The defendant challenged this portion of the UCSA, claiming that it violated federal law, which allowed for treatment so long as the addict did not have more than *one* prior drug-related conviction. *Id.* The court noted that the Council, in passing the UCSA, was limited by Section 602(a)(3) of the Home Rule Act and thus could not "amend or repeal any Act of Congress . . . which is not restricted in its application exclusively to the District." *Id.* at 214–215 (citations omitted). Because the federal law applied nationwide, the court stated that the Council was without "authority to repeal or amend the federal statute at issue." *Id.* at 215. It thus followed, the court held, "that the amendments to UCSA at issue here *could not—and did not*—work an effective repeal of any of the provisions of [federal law],

employees, or (iv) fail to make payments required under an interstate compact. The federal control board would supersede the Mayor, the CFO, and the Council in matters relating to the District's financial operations. Without a budget that is adopted by the Council and submitted by the Mayor to the President, it is doubtful whether the District would be able to legally meet its financial obligations. Thus, the BAA could very well result in the Mayor losing authority over District financial operations, and the District as a whole losing a substantial portion of its right to self-governance.

including those in conflict with the amended UCSA." *Id.* (emphasis added).

*McConnell* is remarkably analogous to this case. Just like the challenged portions of the UCSA, the BAA purports to amend statutes—the Home Rule Act, the federal Anti-Deficiency Act, and the federal Budget and Accounting Act—that are not "restricted in [their] application exclusively to the District." D.C. Official Code § 1-206.02(a)(3). Because the Council is without authority to enact laws in violation of the District's Charter (including Section 602(a)(3)), it necessarily follows that the portions of BAA that violate the Home Rule Act "could not" and "did not" effect any change on the District Charter, the federal Anti-Deficiency Act, or the federal Budget and Accounting Act. *McConnell*, 537 A.2d at 215. In other words, because the BAA amendments were inherently void, they did not effect "any change in [District or federal law,]" *Riley*, 553 U.S. at 425–26, hence no action by Congress was necessary. The GAO, recognizing these firm legal principles, thus concluded that that Congress's lack of action disapproving the BAA, per section 303(a) of the Home Rule Act, is "of no legal significance[.]" GAO OPINION at 11.

Although Congress did not pass a joint resolution affirmatively disapproving the BAA, the lack of congressional action does not mean that Congress approved of the BAA, or agreed that it was valid. The lack of congressional action more likely means simply that Congress found it unnecessary to take action on the Act because its enactment was so obviously beyond the scope of the Council's and the voters' authority. *See* n.6, *supra*.

Congress's actions since the enactment of the BAA make clear that it views its fiscal relationship with the District as unchanged.[29] On January 15, 2014, Congress enacted the Consolidated Appropriations Act, 2014, Pub. L. 113-73, including Section 816, a provision that

---

[29]     *See also* n.10, *supra*.

authorizes the District to use local funds, as stated in the District's FY 2015 Budget Request Act, in the event of a federal government shutdown during fiscal year 2015. In doing so, Congress expressed its will that both Section 446 of the Home Rule Act and the federal Anti-Deficiency Act shall continue to apply to local funds and require congressional appropriations. This conclusion is inescapable since, if Congress viewed the BAA as having any legal effect, Section 816 would be a redundancy—there would be no need for the District to be granted additional authority. This legislation leaves no doubt that Congress views the Act as having no legal force or effect.

## IX.   Conclusion

As demonstrated herein, the Budget Autonomy Act violates the Home Rule Act, federal law, and the doctrine of separation of powers.

Both the Mayor and the CFO ardently support budget autonomy for the District and agree with the Council that from a policy perspective it is appropriate. But they believe that such power can lawfully come only from Congress.

The Mayor and the CFO are entitled to summary judgment, a declaration that the Budget Autonomy Act is invalid, and an injunction against its enforcement.


DATE: April 30, 2014                    Respectfully submitted,

                                        IRVIN B. NATHAN
                                        Attorney General for the District of Columbia

                                        ELLEN A. EFROS
                                        Deputy Attorney General
                                        Public Interest Division

                                                /s/ Andrew J. Saindon
                                        ANDREW J. SAINDON, D.C. Bar No. 456987
                                        Senior Assistant Attorney General
                                        Equity Section

441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov

_____/s/ Nicholas A. Bush_____
NICHOLAS A. BUSH (D.C. Bar No. 1011001)
Assistant Attorney General
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643/(202) 442-9841
Facsimile: (202) 730-1470/(202) 715-7720
E-mail: nicholas.bush@dc.gov

Seth P. Waxman, D.C. Bar No. 257337
Daniel Volchok, D.C. Bar No. 497341
WilmerHale
1875 Pennsylvania Avenue, NW
Washington, DC 20006
202 663 6800
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com

*Of Counsel to the Honorable Vincent C. Gray, Mayor of the District of Columbia*

Lawrence S. Robbins, D.C. Bar No. 420260
Eric A. White, D.C. Bar No. 1011080
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP
1801 K Street NW
Suite 411 L
Washington DC 20006
202-775-4501
lrobbins@robbinsrussell.com
ewhite@robbinsrussell.com

*Of Counsel to Jeffrey S. DeWitt, Chief Financial Officer of the District of Columbia*

- 44 -