**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| COUNCIL OF THE DISTRICT OF COLUMBIA,<br><br>       Plaintiff,<br><br>  v.<br><br>VINCENT C. GRAY, in his official capacity as Mayor of the District of Columbia,<br><br>    and<br><br>JEFFREY S. DeWITT, in his official capacity as Chief Financial Officer for the District of Columbia,<br><br>       Defendants. | No. 1:14-cv-00655-EGS |

**BRIEF *AMICI CURIAE* OF DR. ALICE M. RIVLIN, THE HONORABLE THOMAS M. DAVIS, AND THE HONORABLE ANTHONY A. WILLIAMS IN SUPPORT OF NEITHER PARTY**

 

Richard P. Bress (DC Bar No. 457504)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

*Attorney for Amici Alice M. Rivlin, Thomas M. Davis, and Anthony A. Williams*

May 2, 2014

**TABLE OF CONTENTS**

Page

INTEREST OF *AMICI CURIAE* ............................................................................................1

ARGUMENT ..................................................................................................................................3

    A.    There Is No Policy Reason To Deny The District Of Columbia Budget Autonomy ..............................................................................................................4

    B.    The Budget Autonomy Act Enjoys Broad Bipartisan Support ...............................8

CONCLUSION ...............................................................................................................................10

**INTEREST OF *AMICI CURIAE***

This case addresses a question of vital importance to the District of Columbia and its residents: whether the Local Budget Autonomy Act of 2012, passed unanimously by the City Council and approved in a referendum by an overwhelming majority of voters, is valid legislation permitting the District to spend the local tax and fee revenue it raises without seeking affirmative approval from Congress. *Amici curiae* are three prominent individuals who have spent the majority of their career in government service. Although they are not addressing the legal issues involved in this case, they are uniquely qualified to speak to the larger policy implications of budget autonomy for the District of Columbia.

*Amica* Dr. Alice M. Rivlin is a senior fellow in the Economic Studies Program at Brookings. Earlier in her career, Dr. Rivlin served as vice chair of the Federal Reserve Board and as director of the White House Office of Management and Budget in the first Clinton administration. She also chaired the District of Columbia Financial Management Assistance Authority and was the founding director of the Congressional Budget Office. In February 2010, President Obama named Dr. Rivlin to the Commission on Fiscal Responsibility and Reform. She co-chaired, with former Senator Pete Domenici, the Bipartisan Policy Center's Task Force on Debt Reduction. Dr. Rivlin is an expert on fiscal and monetary policy. The Council for Excellence in Government named Dr. Rivlin one of the greatest public servants of the last 25 years, and the National Academy of Social Insurance awarded her the 2013 Robert M. Ball Award for Outstanding Achievements in Social Insurance.

*Amicus* Thomas M. Davis serves as the Director of Federal Government Affairs for Deloitte & Touche LLP. Prior to joining Deloitte, Mr. Davis served seven terms in Congress representing Virginia's 11th congressional district as a Republican. During his tenure in the House, he served as Chairman of the House Government Reform and Oversight Committee,

1

charged with oversight of the District of Columbia, as well as the Chair of the subcommittee on Technology and Procurement Policy. Under his leadership, the House Government Reform and Oversight Committee investigated matters related to the effective administration of government programs of vital public interest, including government contracting in support of the war in Iraq, the Agriculture Department's handling of the discovery of Mad Cow Disease in the United States, the flu vaccine shortage, the role of the National Guard in national security and homeland defense, and management of the Department of Homeland Security. Mr. Davis was also the Chief Sponsor of the D.C. Financial Resources Management and Assistance Authority (or, as it is widely known, the Control Board).

*Amicus* Anthony A. Williams served as the fifth mayor of Washington, DC, from 1999 to 2007 as a Democrat. During his two terms, Mayor Williams was widely credited with leading the District's financial comeback and improving the performance of its government agencies, all while lowering taxes and investing in infrastructure and human services. Prior to his election, he was the independent CFO of the District, working with and on behalf of local officials, the DC Financial Control Board, and the U.S. Congress. Mayor Williams also worked in a variety of positions in federal, state, and local government, including serving as the first CFO for the U.S. Department of Agriculture under President Bill Clinton.

*Amici*'s combined expertise in the fields of finance, economics, social policy, and local and federal governance makes them exceptionally well suited to speak to the importance of the Budget Autonomy Act of 2012 for the proper functioning of the District's institutions and the wellbeing of its residents. All three have previously testified before or written letters to both the Council and Congress in support of budget autonomy and the policy implications of the law challenged in this case. *Amici* submit this brief in support of neither party and do not opine on

the legal issues before the court. Rather, the brief addresses the policy and practical implications of this dispute.

## ARGUMENT

Budget autonomy has been an aspiration in the District of Columbia from the moment the District lost the privilege in 1874. The passage of the Home Rule Act of 1973 represented a significant step towards regaining budget autonomy. Although Congress retained ultimate control over D.C. legislation, budgeting, and borrowing, it created the General Fund and decreed that all fees and revenues raised by the District be deposited in the appropriate local fund instead of the U.S. Treasury. Congress took another substantial step towards budget autonomy in 1995, when it created the Office of the Chief Financial Officer. Having a CFO allowed the local government gradually to strengthen its financial health and operational efficiency. Since the establishment of the CFO office, the District's budget outlook has transformed from dismal to outstanding.

The District's track record of financial stability, coupled with the democratic importance and practical policy benefits of budget autonomy, led *Amici*, along with numerous other individuals and organizations, to support the passage of the Budget Autonomy Act of 2012. Indeed, the Act was not only passed unanimously by the DC Council, and ratified by 83% of the voters, but also successfully completed the 35-day congressional review required by the Home Rule Act. It is not surprising that the new Act was permitted by Congress to become law given that local budget autonomy for the District enjoys substantial bipartisan support on the Hill. The fundamental policy behind the Budget Autonomy Act and the widespread support for the change it brought about counsel that this Court should mandate the law's enforcement absent a compelling showing that it is legally invalid.

### A.     There Is No Policy Reason To Deny The District Of Columbia Budget Autonomy

The lack of local budget autonomy for the District of Columbia is profoundly unfair and anti-democratic. Although nearly 98% of the District's funds are locally raised or come in the form of federal dollars available to all jurisdictions,[1] in contrast to the fifty states and Puerto Rico, the District's entire budget is subject to affirmative congressional approval—and will remain so unless the Budget Autonomy Act takes effect. As the Council's Committee of the Whole Report concluded, "[n]ot only is this process unique to the District, it highlights the separate and unequal treatment of the District."[2] Unlike the states and Puerto Rico, who are free to manage their own finances as they see fit, the District must have its own locally financed budget approved by an affirmative act of Congress—a federal body, in which it has no voting representation.

Denying the District budget autonomy is also anachronistic. When Congress passed the Home Rule Act in 1973, congressional skepticism towards budget autonomy for the District was perhaps understandable.[3] The federal government had treated the District's citizens like colonial subjects for almost a century, leaving the local population with little experience in electoral politics or self-governance.[4] The District's fiscal inexperience manifested as late as 1995, when

---

[1] Council of the District of Columbia Committee of the Whole, Report on Bill 19-993 (Dec. 4, 2012) ("Committee of the Whole Report"), attached testimony of Alice Rivlin at 1 ("Rivlin Testimony"), *available at* http://dcclims1.dccouncil.us/images/00001/20130418101959.pdf at 97.

[2] Committee of the Whole Report at 2.

[3] H.R. 960, and H.R. 1045, Greater Autonomy for the Nation's Capitol: Hearing Before the H. Subcomm. on Federal Workforce, Postal Service, and the District of Columbia, 111th Cong., at 67 (2009) ("Greater Autonomy Hearing") (testimony of Alice Rivlin).

[4] *Id.*

the city faced a deep fiscal crisis—prompting the creation of the Control Board and the Office of the CFO.[5]

Those days, however, are long since gone. Since 1996, the District of Columbia government has consistently demonstrated its ability responsibly to manage its own resources—turning a cumulative $550 million deficit into a remarkable $1.2 billion fund balance.[6] As Natwar Gandhi—former CFO of the District—has testified, "[t]here is no question that the District has the financial infrastructure to permit it to manage its local funds effectively."[7] "At a time when state and local governments throughout the country are having difficulties, the District has produced 17 consecutive balanced budgets and 16 consecutive clean year-end financial audits."[8] It has built up a large fund balance and significant cash reserves—and finished Fiscal Year 2012 with a $417 million budget surplus.[9] "Financial markets have recognized the District's laudable fiscal stewardship in the form of higher bond ratings and lower interest rates on borrowing."[10]

Congress has implicitly recognized this progress. It has hardly made any changes in the local funds section of the District's budget in recent years. There is nothing of substance left to

---

[5] *Id.*

[6] The District of Columbia's Fiscal Year 2010 Budget: Ensuring Fiscal Sustainability, Hearing Before the H. Subcomm. on Health Care, District of Columbia, Census and the National Archives of the Committee on Oversight and Government Reform, 112th Cong., at 35 (2011) (statement of Natwar Gandhi).

[7] Committee of the Whole Report, attached Public Hearing on Bill 19-993, Local Budget Autonomy Act, at 4 (2012) ("Gandhi Testimony"), *available at* http://dcclims1.dccouncil.us/images/00001/20130418101959.pdf at 130.

[8] Letter from Mayor Anthony Williams and former Rep. Thomas Davis to Council Chairman Phil Mendelson on Law 19-321, The Local Budget Autonomy Amendment Act of 2012 (Sept. 24, 2013) ("Davis Letter").

[9] *Id.*

[10] Committee of the Whole Report at 3.

5

Congress's use of budget approval as an instrument of fiscal control.[11] What remains is a hollow vestigial process.[12]  Under the Budget Autonomy Act, moreover, Congress still must affirmatively approve the federally funded aspect of the District's budget, and it retains its ability more generally to exercise oversight of the District's entire budget and operations, in the form of periodic audits and after-the-fact review.[13]  And, of course, Congress at all times retains the authority to override the Budget Autonomy Act with affirmative legislation, should that ever prove necessary.  There is thus no policy reason today to deny the District its right to manage its own finances.

Although the right to develop and implement its own locally enacted budget is a fundamental aspect of self-governance, the push for budget autonomy is not simply about democracy and fairness.  As demonstrated by the testimony of *Amici* and numerous other advocates, budget autonomy is also a practical imperative that would significantly enhance the efficiency and proper function of the local government.

The need for congressional approval of D.C.'s budget distorts the budgeting process, costs local taxpayers millions of dollars every year, and creates a destructive uncertainty about the provision of basic services when partisan politics leaves the federal government's own financial decisions in disarray.[14]  The time elapsed between the submission of the District's budget and final congressional approval—often upwards of four months—inevitably means that assumptions made by the CFO, the Mayor, and the Council are out of date by the time the

---

[11] Rivlin Testimony at 2.

[12] *Id.*

[13] Gandhi Testimony at 5; Budget Autonomy for the District of Columbia: Restoring Trust in Our Nation's Capital: Hearing Before the H. Comm. on Government Reform, 108th Cong., at 4 (2003) ("Budget Autonomy Hearing") (statement of Thomas Davis).

[14] Rivlin Testimony at 2.

6

District's budget takes effect.[15]  That in turn necessitates hasty revisions, invites crucial errors, and endorses guesswork.  It also complicates hiring and procurement, and requires the District to borrow additional funds and pay more interest.[16]  Bond rating agencies take the uncertainties of the Federal process into account in assessing the District's finances, and discount to a degree whatever ratings the District might otherwise receive.[17]

Moreover, when Congress passes a continuing resolution, thus extending Federal appropriations at prior-year levels without permanently enacting the District's budget, local agencies must delay proposed cost-saving measures until Congress settles the matter.  Worse yet, where Congress altogether fails to act due to a partisan deadlock, the D.C. government is faced with an imminent shutdown of even basic services—a local calamity written off as mere collateral damage of the failure of national politics.  Just last year, in the October 2013 federal government shutdown, D.C. was caught in the crossfire of national political feuds.  The District managed to stay afloat and operational in essential areas only by tapping into its reserve funds already approved by Congress.  In response to this political and fiscal crisis, Mayor Gray confronted Congress and urged that D.C. should be able "'to spend [its] own money.'"[18]

If enforced, the Budget Autonomy Act would effectively address and resolve these practical concerns.  The Budget Autonomy Act would also enable the District to adjust its fiscal

---

[15] Committee of the Whole Report at 3.

[16] *Id.* at 4.

[17] Budget Autonomy Hearing at 32 (testimony of Natwar Gandhi).

[18] Mike DeBonis & Ed O'Keefe, Ed, *Vincent Gray confronts Reid on Capitol steps over shutdown's impact on District*, Wash. Post (Oct. 9, 2013), *available at* http://www.washingtonpost.com/local/dc-politics/dc-mayor-gray-confronts-reid-on-capitol-steps-over-shutdowns-impact-on-city/2013/10/09/02577428-3103-11e3-89ae-16e186e117d8_story.html (quoting Mayor Gray).

year to align with that of other local and state jurisdictions.[19] A July-June fiscal year would better align the District's revenue cycle with income taxes in due in April and property taxes collected in March and September.[20] This in turn would permit the District to execute its fiscal year budget based on the most recently available and thus most accurate revenue information.[21] It would also closely mirror the school year, and thus allow the District's educational institutions—D.C. Public Schools, the University of the District of Columbia, and the District's charter schools—to manage funds more effectively.[22]

And providing the District with the authority to direct the spending of its locally raised revenue would substantially increase the District's ability to react to changing program and financial conditions during a fiscal year without having to follow a lengthy and sluggish approval procedure for every minor adjustment to the budget.[23]

### B. The Budget Autonomy Act Enjoys Broad Bipartisan Support

Because the District has amply demonstrated its fiscal responsibility, and because the District's need annually to come hat in hand for approval to expend its own locally raised funds creates harmful inefficiencies and violates universal values of self-determination, the principle of budget autonomy has long enjoyed widespread bipartisan support.[24] As demonstrated by the Nov. 9, 2012 Hearing of the Committee of the Whole, "the concept of budget autonomy is widely supported across party and institutional lines."[25] In his testimony at that hearing, *Amicus*

---

[19] Committee of the Whole Report at 4.

[20] Budget Autonomy Hearing at 32-33 (testimony of Natwar Gandhi).

[21] Budget Autonomy Hearing at 33.

[22] *Id.*

[23] *Id.*

[24] *See, e.g.*, Committee of the Whole Report at 4-5.

[25] *Id.* at 4.

Tom Davis testified that Republicans in the House of Representatives with oversight over the District of Columbia—including Rep. Jo Ann Emerson, Rep. Darrell Issa, and Rep. Eric Cantor—favor budget autonomy.[26] The Budget Autonomy Act, which completed congressional review and became law in July 2013, thus did not represent a "poke in the eye of Congress"—nor was it perceived as such on the Hill.[27] Indeed, there has not been a single proposal in Congress to overturn the Act.

But Congress has proved unable to address the issue. Over the years, both the House and the Senate have considered many different iterations of local budget autonomy.[28] The District of Columbia's non-voting representative in the House of Representatives, Delegate Eleanor Holmes Norton (D-DC), has introduced legislation that would afford the District sweeping autonomy through congressionally initiated changes to the Home Rule Act.[29] Senators Joe Lieberman (ID-CT) and Susan Collins (R-ME) also introduced legislation that would remove the need for affirmative Congressional approval, replacing it with passive approval.[30] Congress's failure to enact these proposals has never been about any articulated or sustained opposition. Budget autonomy has been yet another casualty of the current partisan gridlock.[31]

It was in light of this political climate—and fearing that its finances could yet again be held hostage as a result—that the District sought an alternative route to budget autonomy. Following the process established by Congress, the District enacted the Budget Autonomy Act of

---

[26] *Id.*

[27] Davis Letter at 2.

[28] Committee of the Whole Report at 4.

[29] *Id.*; *see also* District of Columbia Budget Autonomy Act of 2011, H.R. 345, 112th Cong. (2011).

[30] Committee of the Whole Report at 4; *see also* District of Columbia Local Budget Autonomy Act of 2012, S. 2345, 112th Cong. (2012).

[31] Davis Letter at 2.

2012, with widespread support. The Act was (1) backed by numerous civic leaders and advocacy groups, (2) unanimously adopted by the Council, (3) signed by the Mayor, (4) certified by the Board of Elections, (5) overwhelmingly ratified by 83% of the voters, and (6) effectively upheld by the Congress through its 35-day review process. It represents the culmination of years of legislative work on both the local and federal level and embodies the will of the people.

## CONCLUSION

The benefits of budget autonomy for the District are numerous, real, and much needed. There is no drawback. *Amici* thus urge this Court to enforce the Budget Autonomy Act absent a compelling showing of legal invalidity.

Dated: May 2, 2014

Respectfully submitted,

  /s/ Richard P. Bress

Richard P. Bress (DC Bar No. 457504)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304
(202) 637-2200

*Attorney for Amici Alice M. Rivlin, Thomas M. David, and Anthony A. Williams*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May, 2014, I caused a copy of the foregoing Unopposed Motion for Leave to File a Brief *Amici Curiae* and attached Brief *Amici Curiae*, to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered counsel of record.

   /s/ Richard P. Bress