## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                 )

COUNCIL OF THE DISTRICT OF COLUMBIA, )
                                 )

              Plaintiff,          )

                                 )

        v.                    )     Case No. 1:14-cv-00655-EGS

                                 )

VINCENT C. GRAY, in his official capacity  )
as Mayor of the District of Columbia, et al.,  )

                                 )

           Defendants.     )
_____)

## MOTION OF THE BIPARTISAN LEGAL ADVISORY GROUP
## OF THE U.S. HOUSE OF REPRESENTATIVES FOR LEAVE TO FILE
## MEMORANDUM OF POINTS AND AUTHORITIES AS *AMICUS CURIAE*

The Bipartisan Legal Advisory Group of the U.S. House of Representatives ("House")

respectfully moves for leave to file the attached Memorandum of Points and Authorities as

*Amicus Curiae*.  The House believes this Memorandum will materially aid the Court in resolving

the issues presented in this action.

The Bipartisan Group – currently consisting of the Honorable John A. Boehner, Speaker;

the Honorable Eric Cantor, Majority Leader; the Honorable Kevin McCarthy, Majority Whip;

the Honorable Nancy Pelosi, Democratic Leader; and the Honorable Steny H. Hoyer,

Democratic Whip – "speak[s] for, and articulate[s] the institutional position of, the House in all

litigation matters in which it appears."  H. Res. 5, 113th Cong. § 4(a)(1)(B) (2013) (enacted),

*available at* http://www.gpo.gov/fdsys/pkg/BILLS-113hres5eh/pdf/BILLS-113hres5eh.pdf.  The

Group previously has appeared as *amicus* in numerous cases, both in this Court – *see, e.g., In re*

*Search of The Rayburn House Office Bldg. Room No. 2113*, 432 F. Supp. 2d 100, 105 (D.D.C.

2006), *rev'd sub nom.*, *United States v. Rayburn House Office Bldg.*, 497 F.3d 654 (2007); *Byrd v. Raines*, 956 F. Supp. 25, 27 (D.D.C. 1997); *United States v. Rose*, 790 F. Supp. 340, 340 (D.D.C. 1992); *United States v. Eichman*, 731 F. Supp. 1123, 1127 n.6 (D.D.C. 1990); *Webster v. Sun Co.*, 561 F. Supp. 1184, 1185 (D.D.C. 1983) – and in other courts around the country.[1] While the Group seeks consensus whenever possible, it, like the institution for which it speaks, functions on a majoritarian basis when consensus cannot be achieved.[2]

The House's institutional interest in this matter is set forth in the attached Memorandum. The House recognizes that it is seeking leave to file on the last day of the briefing schedule. However, given the accelerated nature of that briefing, the House was not in a position to consider the possibility of filing an *amicus* memorandum until after it had reviewed the parties' cross motions, the second of which was filed on April 30, 2014, in the evening.  *See* Minute Order (Apr. 22, 2014) (scheduling four rounds of briefing over two-week period, beginning April 25, 2014, and ending May 8, 2014); Defs.' Cross-Mot. for Summ. J. & Opp'n to Pl.'s Mot. for Summ. J. (Apr. 30, 2014) (ECF No. 14).  In the intervening week, the House has proceeded as rapidly as possible, both to prepare a memorandum that will assist the Court and to make a decision about whether to file.

On May 7, 2014, we conferred with D.C. Attorney General Irvin B. Nathan who advised that the defendants consent to the House's participation here as *amicus*, and with plaintiff's

---

[1]  *See e.g.*, Br. of *Amicus Curiae* the [House] in Supp. of Pet'r, *Renzi v. United States*, No. 11-557 (S. Ct. Dec. 2, 2011); Br. of the [House] as *Amicus Curiae*, *United States v. Renzi*, No. 13-10588 (9th Cir. Apr. 18, 2014); Br. of Amicus Curiae the [House] in Supp. of Appellant, *United States v. Rainey*, No. 13-30770 (5th Cir. Dec. 10, 2013); Br. of the [House] as Amicus Curiae Supporting Affirmance, *Cause of Action v. Nat'l Archives & Records Admin.*, No. 13-5127 (D.C. Cir. Nov. 25, 2013); Br. of the [House] as Amicus Curiae Supporting Affirmance . . . , *United States v. Verrusio*, No. 11-3080 (D.C. Cir. Feb. 5, 2013).

[2]  The Democratic Leader and the Democratic Whip have declined to support the filing of the attached memorandum.

counsel, Karen L. Dunn and Brian D. Netter, who advised that their client "consents on the condition that it have the opportunity to respond, in light of the fact that the brief will be submitted after the Council's reply brief." We note that this matter is set for argument on May 14, 2014, *see* Minute Order (Apr. 22, 2014), and presumably both parties will have the opportunity to respond at that time.

A Proposed Order is attached, and oral argument is not requested.

Respectfully submitted,

*/s/ Kerry W. Kircher*
KERRY W. KIRCHER, General Counsel
D.C. Bar No. 386816
WILLIAM PITTARD, Deputy General Counsel
D.C. Bar No. 482949
TODD B. TATELMAN, Assistant Counsel
MARY BETH WALKER, Assistant Counsel
D.C. Bar No. 501033
ELENI M. ROUMEL, Assistant Counsel
ISAAC B. ROSENBERG, Assistant Counsel
D.C. Bar No. 998900

OFFICE OF GENERAL COUNSEL,
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)

*Counsel for the Bipartisan Legal Advisory Group,*
*U.S. House of Representatives*

May 8, 2014

**CERTIFICATE OF SERVICE**

I certify that on May 8, 2014, I filed and served the foregoing Motion of the Bipartisan Legal Advisory Group of the U.S. House of Representatives for Leave to File Memorandum of Points and Authorities as *Amicus Curiae* via the CM/ECF system of the U.S. District Court for the District of Columbia, which I understand served a copy on all parties for whom counsel has entered an appearance by operation of the Court's CM/ECF system

*/s/ Isaac B. Rosenberg*
Isaac B. Rosenberg

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————— )
COUNCIL OF THE DISTRICT OF COLUMBIA, )
)
Plaintiff, )
)
v. )  Case No. 1:14-cv-00655-EGS
)
VINCENT C. GRAY, in his official capacity )
as Mayor of the District of Columbia, et al., )
)
Defendants. )
———————————————————— )

## MEMORANDUM OF POINTS AND AUTHORITIES OF
## THE BIPARTISAN LEGAL ADVISORY GROUP OF
## THE U.S. HOUSE OF REPRESENTATIVES AS *AMICUS CURIAE*

KERRY W. KIRCHER, General Counsel
WILLIAM PITTARD, Deputy General Counsel
TODD B. TATELMAN, Assistant Counsel
MARY BETH WALKER, Assistant Counsel
ELENI M. ROUMEL, Assistant Counsel
ISAAC B. ROSENBERG, Assistant Counsel

OFFICE OF GENERAL COUNSEL,
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C.   20515
202-225-9700 (telephone)
202-226-1360 (facsimile)

*Counsel for the Bipartisan Legal Advisory Group,*
*U.S. House of Representatives*

May 8, 2014

# TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................. 1

BACKGROUND ................................................................................. 3

    I.     The Federal Budget and Appropriations Process .............................. 4

    II.    The Home Rule Act. ................................................................... 7

    III.   The Budget Autonomy Act. ........................................................ 10

DISCUSSION ..................................................................................... 10

    I.     Legislative Efforts in Congress to Provide Budget Autonomy
         to the District Undercut the Council's Position. .............................. 11

         A.    Legislative Efforts That Pre-Date the Budget Autonomy
               Act ..................................................................................... 11

         B.    Legislative Efforts That Post-Date the Budget Autonomy
               Act ..................................................................................... 14

    II.    The Budget Autonomy Act Is Inconsistent with § 816(a) of the
         Financial Services and Government Appropriations Act, 2014. ....... 16

CONCLUSION ................................................................................... 18

CERTIFICATE OF SERVICE

**STATEMENT OF INTEREST**

*Amicus curiae* the Bipartisan Legal Advisory Group of the U.S. House of Representatives presents the institutional position of the House in litigation matters in which it appears.  *See* H. Res. 5, 113th Cong. § 4(a)(1)(B) (2013) ("[T]he Bipartisan Legal Advisory Group continues to speak for, and articulate the institutional position of, the House in all litigation matters in which it appears . . . ."), *available at* http://beta.congress.gov/113/bills/hres5/BILLS-113hres5eh.pdf; Rule II.8, Rules of the House of Representatives, 113th Cong. (2013) (establishing Office of General Counsel, which "function[s] pursuant to the direction of the Speaker, who shall consult with a Bipartisan Legal Advisory Group, which shall include the majority and minority leaderships"), *available at* http://clerk.house.gov/legislative/house-rules.pdf.[1]

The House has a significant interest in the outcome of this case because the legal questions regarding budget autonomy for the District of Columbia ("District") – which questions are central to this dispute – directly implicate Congress's institutional power both with respect to federal appropriations generally, *see* U.S. Const. art. I, § 9, cl. 7 ("No money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law . . . ."), and with respect to the District in particular, *see id.* art. I, § 8, cl. 17 ("Congress shall have power . . . To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may . . . become the Seat of the Government of the United States . . . .").

---

[1]  The Group currently is composed of the Honorable John A. Boehner, Speaker of the House; the Honorable Eric Cantor, Majority Leader; the Honorable Kevin McCarthy, Majority Whip; the Honorable Nancy Pelosi, Democratic Leader; and the Honorable Steny H. Hoyer, Democratic Whip.  The Democratic Leader and the Democratic Whip have declined to support the filing of this memorandum.

Pursuant to that latter constitutional authority, Congress in 1973 delegated to the District certain "home rule" authority via the District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 777 (Dec. 24, 1973), *codified as amended at* D.C. Code §§ 1-201.01 – 1-207.71 (2013) ("Home Rule Act" or "HRA").  In doing so, however, Congress specifically reserved for itself plenary authority over the District's spending, including its spending of any locally-derived funds.  *See* HRA § 446 (stating, prior to its purported amendment by the local enactment at issue here:  "No amount may be obligated or expended by any officer or employee of the District of Columbia government unless such amount has been approved by Act of Congress, and then only according to such Act.").  Consequently, the authority of the District to obligate and spend funds, *including* any locally-derived funds, depends entirely on the enactment by Congress each year of legislation that appropriates such funds.

The District of Columbia Local Budget Autonomy Act of 2012, D.C. Law 19-321 (Feb. 15, 2013) ("BAA"), purports to change these constitutional and statutory mandates by, in particular, replacing Congress's *affirmative* role in legislating regarding the "local portion of the [District's] annual budget" with a *passive* role in which the District could expend locally-derived funds in the *absence* of any affirmative congressional action.  *Id*. § 2(e).  The BAA thus is inconsistent with Congress's plenary authority over all District appropriations, and the only constitutionally permissible manner by which the District can achieve the budget autonomy it seeks is for Congress, by way of the normal legislative process, to provide that authority – and Congress has not yet done that.

**BACKGROUND**

At bottom, this case concerns Article I "Appropriations," specifically, the process by which funds are made available to the District for obligation and expenditure. *See* U.S. Const. art. I, § 9, cl. 7; *see also id.* art. I, § 8, cl. 17. The quintessential axiom of federal appropriations law is that "the expenditure of public funds is proper *only when authorized by Congress*." *United States v. MacCollom*, 426 U.S. 317, 321 (1976) (emphasis added). Federal funds are made available for obligation and expenditure only by "Appropriations," which are accomplished via congressional enactments – commonly referred to as appropriations acts – adopted through the legislative process established in the Constitution. *See* U.S. Const. art. I, § 7 (requiring passage by both houses of Congress (bicameralism) and presentment to President for signature or veto (presentment)).

Appropriations acts should not be confused with "budgets" which do not provide any legal authority to obligate or expend funds. Budgets are merely requests or recommendations for spending levels traditionally submitted to Congress by the heads of the other branches of government (i.e., the President for the Executive Branch and the Judicial Conference for the Judicial Branch). Because, as explained in more detail below, these budget requests (including those submitted by the District) are not binding on Congress, the dispute between the Council and the Mayor regarding the changes purportedly made by the BAA to the District's *budget process* is, as a practical matter, largely beside the point. The only issue with real legal significance here is the validity of the BAA's purported alteration of the process by which Congress *appropriates* locally-derived revenues to the District.

## I.       The Federal Budget and Appropriations Process.

Congress, via various statutes and congressional rules, implements its Article I "Appropriations" authority, including its authority with respect to the District, through a detailed budget and appropriations process.  That process involves the consideration and passage of annual appropriations bills that fund a broad range of governmental activities such as national defense, homeland security, domestic social programs, and, of particular interest here, the District.  Annual appropriations acts generally provide funding authority that expires at the end of each federal fiscal year, September 30.  *See* 31 U.S.C. § 1102.

The starting point of the federal budget and appropriations process is the submission of the President's budget which, by statute, must be transmitted to Congress no later than the first Monday in February, *see id*. § 1105(a), although the President has been known to miss that deadline.  The President's budget contains requests for specific spending levels for the various programs and agencies of the federal government, and includes the District budget as well.[2] After the President submits his budget, each federal agency – and the District – typically provides, directly to the appropriate subcommittee of the House and Senate Appropriations Committees, any additional materials justifying the requested spending levels.  As noted, these budget requests are only that – requests for funding.  They do not obligate Congress to appropriate the funds requested in the amounts or the manner requested.

After the President submits his budget, the House and Senate consider and normally adopt an annual budget resolution, pursuant to statute.  *See* 2 U.S.C. §§ 621-661f.  The budget

---

[2]  The President's budget typically includes only the federal portion of the District budget, in which case he submits the local portion of the District budget to Congress later, after it is transmitted to him by the Mayor.

resolution, among other things, (i) sets total budget authority and outlay levels for the fiscal year covered by the resolution, and (ii) allocates those outlays among approximately 20 functional spending categories (e.g., national defense, agriculture, transportation). Even assuming that a single budget resolution is agreed to by both the House and Senate, that resolution is not sent to the President and, therefore, does not become law. Rather, that resolution functions as a guide for the House and Senate as they consider various budget-related bills, including appropriations and tax measures. Both the House and Senate have adopted rules designed to encourage compliance with the spending ceilings established by the budget resolution. *See, e.g.*, House Rule XXI.2(d) & (f); *see also* 2 U.S.C. § 633(f) (prohibiting floor consideration of any bill, joint resolution, amendment, or conference report that provides new budget authority in excess of outlays established by budget resolution); 2 U.S.C. § 642(a)(1), (2) (prohibiting floor consideration of legislation providing new budget authority that would exceed applicable total budget authority).

Once a budget resolution has been adopted by both chambers, the House and Senate Appropriations Committees begin preparing the actual, annual appropriations bills. Each of the 12 subcommittees of the respective House and Senate Appropriations Committees is responsible for one of the annual appropriations bills. Typically, the House Appropriations Committee begins reporting bills in May or June, with the aim of completing committee and floor consideration of all 12 bills prior to the annual August recess. *See* Jessica Tollestrup, Cong. Research Serv., R42388, *The Congressional Appropriations Process: An Introduction* at 5 (2012), *available at* http://www.senate.gov/CRSReports/crs-publish.cfm?pid=%260BL%2BP%3C%3B3%0A. The Senate Appropriations Committee

5

normally begins reporting bills in June and generally aims to complete committee and floor consideration by September.  *See id.*

During the remaining period before the start of the new fiscal year (October 1), the House and Senate Appropriations Committees negotiate to resolve any differences between the appropriations bills passed by their respective chambers.  *See id.*  If agreement is reached and both chambers approve the agreement, the resulting legislation is sent to the President for his signature or veto.  If agreement cannot be reached, Congress may enact one or more continuing resolutions to keep government operations funded pending final disposition of either the 12 regular appropriations bills, one or more omnibus appropriations bills (combining several regular bills into one larger bill), or some combination thereof.

In the House, the Subcommittee on Financial Services and General Government of the House Appropriations Committee has jurisdiction over the District's appropriations.  *See* U.S. House of Representatives, Committee on Appropriations, Financial Services Subcommittee, http://appropriations.house.gov/about/jurisdiction/financegovernment.htm (last visited May 8, 2014).  Traditionally, that Subcommittee has considered the District's appropriations language in June or July as part of the regular order, with full Committee consideration following shortly thereafter.  *See, e.g.*, Library of Congress, Status of Appropriations Legislation for Fiscal Year 2010, *available at* http://thomas.loc.gov/home/approp/app10.html (Committee vote on FY 2010 bill occurred on July 7, 2009).  In recent years, Congress has not followed that order in adopting appropriations bills, but rather has adopted either omnibus legislation or continuing resolutions to fund government operations, including those of the District.  *See* generally Congress.gov, Appropriations Status Tables, http://beta.congress.gov/legislation/appropriations/ (last visited May 8, 2014).

6

Although the appropriations process in Congress has varied somewhat from year to year, the language used to appropriate funds for the District generally has not.  For example, during the past several fiscal years, Congress has appropriated the District's locally-derived funds using substantially similar language.  *See, e.g.*, Pub. L. No. 113-76 (FY 2014) ("Local funds are appropriated for the District of Columbia for the current fiscal year out of the General Fund of the District of Columbia . . . ."); Pub. L. No. 113-6, 127 Stat. 198, 417 (FY 2013) ("Notwithstanding any other provision of this division, . . . the District of Columbia may expend local funds under the heading 'District of Columbia Funds . . . .'"); Pub. L No. 112-74, 125 Stat. 786, 906 (Dec. 23, 2011) (FY 2012) ("The following amounts are appropriated for the District of Columbia for the current fiscal year out of the General Fund of the District of Columbia ('General Fund'), except as otherwise specifically provided . . . .").

Finally, we note that Congress generally has appropriated the District's locally-derived funds in a manner consistent with the District's requests.  *See, e.g.*, Pub. L. No. 112-10, 125 Stat. 38, 135 (Apr. 15, 2011) (continuing resolution for April 16, 2011 through September 30, 2011) ("Notwithstanding any other provision of this division, . . . the *District of Columbia may expend local funds* for programs and activities under the heading 'District of Columbia Funds' . . . at the rate set forth under 'District of Columbia Funds' as included in the Fiscal Year 2011 Budget Request Act . . . ." (emphasis added)).

## II.     The Home Rule Act.

As part of the Home Rule Act, Congress adopted a Charter for the District, *see* HRA §§ 401-95, which Charter "establishes the organizational structure of the District government," *Jackson v. Dist. of Columbia Bd. of Elections & Ethics*, 999 A.2d 89, 95 (D.C. 2010).  With respect to the District's finances, Congress created a "General Fund of the District," which was

intended to house all locally-derived revenues collected by any agency, officer, or employee of the District, except for moneys received by the District's courts which are deposited in the United States Treasury or the Crime Victims Fund. *See* HRA § 450. In so legislating, Congress did not specify the purposes for which monies in the General Fund could or could not be used; rather, those decisions were retained for determination through the annual budget and appropriations process. *See id.*[3]

As to the *budget* process, the Home Rule Act established a three-step procedure for proposal, adoption, and transmission of the District's budget to the President and Congress. *First*, the Mayor is required to prepare and submit to the Council a budget proposal "[a]t such time as the Council may direct." HRA § 442(a). *Second*, the Council, "within 56 calendar days after receipt of the budget proposal from the Mayor, and after public hearing," is required to "adopt the annual budget for the District of Columbia government." *Id.* § 446 (as this section stood prior to its purported amendment by BAA). *Third*, the Mayor is required to "submit[] . . .

---

[3] The Home Rule Act § 450 is not a continuing or permanent appropriation, contrary to the Council's suggestion otherwise. *See, e.g.*, Mem. of P. & A. in Supp. of Mot. for Summ. J. or Remand at 21-22 (Apr. 25, 2014) (ECF No. 11-2) ("Council's Memorandum"). This is so because the Home Rule Act § 450 does not provide for the obligation or expenditure of the District's locally-derived revenues for any specified purpose. As the General Accountability Office ("GAO") has explained, a continuing or permanent appropriation requires the presence of all three of the following authorities: (i) the authority to collect revenues; (ii) the authority to deposit those revenues into a particular fund; and (iii) *the authority to make those funds available for obligation or expenditure for a specified purpose. See* 1 GAO, Principles of Federal Appropriations Law, 2-17 (3d ed. 2004). This Circuit "regard[s] the assessment of the GAO as an expert opinion, which [the courts] should prudently consider . . . ." *Delta Data Systems Corp. v. Webster*, 744 F.2d 197, 201 (D.C. Cir. 1984); *see also M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1305 (D.C. Cir. 1971) (acknowledging GAO's "accumulated experience and expertise"); 31 U.S.C. § 712(1), (4), (5) (tasking GAO with investigating and providing assistance and information to congressional committees "having jurisdiction over revenue, *appropriations*, or expenditures . . . ." (emphasis added)).

to the President [the adopted budget] for transmission by [the President] to the Congress." *Id.* (also as this section stood prior to its purported amendment by BAA).

As to the *appropriations* process – that is, the authority actually to obligate and expend funds – the Home Rule Act expressly provides that "no amount may be obligated or expended by any officer or employee of the District of Columbia government *unless such amount has been approved by Act of Congress*, and then only according to such Act." HRA § 446 (emphasis added; as this section stood prior to its purported amendment by BAA). In addition, the Home Rule Act provides that

> [n]othing in this [Act] shall be construed as making any change in existing law, regulation, or basic procedure and practice *relating to the respective roles of the Congress*, the President, the federal Office of Management and Budget, and the Comptroller General of the United States in the preparation, review, submission, examination, authorization, and appropriation of the total budget of the District of Columbia government.

*Id.* § 603(a) (emphasis added).[4]

In sum, nothing in the Home Rule Act suggests an appropriation – permanent or otherwise – by which the District legally may obligate or expend funds without further, affirmative congressional action. Put another way, the District has no authority to obligate or expend funds, including locally-derived funds, without the enactment into law of an appropriations act through the normal constitutional processes of bicameralism and presentment.

---

[4]  The phrase "[n]othing in this Act shall be construed" in the Home Rule Act § 603(a) mirrors language that appears in the Home Rule Act § 602(b), which language the legislative history makes quite clear was intended to be a prohibition on the Council's power. *See* H.R. Rep. No. 93-482, at 37 (1973) ("Subsection (b) [of § 602] *prohibits* the Council from exceeding its present authority . . . ." (emphasis added)). The same phrase "appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994); *accord Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995); *Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 225 (1992).

Furthermore, as the Mayor correctly has explained, this finely wrought procedure for proposing, transmitting, and adopting a budget, combined with the express reservation by Congress of its constitutional authority to appropriate funds, is not subject to amendment by the District.  *See* Defs.' Mem. of P. & A. in Supp. of Their Mot. for Summ. J. & in Opp'n to Pl.'s Mot. for Summ. J. at 14-29 (Apr. 30, 2014) (ECF No. 15) ("Mayor's Memorandum").  In contrast, Congress delegated far greater legislative power to the District with respect to non-appropriations/budget measures, reserving to itself only the ability to review legislation after enactment at the District level.  *See* HRA § 602(c)(1).  If Congress does not disapprove of such other measures within a specified time, they become the law of the District.  *See id.*

## III.   The Budget Autonomy Act.

The BAA purports, among other things, to amend the District Charter so as to allow the District to spend "local portion" funds without an affirmative congressional appropriation.  *See* BAA § 2(e).  Specifically, the BAA purports to say that legislation providing the District with the legal authority to obligate and to expend "local portion" funds need only be (i) adopted by the Council "within 70 calendar days . . . after receipt of the annual budget proposal from the Mayor," (ii) presented to the Mayor for his or her signature or veto, and (iii) forwarded to Congress for a 30-day *passive* review period, meaning that the proposed legislation would take effect if Congress failed to adopt a joint resolution of disapproval within 30 days.  *Id.*

## DISCUSSION

We have reviewed the Council's Memorandum, the Mayor's Memorandum, and the Consolidated Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment or Remand and Memorandum in Opposition to Defendants' Cross-Motion for Summary Judgment

(May 5, 2014) (ECF Nos. 24, 25).  The House generally concurs with the Mayor's legal

arguments, *see* Mayor's Mem. at 9-43, and associates itself with those arguments.

In addition, the House believes the Council's position that the District always had the

power to amend its Charter to implement the form of budget autonomy it now claims to have, *see*

Council's Mem. at 6, 8, 30-33 (characterizing pre-BAA budget and appropriations process as a

mere "default" rule), particularly is belied by two considerations.  *First*, the Council's position is

inconsistent with repeated efforts by the District and its supporters in Congress – both before the

BAA purportedly "took effect" in July 2013, and after – to pass legislation *in Congress* to

achieve the very budget autonomy the Council now says the District has possessed since 1973.

*See infra* Discussion Part I.  *Second*, the BAA is inconsistent with § 816(a) of the Financial

Services and General Government Appropriations Act, 2014, located at Division E of the

Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, div. E, tit. IV, § 816(a), 128 Stat. 5,

246 (2014) ("Consolidated Appropriations Act, 2014"), which was enacted after the BAA

purportedly took effect.  As a result, the BAA fails under the Supremacy Clause, U.S. Const. art.

VI, at least through the end of FY 2015 (Sept. 30, 2015).  *See infra* Discussion Part II.

## I.    Legislative Efforts in Congress to Provide Budget Autonomy to the District Undercut the Council's Position.

### A.    Legislative Efforts That Pre-Date the Budget Autonomy Act.

District budget autonomy efforts began as early as 1981 when then-Delegate Walter

Fauntroy introduced the District of Columbia Budget Autonomy Act, H.R. 1254, 97th Cong.

(1981), proposing to end the requirement that Congress annually appropriate the District's

locally-derived funds.  Similar bills were introduced in nearly every Congress thereafter.  *See,*

*e.g.*, District of Columbia Budget Autonomy Act, H.R. 3708, 98th Cong. (1983); District of

Columbia Budget Autonomy Act, H.R. 3699, 98th Cong. (1983); District of Columbia Budget

Autonomy Act, H.R. 324, 99th Cong. (1985); District of Columbia Legislative and Budget Autonomy Act of 1991, H.R. 3581, 102d Cong. (1991); District of Columbia Legislative and Budget Autonomy Act of 1993, H.R. 2071, 103d Cong. (1993); District of Columbia Legislative and Budget Autonomy Act of 1998, H.R. 3920, 105th Cong. (1998); District of Columbia Budget Autonomy Act of 1998, H.R. 4054, 105th Cong. (1998); District of Columbia Budget Autonomy Act of 1999, H.R. 1197, 106th Cong. (1998); District of Columbia Budget Autonomy Act of 2003, H.R. 2472, 108th Cong. (2003); District of Columbia Budget Autonomy Act of 2003, S. 1267, 108th Cong. (2003); District of Columbia Budget Autonomy Act of 2005, H.R. 1629, 109th Cong. (2005); District of Columbia Budget Autonomy Act of 2007, H.R. 733, 110th Cong. (2007); District of Columbia Budget Autonomy Act of 2009, H.R. 1045, 111th Cong. (2009); District of Columbia Budget Autonomy Act of 2011, H.R. 345, 112th Cong. (2011).

In the last Congress (the 112th), the Chairman of the House Committee on Oversight and Government Reform proposed legislation that would have given the District more autonomy over its local funds by (i) starting the fiscal year on July 1 rather than October 1, and (ii) "allow[ing] the District to begin spending its own money after the council and mayor have approved the city's budget, without having to wait for Congress to give its approval."  Ben Pershing, *Issa attaches abortion ban to D.C. budget autonomy bill*, Wash. Post, Nov. 14, 2011, *available at* http://www.washingtonpost.com/local/dc-politics/issa-attaches-abortion-ban-to-dc-budget-autonomy-bill/2011/11/14/gIQAsFW7LN_story.html.  That bill was withdrawn after District leaders objected to other language in the bill.  *See* Ben Pershing, *District leaders reject Issa's budget autonomy bill over abortion ban*, Wash. Post, Nov. 16, 2011, *available at*

http://www.washingtonpost.com/blogs/dc-wire/post/district-leaders-reject-issas-budget-autonomy-bill-over-abortion-ban/2011/11/16/gIQAC4sGRN_blog.html.

In April 2012, a similar bill was introduced in the Senate.  *See* District of Columbia Local Budget Autonomy Act of 2012, S. 2345, 112th Cong. (2012).  That bill would have "permit[ted] the Government of the District of Columbia to determine the fiscal year period" and made "local funds of the District of Columbia for a fiscal year available for use by the District upon enactment of the local budget act for the year subject to a period of Congressional review." *Id.*, Preamble.  That bill also was withdrawn at the request of city officials after amendments they disliked were proposed.  *See* Ben Pershing, *GOP amendments scuttle D.C. budget autonomy bill*, Wash. Post, June 26, 2012, *available at* http://www.washingtonpost.com/local/dc-politics/gop-amendments-scuttle-dc-budget-autonomy-bill/2012/06/26/gJQAEKoN5V_story.html.

Budget autonomy efforts continued in the current Congress.  For example, in January 2013, Delegate Eleanor Holmes Norton introduced the District of Columbia Budget Autonomy Act of 2013, H.R. 345, 113th Cong. (2013), which would have given the District autonomy over its locally-derived funds without being subject to congressional approval.

In March 2013, after the proposed BAA appeared on a referendum ballot, Delegate Norton introduced the District of Columbia Local Funds Continuation Act, H.R. 1196, 113th Cong. (2013), which would have permitted the District to spend money from its General Fund in the event of a lapse in federal appropriations for the District.  *See also* 159 Cong. Rec. E298 (daily ed. Mar. 14, 2013) (statement of Del. Norton) (noting that, "[a]lthough the District government raises and manages an $8 billion local budget, Congress technically appropriates these local funds back to the District government, a holdover and throwback to the pre-home-rule period").

In April 2013, shortly before the referendum took place, President Obama included in his FY 2014 budget a proposal to provide the District budget autonomy without congressional review – by way of congressional legislation.  *See* Executive Office of the President of the United States, Fiscal Year 2014 Budget of the U.S. Government – Other Independent Agencies, at 1232-33 (proposing to add following language to Home Rule Act:  "[U]pon the enactment by the District of Columbia of the annual budget, or any amendments or supplements thereto, for a fiscal year, officers and employees of the District of Columbia government may obligate and expend District of Columbia funds and hire employees in accordance with that budget."), *available at* http://www.whitehouse.gov/sites/default/files/omb/budget/fy2014/assets/oia.pdf.

And in July 2013 – during the purported BAA congressional review period – two more budget autonomy bills were introduced in Congress, one by the Chairman of the House Committee on Oversight and Government Relations.  *See* District of Columbia Financial Efficiency Act of 2013, H.R. 2793, 113th Cong. (2013) (proposing to give District power to spend locally-derived revenues from General Fund in event of federal government shutdown, and to establish its own fiscal year); *see also* Financial Services and General Government Appropriations Act, 2014, S. 1371, 113th Cong. (2013) (containing language similar to that in President Obama's FY 2014 budget).

**B.    Legislative Efforts That Post-Date the Budget Autonomy Act.**

Budget autonomy efforts continued apace *after* the BAA purported to become "effective" in July 2013.  For example, in September 2013, Delegate Norton introduced the District of Columbia Government Shutdown Avoidance Act of 2013, H.R. 3100, 113th Cong. (2013), which would permanently authorize the District to spend locally-derived revenues in a given fiscal year in the event of a lapse in federal appropriations.  *See also* 159 Cong. Rec. E1312

(daily ed. Sept. 12, 2013) (statement of Del. Norton) (noting that "[t]he District of Columbia raises and manages an $8 billion local budget, but Congress technically appropriates these funds back to the District, an anachronistic holdover and throwback from the pre-home-rule era.")

In March 2014, President Obama submitted his FY 2015 budget which included language on District budget autonomy identical to that in the President's FY 2014 budget.  *See* Executive Office of the President of the United States, Fiscal Year 2015 Budget of the U.S. Government – Other Independent Agencies, at 1292, *available at* http://www.whitehouse.gov/sites/default/files/omb/budget/fy2015/assets/oia.pdf.  The President's budget stated "the Administration's view that the District's local autonomy should be enhanced and increased," and said "[t]he Administration will work with Congress and the Mayor to provide the District local budget and legislative autonomy, as proposed in the Budget."  *Id.* at 1287.

Finally, on April 10, 2014, shortly before this action was commenced in Superior Court, Senator Mark Begich introduced a bill that would accomplish precisely what the BAA, in the Council's view, already has achieved:  "[P]ermit the Government of the District of Columbia to determine the fiscal year period" and "to make local funds of the District of Columbia for a fiscal year available for use by the District upon enactment of the local budget act for the year subject to a period of Congressional review."  District of Columbia Budget Accountability Act of 2014, S. 2246, 113th Cong., Preamble (2014).

*          *          *

In sum, it is very difficult, if not impossible, to square the Council's view that the District has had the power since 1973 to achieve budget autonomy on its own with this history of

15

repeated efforts by the District and its supporters in Congress to achieve that very authority

through federal legislation.

**II.     The Budget Autonomy Act Is Inconsistent with § 816(a) of the Financial Services and General Government Appropriations Act, 2014.**

In January of this year, long after the BAA purportedly took effect, Congress enacted,

and the President signed, the Consolidated Appropriations Act, 2014, which includes, at Division

E, the Financial Services and General Government Appropriations Act, 2014.

Title IV of the Financial Services and General Government Appropriations Act

appropriated the District's locally-derived funds "for the current fiscal year out of the General

Fund of the District of Columbia . . . for programs and activities set forth . . . in the Fiscal Year

2014 Budget Request Act of 2013 submitted to the Congress by the District of Columbia." *Id.* at

tit. IV.  And § 816(a) of that Act – responding to problems the District experienced as a result of

the partial federal government shutdown in October 2013 – appropriated, on a contingent basis,

the District's locally-derived revenues for FY 2015 (i.e., Oct. 1, 2014 – Sept. 30, 2015):

> During fiscal year 2015, during a period in which neither a District of Columbia continuing resolution or a regular District of Columbia appropriation bill is in effect, local funds are appropriated in the amount provided for any project or activity for which local funds are provided in the Fiscal Year 2015 Budget Request Act of 2014 as submitted to Congress (subject to any modifications enacted by the District of Columbia as of the beginning of the period during which this subsection is in effect) at the rate set forth by such Act.

*Id.* § 816(a).  That is, if Congress fails to act by September 30, 2014, the District's locally-

derived revenues are automatically appropriated (in the amounts provided in the District's

budget).

Section 816(a) plainly manifests Congress's continuing plenary authority over the

District's locally-derived revenues.  *See also id.* § 816(c) (any contingent appropriation pursuant

16

to § 816 is "provided under the authority and conditions as provided under this Act," and not any other enactment, including the BAA).  Equally importantly, however, this provision effectively affords to Congress a period of time ending September 30, 2014, to appropriate the District's locally-derived revenues for FY 2015 pursuant to Congress's normal processes.  During that period of time, Congress is entitled to legislate in any manner it sees fit regarding the District's locally-derived revenues.  (Section 816(a), of course, by appropriating contingently as it does, protects the District from injury if Congress fails to act during that period of time.)

The BAA is inconsistent with § 816(a) because the BAA purports to accelerate the date by which Congress must legislate regarding the District's locally-derived revenue from September 30 to the date 30 days after the District forwards its budget to Congress, *see* BAA § 2(e).  As a result, the BAA runs afoul of the Supremacy Clause, at the very least through the end of this fiscal year.

The principle that federal statutes preempt inconsistent state laws applies to "District of Columbia legislation no less than [to] state enactments."  *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 534 n.65 (D.C. Cir. 1980); *accord Biotech. Indus. Org. v. Dist. of Columbia*, 496 F.3d 1362, 1371 (Fed. Cir. 2007) ("[A]s between District statutes and superior enactments by Congress, the general principles of preemption from Supremacy Clause law apply.").  Accordingly, District laws, like the BAA, that conflict with federal laws cannot stand. *See, e.g.*, *Estate of Heiser v. Islamic Republic of Iran*, 885 F. Supp. 2d 429, 443-45 (D.D.C. 2012); *Levi v. Brown & Williamson Tobacco Corp.*, 851 F. Supp. 2d 8, 11 n.3 (D.D.C. 2012)

(Sullivan, J.); *Savage v. Scales*, 310 F. Supp. 2d 122, 133-34 (D.D.C. 2004); *United States v.*
*Dist. of Columbia*, 44 F. Supp. 2d 53, 59-60 (D.D.C. 1999).[5]

## CONCLUSION

The Court should declare the BAA invalid for the reasons given above and in the

Mayor's Memorandum.

---

[5] Section 816(a) also leaves us skeptical that at least the appropriations aspect of this case – i.e.,
the part that concerns the District's purported authority under the BAA to obligate and expend
the District's locally-derived funds if Congress does not act – is ripe for resolution.  We are
skeptical because (i) the District currently is authorized to spend its locally-derived revenues
through the end of FY 2014 (Sept. 30, 2014), *see* Consolidated Appropriations Act, 2014, at div.
E, tit. IV; (ii) Congress may well act prior to September 30, 2014 to appropriate the District's
locally-derived revenues for FY 2015; and (iii) if Congress does not act prior to September 30,
2014, the District's locally-derived revenues already are appropriated for FY 2015 by virtue of
section 816(a), provided *only* that the District submit a budget request to Congress prior to
October 1, 2014, something that is entirely within the District's control.  The parties pointedly
have declined to raise any such issues.  *Cf.* Press Release, Delegate Norton Statement on D.C.
Council Lawsuit on Budget Autonomy Referendum (Apr. 17, 2014), *available at*
http://norton.house.gov/media-center/press-releases/norton-statement-on-dc-council-lawsuit-on-
budget-autonomy-referendum ("[T]here should be no mistaking the Council's action for the
usual adversarial lawsuit.  Today's action is friendly litigation . . . .").  However, given that the
Court must satisfy itself that Article III's requirements have been met, even where, as here, the
parties have not addressed those issues, *see, e.g.*, *Grocery Mfrs. Ass'n v. E.P.A.*, 693 F.3d 169,
174 (D.C. Cir. 2012), the Court may wish to consider appointing an independent *amicus* to brief
Article III issues at least as they pertain to the appropriations aspect of the case (as opposed to
the part of the case that concerns the BAA's purported changes to the District's budget
mechanics).

Respectfully submitted,

*/s/ Kerry W. Kircher*
KERRY W. KIRCHER, General Counsel
D.C. Bar No. 386816
WILLIAM PITTARD, Deputy General Counsel
D.C. Bar No. 482949
TODD B. TATELMAN, Assistant Counsel
MARY BETH WALKER, Assistant Counsel
D.C. Bar No. 501033
ELENI M. ROUMEL, Assistant Counsel
ISAAC B. ROSENBERG, Assistant Counsel
D.C. Bar No. 998900

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, D.C. 20515
(202) 225-9700 (telephone)
(202) 226-1360 (facsimile)

*Counsel for the Bipartisan Legal Advisory Group,*
*U.S. House of Representatives*

May 8, 2014

**CERTIFICATE OF SERVICE**

I certify that on May 8, 2014, I filed and served the foregoing Memorandum of Points and Authorities of the Bipartisan Legal Advisory Group of the U.S. House of Representatives as *Amicus Curiae* via the CM/ECF system of the U.S. District Court for the District of Columbia, which I understand served a copy on all parties for whom counsel has entered an appearance by operation of the Court's CM/ECF system.

*/s/ Isaac B. Rosenberg*
Isaac B. Rosenberg