UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COUNCIL OF THE DISTRICT OF COLUMBIA, <br><br> Plaintiff <br><br> v. <br><br> VINCENT C. GRAY <br><br> and <br><br> JEFFREY S. DEWITT, <br><br> Defendants. | Civil Action No. 14-00655 (EGS) |

### DEFENDANTS' SUPPLEMENTAL MEMORANDUM

Per the Court's Minute Order of May 8, 2014, the defendants respond to the amicus briefs filed by Jacques B. DePuy, *et al*. [28] ("DePuy Br.") and the Bipartisan Legal Advisory Group of the United States House of Representatives [30] ("House Br.").

### INTRODUCTION

The amicus briefs filed by the House and the former staffers of the House Committee on D.C. Affairs (including the authors of the definitive study on the 1973 Home Rule Act (HRA)) support and confirm defendants' position that the Budget Autonomy Act (BAA) is unlawful and should be declared by this Court to be null and void. In light of these *amici*, it is simply untenable to contend that Congress in 1973 granted the power to the Council to usurp the District's budget-appropriations authority from Congress, or that the current Congress approves of the BAA, or endorses or accepts its legal validity, or its intrusion into Congress's exclusive territory. The Court has before it incontrovertible evidence of the intent of Congress, in 1973 and

today, that the Council has no authority to change the role and functions of the federal government in the creation and approval of the District budget. Thus, they underscore why this Court should reject plaintiff's invitation for the Court to defer to the Council's own interpretation of its responsibilities under the HRA. As the *en banc* D.C. Court of Appeals has explained, the "central focus" in construing HRA limitations on the Council's authority is "the intent of Congress;" there is "no principled basis for deferring to the Council's interpretation." *District of Columbia v. Washington Home Ownership Council*, 415 A.2d 1349, 1351 & n.5 (D.C. 1980) (*en banc*).

## DISCUSSION

### I. The Amicus Briefs Confirm Congress's HRA Intent.

As the DePuy and House amici briefs confirm, the HRA would not have passed unless Congress retained complete and final authority to appropriate the entire District budget. Indeed, both Houses of Congress understood and intended in 1973 that Congress would retain such appropriations authority over the District, and that such authority could *not* subsequently be amended by the Council. *See* House Br. at 10 (budget process "is not subject to amendment by the District."). As the DePuy Brief explains, it was not just Congress that understood at the time of the HRA that it had withheld budget autonomy from the District, it was *everyone's* understanding, including representatives of the local government. DePuy Br. at 17 ("None of the members of the then appointed city council thought the Home Rule Act created a 'default position' that an elected Council could remedy by proposing a charter amendment.").

The amicus briefs also explain that Congress not only provided in the HRA that it would retain the exclusive authority to appropriate the entire District budget, HRA § 446, but also inserted in the law two unalterable provisions to insure there could be no change to this

Congressional authority: section 603(a), which prohibits the Council from amending its Charter to modify the budget procedures as they had stood for the prior 100 years (House Br. at 9 & n.4) and section 603(e), which bars any District official or employee from spending any funds that had not been appropriated by an Act of Congress. Indeed, as the DePuy Brief documents, these were "critically important" to the "Diggs Compromise." DePuy Br. at 12.

Moreover, the Diggs Compromise did not encompass a "default position" on Congress's authority over the District budget, which could be changed at any subsequent time by charter amendment. *See* DePuy Br. at 16 "[S]uch a position would almost surely have failed to neutralize Chairman Natcher's opposition and most likely would have resulted in the defeat of the home rule bill." *Id*.

The House Brief also confirms defendants' argument that the language in section 603(a) mirrors that in section 602(b) and that, as amply verified by the legislative history, both are prohibitions on Council actions, not mere rules of construction. *See* House Br. at 9 n.4 (quoting *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) (the same phrase "appearing in several places in a statutory text is generally read the same way each time it appears.").

Similarly, the House Brief makes clear—and urges this Court to hold—that these provisions preclude the Council from assuming Congress's authority to appropriate the entire budget of the District, thereby eliminating any argument that the failure to enact legislation striking down the law may be construed as acquiescence by the Congress.

There is no dispute that for 40 years since passage of the HRA, Congress and the Council have acted in accordance with the text of the HRA and its legislative history, with the Congress appropriating from the General Fund established in section 450 of the HRA the budget for the District. The House Brief confirms that that fund is not, contrary to the Council's novel

argument, a permanent or continuing appropriation. House Br. at 8 n.3.

The General Fund was created as a repository for all locally derived revenue. *Id*. at 8. Congress did not specify the purposes to which those funds could be used, which is the *sine qua non* of an appropriation. *Id*. (citing 1 GAO, *Principles of Federal Appropriations Law*, 2-17 (3d ed. 2004)). Even though section 450 gave the District authority to collect and deposit local revenues, it did *not* give the District the ability to obligate or expend those funds. *Id*.

The House Brief also confirms that the Council conflates the *budget* process with the *appropriations* process. *See id*. at 8–9. Notwithstanding the BAA's attempts to change the mandated procedures for the proposal, adoption, and transmission of the District's budget to the President and Congress, the Council cannot wrest authority from Congress "actually to obligate and expend" the District's funds, locally derived or otherwise. *Id*. at 9. The Home Rule Act, in section 446, reserved that authority in Congress and did not convey that authority in section 450 or anywhere else.

At no time (prior to this litigation) has any representative of Congress or the District government claimed that section 450 constituted an appropriation by Congress of any funds that the District could spend. The proposition is wrong factually and as a matter of law. Also, as the amicus briefs demonstrate, and as defendants have said from the beginning, there is *no* legislative history that supports the Council's novel interpretation. As the House Brief documents, since 1981, bills have been introduced in virtually every session of Congress by District representatives and other Members and most recently proposed by the President providing for budget autonomy for the District, in recognition of the fact that the only entity that can provide budget autonomy is the Congress, the entity that provided in the first place that the District would not have such. *See* House Br. at 11–12.

Moreover, actions taken by the Congress, the President and D.C. Delegate Eleanor Holmes Norton *after* the passage of the BAA are consistent with the understanding that the BAA is of no validity or consequence, as they have proposed either federal legislation granting the same budget autonomy as provided in the BAA or have enacted appropriations for a period covered by the BAA. *See id*. at 13–15.

> [I]n sum, it is very difficult, if not impossible, to square the Council's own view that the District has had the power since 1973 to achieve budget autonomy on its own with this history of repeated efforts by the District and its supporters in Congress to achieve that very authority through federal legislation.

*Id*. at 15–16.

Consistent with this understanding, the House Brief demonstrates that the BAA conflicts with recent federal law. After the BAA purportedly took effect, Congress passed (and the President signed) the Consolidated Appropriations Act, effective Jan. 17, 2014, Pub. L. No. 113-76, 128 Stat. 5. Section 816 of that law authorizes the District to use local funds in the event of a federal government shutdown during fiscal year 2015. "Section 816(a) plainly manifests Congress's continuing plenary authority over the District's locally-derived revenues." House Br. at 16. That authority was "provided under [the Consolidated Appropriations Act],' and not any other enactment, including the BAA." *Id*. at 17 (quoting § 816(c)). The actions of the Congress and the President here are consistent with their belief that the BAA is null and void.

**II. This Case is Ripe.**

Finally, the defendants address the comments in the House Brief regarding ripeness. In a final footnote, the House suggests that "the appropriations aspect" (as opposed to the budget aspect) of this case is not ripe for resolution. House Br. at 18 n.5. Defendants respectfully disagree. In fact, on the appropriations as well as the budget process issues, both sides in the litigation agree—the Executive and Legislature of the District (and its residents) need these

questions resolved now.

Ripeness depends on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1431 (D.C. Cir. 1996) (internal quotations omitted). An issue is fit for judicial review where it is "purely legal" in nature or where consideration of the issue would not "benefit from a more concrete setting." *Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) (internal quotations omitted).[1] This dispute meets both of those elements.

Resolving the validity of the BAA is a purely legal question. There are no material facts at issue in this case and the Court noted at the April 22 status hearing that this case solely involved legal questions suitable for summary judgment. Furthermore, there is no more "concrete setting" for considering this case than now. The Council has announced its intention (i) to disregard the time limits set forth in the Home Rule Act and (ii) to "enact" a local budget in accordance with the BAA sometime in early June. Both of these actions will violate the Home Rule Act, prevent the Mayor and CFO from complying with the Home Rule Act, eliminate the President from any role in the District budget, deprive the Congress of its legislative role with that same portion of the budget, and leave the District without a validly enacted total budget. This is more than a sufficient "concrete setting" for this case to be decided now.[2]

---

[1]  Under Article III, ripeness also has constitutional requirements that must be met. However, these are coextensive with the injury-in-fact requirement of standing. *See Nat'l Treasury*, 101 F.3d at 1427–28. As defendants noted in their Counterclaim, the Council's refusal to abide by the budget process set forth in the Home Rule Act threatens defendants with the imminent and substantial risk that they will lose funding for their respective offices and face criminal and administrative penalties under the Anti-Deficiency Act, not to mention the harms facing the District's citizens, as discussed *infra*.

[2]  Contrary to the House's suggestion, it is critical to the "appropriations aspect" of this case whether the District's local budget is enacted by Congress in accordance with the Home Rule Act, or is "enacted" by the Council and declared valid in the *absence* of direct congressional disapproval. For instance, under section 816 of the Consolidated Appropriations Act of 2014, the District's right to spend local funds in the event of a federal government shutdown in FY 2015 is predicated on the District complying with its "obligations . . . mandated by other law," including the Home Rule Act. Section 816(f). Without a budget submitted in accordance with the congressionally-mandated process in the

More importantly, the hardship to the parties, the District government itself, and all District residents would be significant should the Court decline to consider this case. *First*, since Congress has expressed its view that the BAA is invalid, there is a significant risk that it will intervene by legislation should the Council ignore the Home Rule Act, "enact" a local budget, and attempt to spend local dollars without a congressional appropriation. Congress could reject the District's local budget and sanction the District's attempt to seize congressionally-reserved budgetary authority by imposing significant reductions on the amounts the District is authorized to spend. Alternatively, Congress could ignore the local budget the District submits for passive review, and intervene *after* the District has started to expend funds the Council purported to approve for expenditure. Congress could then require the District to create an entirely new budget, or even invalidate expenditures the District has already made—severely impairing the ability of the Mayor and the CFO to manage the District's financial operations. The chaos and extensive disruption that might ensue are obvious.

*Second*, absent a ruling from this Court, District executive-branch officials will not know whether they can legally approve spending or certify contracts under a budget "enacted" by the Council. Financial actions the District *did* authorize would likely be challenged requiring the District to litigate the validity of contracts, expenditures, and personnel decisions again and again (in essence, forcing the District to litigate the validity of the BAA in piecemeal fashion). And, importantly, it is unlikely that the District would be successful in defending contracts or expenditures approved under a budget "enacted" by the Council in violation of the Home Rule Act. *See In re Crawley*, 978 A.2d 608 (D.C. 2009) (holding that the Council exceeded its

---

Home Rule Act, the District may lose its right to spend local funds under section 816 in the event of a federal shutdown.

authority under the Home Rule Act in granting the District's Attorney General the power to prosecute criminal false-claims violations).

Lastly, the Court should hear this case because the validity of the BAA is an issue that must have a judicial resolution. Defendants convincingly establish that the BAA violates multiple provisions of the Home Rule Act, the Anti-Deficiency Act, and the Budget and Accounting Act, and thus the Supremacy Clause of the U.S. Constitution. Hence defendants cannot comply with its terms. The Council claims that the BAA does *not* violate these laws, and is currently following the budget process set forth in the contested Act. There is nothing, outside of judicial review, that will change this fundamental dispute. This is not a case the Court can decline to decide in hopes that it "may never need to." *Nat'l Treasury*, 101 F.3d at 1431.[3]

## CONCLUSION

The two amici briefs filed in support of the Mayor and the CFO completely refute the Council's arguments. The DePuy Brief on behalf of individuals active in the passage of the Home Rule Act shows that without congressional line item budget authority there likely would be no home rule at all, and that it is therefore incorrect to say that an "objective" of Congress was to allow that enumerated authority to be jettisoned by the Council's amendment. It demonstrates that the language they inserted and the Congress passed must be read to preclude the Council from changing this essential condition of home rule. The House Brief shows that Congress by its conduct has consistently maintained —both before and after the purported Charter amendment— that budget autonomy could be obtained *only* by Act of Congress. Both briefs point to clear evidence that Congress meant section 603(a) as a substantive "prohibition" on Council action

---

[3] In addition, the Council, in its Complaint, is seeking an injunction requiring the Mayor and the CFO to comply with the BAA. Because defendants pleaded numerous affirmative defenses alleging that the BAA violates federal law, the Court necessarily must decide the validity of *all* aspects of the BAA before deciding whether the Council is entitled to injunctive relief.

and not as a rule of construction, and that Congress continues to understand that any expenditure of funds by the District without an express appropriation from Congress is a violation of the Anti-Deficiency Act.

For the reasons given in the amici briefs and in defendants' briefs, the Court should deny the Council's motion for summary judgment and grant defendants' motion for summary judgment, declaring the BAA unlawful, invalid, and null and void.

Date: May 12, 2014                                    Respectfully submitted,

                                                      IRVIN B. NATHAN
                                                      Attorney General for the District of Columbia

                                                      _____/s/_____
                                                      ELLEN A. EFROS
                                                      Deputy Attorney General
                                                      Public Interest Division

                                                      _____/s/ Andrew J. Saindon_____
                                                      ANDREW J. SAINDON, D.C. Bar No. 456987
                                                      Senior Assistant Attorney General
                                                      Equity Section
                                                      441 Fourth Street, N.W., 6th Floor South
                                                      Washington, D.C. 20001
                                                      Telephone: (202) 724-6643
                                                      andy.saindon@dc.gov

                                                      _____/s/ Nicholas A. Bush_____
                                                      NICHOLAS A. BUSH (D.C. Bar No. 1011001)
                                                      Assistant Attorney General
                                                      Public Advocacy Section
                                                      441 Fourth Street, N.W., 6th Floor South
                                                      Washington, D.C. 20001
                                                      Telephone: (202) 724-6643/(202) 442-9841
                                                      E-mail: nicholas.bush@dc.gov

Seth P. Waxman, D.C. Bar No. 257337
Daniel S. Volchok, D.C. Bar No. 497341
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6800
seth.waxman@wilmerhale.com
daniel.volchok@wilmerhale.com

*Of Counsel to the Honorable Vincent C. Gray, Mayor of the District of Columbia*

Lawrence S. Robbins, D.C. Bar No. 420260
Eric A. White, D.C. Bar No. 1011080
Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP
1801 K Street NW
Suite 411 L
Washington DC 20006
(202) 775-4501
lrobbins@robbinsrussell.com
ewhite@robbinsrussell.com

*Of Counsel to Jeffrey S. DeWitt, Chief Financial Officer of the District of Columbia*